IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

REGINALD DENNIS,            )
RENEE DENNIS and            )
B.D., a minor,              )
                            )
            Plaintiffs      )
                            ) Civil Action
        vs.                 ) No. 10-cv-06789
                            )
                            )
ALLAN R. DEJONG, M.D.;      )
NEMOURS FOUNDATION;         )
MARY GERMOND;               )
META WERTZ;                 )
BETH PRODOEHL;              )
PATRICIA MCGETTIGAN;        )
GINA GIANCRISTIFORO;        )
EDWARD SPEEDLING;           )
CINDY W. CHRISTIAN, M.D.;   )
PENNSYLVANIA STATE UNIVERSITY )
  HERSHEY MEDICAL SCHOOL;   )
DANIELL B. BOAL, M.D.;      )
KATHLEEN D. EGGLI, M.D.;    )
G. MICHAEL GREEN;           )
MICHAEL R. GALANTINO;       )
DR. DOE and                 )
COUNTY OF DELAWARE,         )
                            )
            Defendants      )

                    *    *    *

APPEARANCES:

        MARK D. FREEMAN, ESQUIRE
            On behalf of Plaintiffs

        SARA PETROSKY, ESQUIRE
            On behalf of Defendants Allan R. DeJong, M.D.,
            Nemours Foundation, and Edward Speedling

        SUZANNE MCDONOUGH, ESQUIRE
            On behalf of Defendants Mary Germond, Meta Wertz,
            Beth Prodoehl, Patricia McGettigan, Gina
            Giancristiforo, and County of Delaware

A. MICHAEL PRATT, ESQUIRE
FRANK H. GRIFFIN, VI, ESQUIRE
        On behalf of Defendant Cindy W. Christian, M.D.

KIM KOCHER, ESQUIRE
THOMAS M. GOUTMAN, ESQUIRE
        On behalf of Defendants Pennsylvania State
        University Hershey Medical School, Danielle B.
        Boal, M.D., and Kathleen D. Eggli, M.D.

MARK ALAN RAITH, ESQUIRE
        On behalf of Defendants G. Michael Green and
        Michael R. Galantino

                    *   *   *

                O P I N I O N

JAMES KNOLL GARDNER,
United States District Judge

        This matter is before the court on five defense motions

to dismiss plaintiffs' Complaint.

                      **COMPLAINT**

        On November 19, 2010 plaintiffs Reginald Dennis and

Renee Dennis, and their son, B.D., a minor,[1] filed a nineteen-

count civil Complaint in this matter.  The Complaint alleges that

numerous defendants violated their civil rights pursuant to

---

        [1]     Because B.D. is a minor, he can bring a claim by and through his
parents and natural guardians as his "next friend", or by a guardian ad litem.
See Fed.R.Civ.P. 17(b)(2).

        In paragraph 5 of the Complaint, plaintiffs allege that
"Plaintiff, B.D., a minor, is the first and only child of Reggie and Renee
[Dennis]...."  Moreover, the portions of the Complaint describing B.D.'s birth
indicate that Renee Dennis is B.D.'s biological mother.

        However, the Complaint does not specify that Reggie Dennis and
Renee Dennis are bringing their own claims individually, nor does it specify
that they are bringing B.D.'s claims as his parents and natural guardians or
as his legal guardians.  Because this was not addressed in any of the five
motions to dismiss, I do not address is further here.

42 U.S.C. §§ 1981, 1983 and 1985.  The Complaint also alleges negligence, malicious prosecution, civil conspiracy, and intentional infliction of emotional distress pursuant to Pennsylvania state law.

The Complaint arises from the temporary removal of B.D. from his parents' custody.  Specifically, paragraph 5 of the Complaint alleges, in part:

> On December 9, 2009 B.D. was removed from his parents by an ex parte order obtained when Delaware County Children and Youth Services employees made reckless misrepresentations to the Delaware County Court without any opportunity for Reggie and Renee to be heard.  Thereafter, B.D. was placed in foster care and separated from his mother, Renee, for nine months and was separated from his father, Reggie, for over one year in violation of his constitutional rights.

Complaint, paragraph 5.

Plaintiffs request an award against defendants of compensatory and punitive damages and injunctive relief.

## MOTIONS TO DISMISS

The five motions filed by defendants, and the responses of plaintiffs, which are before the court, are as follows.

On January 7, 2011, defendants Mary Germond, Meta Wertz, Beth Prodoehl,[2] Patricia McGettigan, Gina Giancristiforo

---

[2]      In the Complaint, defendant's name is listed as "Beth Prodoehl", although the motion to dismiss filed by defendants provides her name as "Beth Prodochl".  No party has moved to amend the caption.  Therefore, this Opinion and Order will refer to defendant as Beth Prodoehl.

and the County of Delaware filed a motion to dismiss.[3]
Plaintiffs responded on January 20, 2011.[4]

On January 13, 2011, defendants G. Michael Green and
Michael R. Galantino filed a motion to dismiss.[5]  Plaintiffs
responded on January 27, 2011.[6]

On January 18, 2011, defendants Pennsylvania State
University Hershey Medical School, Danielle K. Boal, M.D., and

---

[3]      Defendants' motion to dismiss is entitled Motion of Defendants,
County of Delaware on Behalf of its Council, Mary Germond, Meta Wertz, Beth
Prodochl, Patricia McGettigan and Gina Giancristiforo to Dismiss Plaintiffs'
Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6) or,
Alternatively, to Strike the Pleading Under Fed.R.C.P. 12(f).  Defendants
filed an accompanying memorandum of law entitled Memorandum of Law in Support
of Motion of Defendants, County of Delaware on Behalf of its Council, Mary
Germond, Meta Wertz, Beth Prodochl, Patricia McGettigan and Gina
Giancristiforo to Dismiss Plaintiffs' Complaint Pursuant to Federal Rule of
Civil Procedure 12(b)(6) or, Alternatively, to Strike the Pleading Under
Fed.R.C.P. 12(f).

         On June 17, 2011, I granted the Stipulation of Counsel to
Substitute Party Defendant, which removed Delaware County Council as a party
defendant and substituted the County of Delaware.

[4]      Plaintiffs' response is entitled Answer to Defendants, County of
Delaware on Behalf of its Council, Mary Germond, Meta Wertz, Beth Prodoehl,
Patricia McGettigan and Gina Giancristiforo Motion to Dismiss Plaintiffs'
Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6) or,
Alternatively, to Strike the Pleading Under Fed.R.C.P. 12(f).  Plaintiffs
filed an accompanying memorandum of law titled Memorandum of Law in Opposition
of Defendants, County of Delaware on Behalf of its Council, Mary Germond, Meta
Wertz, Beth Prodoehl, Patricia McGettigan and Gina Giancristiforo to Dismiss
Plaintiffs' Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6) or,
Alternatively, to Strike the Pleading Under Fed.R.C.P. 12(f).

[5]      Defendants' motion to dismiss is entitled Defendants', G. Michael
Green and Michael R. Galantino Motion to Dismiss.  Defendants filed an
accompanying memorandum of law entitled Defendants' G. Michael Green and
Michael R. Galantino Memorandum of Law in Support of Their Motion to Dismiss
Pursuant to Rule 12(b)(6).

[6]      Plaintiffs' response is entitled Memorandum of Law in Opposition
to Motion of Defendants G. Michael Green and Michael R. Galantino Under
Rule 12(b)(6) to Dismiss and Rule 8 to Strike.

Kathleen D. Eggli, M.D. filed a motion to dismiss.[7]  Plaintiffs

responded on February 7, 2011.[8]

On January 19, 2011, defendants Allan R. DeJong, M.D.,

Nemours Foundation and Edward Speedling filed a motion to

dismiss.[9]  Plaintiffs responded on February 1, 2011.[10]

---

[7]      Defendants' motion to dismiss is entitled Motion of Defendants
Penn State Hershey Medical School, Danielle K. Boal, M.D., and Kathleen D.
Eggli, M.D., to Dismiss.  Defendants filed an accompanying memorandum of law
entitled Memorandum of Law in Support of Motion of Defendants Penn State
Hershey Medical School, Danielle K. Boal, M.D., and Kathleen D. Eggli, M.D.,
to Dismiss.

[8]      Plaintiffs' response is entitled Answer to Defendants, Penn State
Hershey Medical School, Danielle K. Boal, M.D. and Kathleen Eggli, M.D.'s
Motion to Dismiss.  Plaintiffs filed an accompanying memorandum of law
entitled Memorandum of Law in Opposition to Motion of Defendants, Penn State
Hershey Medical School, Danielle K. Boal and Kathleen D. Eggli, to Dismiss
Plaintiffs' Complaint.

     In the caption of the Complaint, defendant Boal is referred to as
Daniell B. Boal, M.D.  In paragraph 18 of the Complaint, she is referred to as
Danielle W. Boal.  In her motion to dismiss and supporting memorandum, and in
plaintiffs' answer and opposing memorandum, she is referred to as Danielle K.
Boal, M.D.

     One can assume that Dr. Boal's counsel (who signed his motion and
memorandum as "Attorney for Defendants, ...Danielle K. Boal, M.D. ...") knows
his client's name.  However, no one has filed a motion to amend the caption.
Accordingly, I will continue to refer to defendant in the caption as Daniell
B. Boal, M.D. and to refer to her in connection with her motion to dismiss as
Danielle K. Boal, M.D.  Numerous references to her throughout the Opinion as
Dr. Boal or defendant Boal, however, will moot most of the confusion.

[9]      Defendants' motion to dismiss and accompanying memorandum of law
are entitled Motion of Defendants, Allan R. DeJong, M.D., The Nemours
Foundation and Edward Speedling, to Dismiss Plaintiffs' Complaint Pursuant to
Federal Rules of Civil Procedure 8(a)(2) and 12(b)(6), or Alternatively, to
Strike the Complaint Pursuant to Rule 8(a)(2) with Supporting Memorandum.

[10]     Plaintiffs' response is entitled Memorandum of Law in Opposition
to Motion of Defendants, Allan R. DeJong, Edward Speedling and Nemours
Foundation to Dismiss Plaintiffs' Complaint Pursuant to Federal Rules of Civil
Procedure 8(a)(2) and 12(b)(6), or Alternatively, to Strike the Complaint
Pursuant to Rule 8(a)(2).

Finally, on January 28, 2011, defendant Cindy W. Christian, M.D. filed a motion to dismiss.[11]  Plaintiffs responded on February 16, 2011.[12]

Oral argument on defendants' motions was held before me on June 17, 2011.  At the conclusion of oral argument, the matter was taken under advisement.  Hence this Opinion.

<u>**SUMMARY OF DECISION**</u>

For the reasons expressed below, the motion to dismiss plaintiffs' Complaint filed by defendants Mary Germond, Meta Wertz, Beth Prodoehl, Patricia McGettigan, Gina Giancristiforo and the County of Delaware is granted in part and denied in part. The four motions to dismiss plaintiffs' Complaint filed by the remaining defendants are each granted.[13]

As a result, plaintiffs' claims are dismissed with prejudice regarding the following counts of the Complaint:

---

[11]     Defendant's motion to dismiss is entitled Defendant Cindy W. Christian M.D.'s Motion to Dismiss the Complaint.  Defendant filed an accompanying memorandum of law entitled Memorandum in Support of Defendant Cindy W. Christian, M.D.'s Motion to Dismiss the Complaint.

[12]     Plaintiff's response is entitled Plaintiffs' Memorandum of Law in Opposition to Motion of Defendant, Cindy W. Christian to Dismiss Plaintiffs' Complaint.

[13]     Defendants Allan R. DeJong, M.D., Nemours Foundation, Edward Speedling, Delaware County District Attorney G. Michael Green, and Deputy District Attorney Michael R. Galantino, in addition to their motions to dismiss, bring motions to strike the Complaint pursuant to Federal Rule of Civil Procedure 8(a)(2).  I deny these defendants' motions to strike the Complaint, together with the motion to strike the Complaint filed on behalf of defendants Mary Germond, Meta Wertz, Beth Prodoehl, Patricia McGettigan, Gina Giancristiforo, and the County of Delaware.

Count I: plaintiffs' Fourteenth Amendment
substantive and procedural due process claims
against defendant Delaware County for deputizing
an employee of Delaware County Children and Youth
Services to act as a deputy clerk of court for all
dependency matters in place of the county's Office
of Judicial Support;

Count II: plaintiffs' Fourteenth Amendment
substantive and procedural due process claims
against CYS employees, defendants Wertz,
McGettigan, and Giancristiforo, for an alleged
delay in filing an ex parte memorandum with the
court concerning termination of plaintiff parents'
parental rights;

Count IV: plaintiffs' Fourteenth Amendment
procedural due process claim against defendant
Delaware County for the alleged policy of delaying
the scheduling of dependency hearings;

Count VI: plaintiffs' Fourteenth Amendment
substantive due process claim against defendant
Delaware County for CYS's reliance on defendant
Dr. DeJong's investigations, reports and
testimony;

Count VII: plaintiffs' Fourteenth Amendment
substantive due process claim against defendant
Dr. DeJong for multiple misrepresentations of
medical findings to support false accusations of
child abuse and related actions;

Count VIII: plaintiffs' claims pursuant to
42 U.S.C. §§ 1981, 1983, 1985 against defendants
Dr. DeJong, Wertz, McGettigan and Speedling for
conspiring to deprive plaintiffs of their equal
protection and due process rights based on gender
bias and racial animus in their entirety;

Count IX: plaintiffs' Fourteenth Amendment
procedural due process claim against defendants
Dr. DeJong, Germond, Wertz, McGettigan,
Giancristiforo, and Delaware County for adopting
the medical presumption that a subdural hematoma
("SDH") is caused by abuse as a legal presumption
in dependency and criminal cases;

Count X: plaintiffs' Fourteenth Amendment substantive and procedural due process claims against defendant Delaware County for failing to properly train CYS workers, supervisors and administrators about dependency proceedings;

Count XI: plaintiffs' claims pursuant to 42 U.S.C. §§ 1981 and 1985 against defendants Dr. DeJong, Dr. Christian, Dr. Boal and Deputy District Attorney Galantino for conspiring to misrepresent medical evidence concerning the age of B.D.'s subdural hematoma to deprive Mr. Dennis of his equal protection and due process rights;

Count XV: plaintiffs' Pennsylvania state-law negligence claim against defendant Dr. Doe in its entirety; and

Count XIX: plaintiffs' Pennsylvania state-law claim against defendant Dr. DeJong for intentional infliction of emotional distress.

Plaintiffs' claims are dismissed without prejudice for plaintiffs to file a more specific amended complaint regarding their claims in the following counts of the Complaint:

Count I: plaintiffs' Fourth and Fifth Amendments claims against defendant County of Delaware ("Delaware County") in their entirety;

Count II: plaintiffs' Fourteenth Amendment claims regarding the representations in the ex parte memorandum made by defendants Patricia McGettigan, Meta Wertz, and Gina Giancristiforo, and plaintiffs' Fourth and Fifth Amendments claims against those defendants in their entirety;

Count IV: plaintiffs' Fourteenth Amendment substantive due process claim against defendants McGettigan and Delaware County, and Fourth and Fifth Amendments claims against those defendants in their entirety;

Count V: plaintiffs' Fourth and Fifth Amendments claims against Delaware County in their entirety;

-8-

Count VI: plaintiffs' Fourteenth Amendment substantive due process claim against defendant Delaware County District Attorney G. Michael Green ("District Attorney Green") for District Attorney Green's reliance on defendant Allen R. DeJong, M.D.'s ("Dr. DeJong") investigations, reports and testimony;

Count IX: plaintiffs' Fourteenth Amendment procedural due process claim against District Attorney Green and Delaware County Deputy District Attorney Michael R. Galantino ("Deputy District Attorney Galantino") for adopting the medical presumption that a subdural hematoma ("SDH") is caused by abuse as a legal presumption in criminal cases;

Count X: plaintiffs' Fourteenth Amendment substantive and procedural due process claims against defendants Mary Germond, Wertz, McGettigan, and Giancristiforo for failing to properly train Delaware County Children and Youth Services ("CYS") workers, supervisors and administrators about dependency proceedings, and plaintiffs' Fourth and Fifth Amendments claims against defendants Germond, Wertz, McGettigan, Giancristiforo, and Delaware County in their entirety;

Count XI: plaintiffs' claims pursuant to 42 U.S.C. § 1983 against defendants Dr. DeJong, Cindy W. Christian, M.D. ("Dr. Christian), Danielle K. Boal, M.D. ("Dr. Boal"), and Deputy District Attorney Galantino for conspiring to misrepresent medical evidence concerning the age of B.D.'s subdural hematoma to deprive Mr. Dennis of his equal protection and due process rights in their entirety;

Count XII: plaintiffs' Fourth, Fifth, and Fourteenth Amendments claims against defendants District Attorney Green and Deputy District Attorney Galantino in their entirety;

Count XIII: plaintiffs' Fourth, Fifth, Sixth, and Fourteenth Amendment claims against defendants Kathleen D. Eggli, M.D. ("Dr. Eggli") and Nemours Foundation in their entirety;

-9-

Count XIV: plaintiffs' Pennsylvania state-law negligence claim against defendant Nemours Foundation in its entirety;

Count XVI: plaintiffs' Pennsylvania state-law claim against defendants Germond, Wertz, McGettigan, and Giancristiforo for malicious prosecution in its entirety;

Count XVII: plaintiffs' Pennsylvania state-law claim against defendant Deputy District Attorney Galantino for malicious prosecution in its entirety;

Count XVIII: plaintiffs' Pennsylvania state-law claim against defendants Dr. DeJong, Wertz, McGettigan, and Edward Speedling for civil conspiracy in its entirety; and

Count XIX: plaintiffs' Pennsylvania state-law claim against defendants Wertz, McGettigan, and Speedling for intentional infliction of emotional distress.

In addition, defendants' motions to dismiss plaintiffs' claims for injunctive relief in Counts II-IV, VI, VII, IX, X, XII, and XIII are granted and those counts are dismissed from plaintiffs' Complaint with prejudice.

Defendants' motions to strike plaintiffs' Complaint is denied.  Defendants' motion to dismiss on the ground of abstention for lack of subject matter jurisdiction is also denied.

Finally, defendants' motions to dismiss plaintiffs' Fourteenth Amendment claims against Delaware County in Counts II, III and V of plaintiffs' Complaint, against defendant Germond in

Count III, and against defendant McGettigan in Count IV, are each denied.

As a result of the forgoing rulings, the following claims remain in plaintiffs' Complaint and may be included in the amended complaint authorized by the within Order and Opinion without change:

> Count II: plaintiffs' Fourteenth Amendment substantive and procedural due process claims against defendant Delaware County;
>
> Count III: plaintiffs' Fourteenth Amendment procedural due process claim against defendants Germond and Delaware County;
>
> Count IV: plaintiffs' Fourteenth Amendment procedural due process claim against defendant McGettigan; and
>
> Count V: plaintiffs' Fourteenth Amendment substantive due process claim against defendant Delaware County.

## JURISDICTION

Jurisdiction in this case is based on federal question jurisdiction pursuant to 28 U.S.C. § 1331.  This court has supplemental jurisdiction over plaintiffs' pendent state-law claims.  See 28 U.S.C. § 1367.

## VENUE

Venue is proper pursuant to 28 U.S.C. § 1391(b) because the events giving rise to plaintiff's claims allegedly occurred within Delaware County, Pennsylvania, which is located within this judicial district.

## **PARTIES**

Plaintiffs are Reginald Dennis and Renee Dennis, husband and wife, and their son, B.D., a minor.  B.D. was an infant during the relevant time giving rise to their causes of action.[14]

Plaintiffs name sixteen defendants.  Fifteen of these defendants have joined one of five groups of defendants, each of which groups has filed a motion to dismiss plaintiffs' Complaint. The sixteenth defendant, whose name is unknown and who is identified as "Dr. Doe", did not file a motion to dismiss the Complaint.

The first group of defendants to file a motion to dismiss is comprised of the County of Delaware ("Delaware County") and employees of the Delaware County Children and Youth Services ("CYS").  These defendant employees are as follows: Mary Germond is the administrator of CYS; Meta Wertz is the intake administrator of CYS; Beth Prodoehl is the kinship administrator of CYS; Patricia McGettigan is the intake supervisor of CYS; and Gina Giancristiforo is the intake case-worker of CYS.[15]  The Complaint alleges that these defendants

---

[14]     Complaint, paragraph 3.

[15]     Complaint, paragraphs 9-13.

In the caption of the Complaint defendant Giancristiforo is referred to as Gina Giancrist**i**foro.  This spelling is also utilized in paragraphs 136 (page 30) and 478 (page 113) of the Complaint.
(Footnote 15 continued):

(collectively, the "Delaware County defendants") are responsible for pursuing the dependency proceedings against plaintiffs.[16]

The second group of defendants to file a motion to dismiss is comprised of the Delaware County District Attorney, G. Michael Green, and Delaware County Deputy District Attorney, Michael R. Galantino.  Plaintiffs allege that these two defendants pursued criminal charges against Mr. Dennis for the alleged abuse of his son.[17]

The third group of defendants that filed a motion to dismiss is the Pennsylvania State University Hershey Medical School ("PSUHMS"),[18] along with two employees;  Danielle K. Boal, M.D., who is a radiologist, and Kathleen D. Eggli, M.D., who is the Chair of the Radiology Department.[19]  These defendants

---

(Continuation of footnote 15):

In several places in the Complaint, she is referred to as Gina Giancrist**o**foro or Ms. Giancrist**o**foro, for example:  paragraphs 13 (page 7), 137 (page 31), 508 (page 121), 522 (page 125), and 527 (page 127); and in the descriptive headings for Counts II (page 28), IX (page 125), X (page 131), and XVI (page 154).

One can assume that Ms. Giancristiforo's counsel (who signed her motion to dismiss and memorandum in support as "Attorney for...Gina Giancristiforo") knows her client's name.  In addition, no one has filed a motion to amend the caption.  Accordingly, I will refer to her throughout this Opinion as Gina Giancristiforo.

[16]   Id.

[17]   Complaint, paragraphs 14 and 15.

[18]   Count XIII of plaintiffs' Complaint names "Penn State Hershey Medical Center" as the defendant party, although upon review of the parties' briefs, it is apparent that "Penn State Hershey Medical Center" is used interchangeably with "Pennsylvania State University Hershey Medical School".

[19]   Complaint, paragraphs 18 and 19.

(collectively, the "PSUHMS defendants") allegedly provided an expert medical report in preparation for the criminal prosecution of Mr. Dennis for the alleged abuse of his son.[20]

The fourth group of defendants filing a motion to dismiss is The Nemours Foundation, which owns and operates the Alfred I. duPont Hospital for Children ("duPont Hospital") in Wilmington, Delaware, and two hospital employees.  Defendant Allan R. DeJong, M.D. maintains a primary office at duPont Hospital.[21]  Defendant Edward Speedling is a social worker at duPont Hospital.[22]  These defendants (collectively, the "Nemours defendants") allegedly investigated and reported the possible abuse of B.D. upon his admittance to duPont Hospital.[23]

Cindy W. Christian, M.D. filed the fifth motion to dismiss.  She is a pediatrician at Childrens' Hospital of Philadelphia.[24]  Plaintiffs aver that Dr. Christian provided an expert medical report in preparation for a criminal prosecution of Mr. Dennis for allegedly abusing his son.[25]

---

[20]   Id.

[21]   Complaint, paragraph 6.

[22]   Complaint, paragraph 16.

[23]   Complaint, paragraphs 6, 7, and 16.

[24]   Complaint, paragraph 17.

[25]   Id.

## CLAIMS

Count I of plaintiffs' Complaint alleges procedural and substantive due process claims pursuant to the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution against Delaware County, alleging that Delaware County created a conflict of interest by deputizing a CYS employee to serve as the Clerk of Juvenile Court.

Count II alleges procedural and substantive due process claims pursuant to the Fourth, Fifth, and Fourteenth Amendments against Ms. Wertz, Ms. McGettigan, Ms. Giancristiforo, and Delaware County. Count II alleges that Delaware County has a retaliatory policy of refusing to place a child with relatives when a removal occurs because CYS suspects that the parents are abusing the child, and the parents maintain their innocence. Count II further alleges that defendants failed to timely seek protective custody of B.D. It also alleges that defendants misrepresented facts and law in an ex parte request for protective custody.

Count III contains a procedural due process claim pursuant to the Fourth, Fifth, and Fourteenth Amendments against Mary Germond and Delaware County for excessive delay in filing the dependency petition in violation of 23 Pa.C.S.A. § 6315, and for misrepresentations and deficiencies in the dependency petition.

Count IV alleges procedural and substantive due process claims pursuant to the Fourth, Fifth, and Fourteenth Amendments against Ms. McGettigan and Delaware County for excessive delay in scheduling the dependency hearing in violation of 42 Pa.C.S.A. § 6335, and for defendants' failure to timely comply with mandatory discovery rules in conjunction with the dependency proceedings.

Count V contains a substantive due process claim pursuant to the Fourth, Fifth, and Fourteenth Amendments against Delaware County.  The county is sued for its alleged retaliatory policy of refusing to allow plaintiff mother Renee Dennis longer visitation or the return of her son B.D., despite Mrs. Dennis's full compliance with the CYS Family Service Plan, because she maintained her innocence and her husband's innocence.

Count VI asserts a substantive due process claim against Delaware County District Attorney G. Michael Green and Delaware County for relying on the medical opinion provided by Dr. DeJong regarding B.D., despite Dr. DeJong's alleged history of biased and unreliable investigations of suspected cases of child abuse.

Count VII contains a substantive due process claim against Dr. DeJong, alleging that he made multiple reckless misrepresentations of medical findings in bad faith, which were not objectively reasonable, in order to support false allegations

of child abuse.  Count VII further alleges that Dr. DeJong's
actions in investigating the alleged child abuse are fairly
attributable to Delaware County and the Delaware County District
Attorney.

Count VIII asserts civil conspiracy claims pursuant to
42 U.S.C. §§ 1981, 1983, and 1985 against Dr. DeJong, Ms. Wertz,
Ms. McGettigan, and Mr. Speedling, for conspiring to deprive
plaintiffs of equal protection of laws and due process.
Count VIII is based upon defendants' alleged gender bias and
racial animus.  Specifically, Count VIII alleges that defendants'
actions in connection with B.D.'s removal were motivated by
gender and racial biases against Mr. Dennis, as an African-
American male, and a racial bias against the Dennis family
because of their interracial marriage.

Count IX alleges a due process claim under the
Fourteenth Amendment against Dr. DeJong, Ms. Germond, Ms. Wertz,
Ms. McGettigan, Ms. Giancristiforo, District Attorney Green,
Deputy District Attorney Galantino, and Delaware County.  They
are sued for adopting a medical presumption - that a subdural
hematoma in a child under one year of age is the result of child
abuse - as a legal presumption in the dependency and criminal
cases against Mr. Dennis.

Count X contains Fourth, Fifth, and Fourteenth
Amendment claims against Ms. Germond, Ms. Wertz, Ms. McGettigan,

-17-

Ms. Giancristiforo, and Delaware County for failure to properly train and supervise CYS employees.  Count X alleges that plaintiffs' due process rights were violated because defendants failed to properly train CYS employees regarding filing dependency petitions, scheduling dependency trials, the appropriate use of ex parte communications with the court, the duty of candor to the court in ex parte communications, the unconstitutionality of gender bias in child abuse investigations, and the unconstitutionality of adopting the medical presumption identified in Count IX.

Count XI alleges a civil conspiracy claim pursuant to 42 U.S.C. §§ 1981, 1983, and 1985 against Dr. DeJong, Dr. Christian, Dr. Boal, and Deputy District Attorney Galantino. It alleges that they conspired to deprive Mr. Dennis of his equal protection and due process rights.  Count XI alleges that defendants misrepresented the medical evidence concerning the age of B.D.'s subdural hematoma in order to continue a criminal investigation against Mr. Dennis and pressure him into pleading guilty.

Count XII contains Fourth, Fifth, and Fourteenth Amendment claims against District Attorney Green and Deputy District Attorney Galantino for failure to train and supervise Dr. DeJong.  It also sues District Attorney Green for failure to train and supervise Deputy District Attorney Galantino,

regarding the unconstitutionality of utilizing the medical
presumption identified in Count IX as a legal presumption.

Count XIII asserts a due process claim pursuant to the
Fourth, Fifth, and Fourteenth Amendments against PSUHMS and
Dr. Eggli for implementing PSUHMS's expert witness policy in a
discriminatory manner for the purpose of disadvantaging criminal
defendants.  Count XIII further alleges a claim for ineffective
assistance of counsel pursuant to the Sixth Amendment.[26]

Count XIV contains a pendent Pennsylvania state-law
claim for negligence against The Nemours Foundation, which
operates duPont Hospital, alleging that duPont Hospital
negligently retained Dr. DeJong as the medical director in charge
of child abuse investigations.

Count XV alleges a pendent Pennsylvania state-law claim
for negligence against Dr. Doe, an unidentified doctor at duPont
Hospital, alleging that he negligently performed a procedure on
the wrong side of B.D.'s head on November 24, 2008.

Count XVI contains a pendent Pennsylvania state-law
claim for malicious prosecution against Ms. Germond, Ms. Wertz,
Ms. McGettigan, and Ms. Giancristiforo, alleging that they had no
reasonable basis to continue dependency proceedings after Mrs.

---

[26]     The Complaint asserts an ineffective assistance of counsel claim
against PSUHMS and Dr. Eggli.  Although they are not attorneys, plaintiffs
contend that these defendants rendered ineffective the assistance of Mr.
Dennis's counsel during the criminal proceedings because defendants interfered
with counsel's ability to obtain a PSUHMS-approved expert medical report.  See
Complaint, paragraphs 596-609.

Dennis obtained positive reports from both a CYS parent educator and a CYS psychologist.

Count XVII alleges a pendent Pennsylvania state-law claim for malicious prosecution against Deputy District Attorney Galantino, alleging that he had no reasonable basis for continuing the criminal investigation of Mr. Dennis following the Delaware County Court of Common Pleas's dismissal of the dependency petition.

Count XVIII contains a pendent Pennsylvania state-law claim for civil conspiracy against Dr. DeJong, Ms. Wertz, Ms. McGettigan, and Mr. Speedling for agreeing among themselves to misrepresent information to the Chester County Police Department, and for misrepresenting that information to the police, in order to effectuate the arrest of Mr. Dennis.

Finally, Count XIX asserts a pendent Pennsylvania state-law claim for intentional infliction of emotional distress against Dr. DeJong, Ms. Wertz, Ms. McGettigan, and Mr. Speedling. It alleges that they retaliated against Mr. Dennis for retaining an attorney by enhancing their efforts to effectuate his arrest following his retention of the attorney.

## **STANDARD OF REVIEW**

A claim may be dismissed under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted."  Fed.R.Civ.P. 12(b)(6).  A Rule 12(b)(6)

motion requires the court to examine the sufficiency of the

complaint.  Conley v. Gibson, 355 U.S. 41, 45, 78 S.Ct. 99, 102,

2 L.Ed.2d 80, 84 (1957) (abrogated in other respects by

Bell Atlantic Corporation v. Twombly, 550 U.S. 544,

127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).  Generally, in ruling on

a motion to dismiss, the court relies on the complaint, attached

exhibits, and matters of public record, including other judicial

proceedings.  Sands v. McCormick, 502 F.3d 263, 268

(3d Cir. 2008).

Except as provided in Federal Rule of Civil

Procedure 9, a complaint is sufficient if it complies with

Rule 8(a)(2), which requires "a short and plain statement of the

claim showing that the pleader is entitled to relief."

Fed.R.Civ.P. 8(a)(2).  Rule 8(a)(2) "[does] not require

heightened fact pleading of specifics, but only enough facts to

state a claim to relief that is plausible on its face."  Twombly,

550 U.S. at 570, 127 S.Ct. at 1974, 167 L.Ed.2d at 949.[27]

---

[27]     The Supreme Court's Opinion in Ashcroft v. Iqbal, __U.S. __, __,
129 S.Ct. 1937, 1953, 173 L.Ed.2d 868, 887 (2009), states clearly that the
"facial plausibility" pleading standard set forth in Twombly applies to all
civil suits in the federal courts.  Fowler v. UPMC Shadyside,
578 F.3d 203, 210 (3d Cir. 2009).  This showing of facial plausibility then
"allows the court to draw the reasonable inference that the defendant is
liable for the misconduct alleged," and that the plaintiff is entitled to
relief.  Fowler, 578 F.3d at 210 (quoting Iqbal, __ U.S. at __,
129 S.Ct. at 1949, 173 L.Ed.2d at 884).  As the Supreme Court explained in
Iqbal, "[t]he plausibility standard is not akin to a 'probability
requirement,' but it asks for more than a sheer possibility that the defendant
acted unlawfully."  Iqbal, __ U.S. at __, 129 S.Ct. at 1949, 173 L.Ed.2d at
884.

In determining whether plaintiffs' complaint is
sufficient, the court must "accept all factual allegations as
true, construe the complaint in the light most favorable to the
plaintiff[s], and determine whether, under any reasonable
reading, the plaintiff[s] may be entitled to relief." Fowler,
578 F.3d at 210 (quoting Phillips v. County of Allegheny,
515 F.3d 224, 233 (3d Cir. 2008)).

Although "conclusory or 'bare-bones' allegations will
[not] survive a motion to dismiss," Fowler, 578 F.3d at 210, "a
complaint may not be dismissed merely because it appears unlikely
that the plaintiff[s] can prove those facts or will ultimately
prevail on the merits." Phillips, 515 F.3d at 231.  Nonetheless,
to survive a 12(b)(6) motion, the complaint must provide "enough
facts to raise a reasonable expectation that discovery will
reveal evidence of the necessary element[s]." Id. (quoting
Twombly, 550 U.S. at 556, 127 S.Ct. at 1965, 167 L.Ed.2d at 940)
(internal quotation omitted).

The court is required to conduct a two-part analysis
when considering a Rule 12(b)(6) motion.  First, the factual
matters averred in the complaint, and any attached exhibits,
should be separated from legal conclusions asserted therein.
Fowler, 578 F.3d at 210.  Any facts pled must be taken as true,
and any legal conclusions asserted may be disregarded.
Id. at 210-211.  Second, the court must determine whether those

factual matters averred are sufficient to show that the
plaintiffs have a "plausible claim for relief." Id. at 211
(quoting Iqbal, __ U.S. at __, 129 S.Ct. at 1950,
178 L.Ed.2d at 884).

Ultimately, this two-part analysis is "context-
specific" and requires the court to draw on "its judicial
experience and common sense" to determine if the facts pled in
the complaint have "nudged [plaintiffs'] claims" over the line
from "[merely] conceivable [or possible] to plausible." Iqbal,
__ U.S. at __, 129 S.Ct. at 1950-1951, 178 L.Ed.2d at 884-885
(internal quotations omitted).  A well-pleaded complaint may not
be dismissed simply because "it strikes a savvy judge that actual
proof of those facts is improbable, and that a recovery is very
remote and unlikely." Twombly, 550 U.S. at 556,
127 S.Ct. at 1965, 167 L.Ed.2d at 940-941.

## FACTS

Accepting as true all of the well-pled facts in
plaintiffs' Complaint, and drawing all reasonable inferences in
favor of plaintiffs as the non-moving parties, which I
am required to do under the above standard of review, the
pertinent facts are as follows.

This case arises out of a child abuse investigation
which resulted in plaintiffs Reginald Dennis and Renee Dennis
temporarily losing custody of their infant son, plaintiff B.D.

B.D., the first and only child of Mr. and Mrs. Dennis, was born on September 17, 2008 following a prolonged labor and delivery.[28]

After a midwife made unsuccessful attempts to assist B.D.'s delivery, Mrs. Dennis went to Christiana Hospital[29], where an obstetrician manually turned B.D.'s head in order to allow delivery.[30]  On September 18, 2008, an attending physician at Christiana Hospital noted on B.D.'s chart that he had "overriding sutures", which means that the plates of his skull had not yet completely moved to the abutting position from the overlapping position during delivery because of the extreme compression and molding of B.D.'s head during the lengthy labor and delivery.[31]

B.D. had multiple visits to pediatricians following his birth, and no evidence of pain or bruising was present, although B.D. did suffer from jaundice.[32]  On November 18, 2008, after a routine pediatrician visit during which B.D. received a vaccination, B.D. became unusually fussy.[33]

---

[28]     Complaint, paragraphs 35 and 36.

[29]     The Complaint fails to specify the state and city where Christiana Hospital is located.

[30]     Complaint, paragraphs 32-35.

[31]     Complaint, paragraph 36.

[32]     Complaint, paragraphs 38-40 and 43.

[33]     Complaint, paragraphs 43 and 44.

On November 20, 2008, B.D. was still experiencing a negative reaction to the vaccination.[34]  Also on November 20, 2008, Mr. and Mrs. Dennis had dinner guests at their home, during which time Mr. Dennis took B.D. upstairs to change his diaper.[35] While he was upstairs alone with B.D., Mr. Dennis noticed a momentary limpness on B.D.'s left side and that B.D. was staring and had stopped crying.[36]  Mr. Dennis called for Mrs. Dennis, but by the time she was upstairs, the limpness had subsided and she noticed nothing unusual.[37]

Later that day B.D. continued to be fussy, and began vomiting, and at one point Mrs. Dennis noticed B.D.'s arm momentarily went limp.[38]  On November 21, 2008 Mr. and Mrs. Dennis took B.D. to their family physician, who attributed B.D.'s behavior to a negative reaction to the vaccination he had recently received.[39]

### B.D.'s Admittance to Christiana Hospital

B.D.'s symptoms did not improve, and on November 22, 2008, Mr. and Mrs. Dennis took B.D. to Christiana Hospital.[40]  At

---

[34]     Complaint, paragraph 45.

[35]     Id.

[36]     Complaint, paragraphs 45, 59, and 412.

[37]     Complaint, paragraph 45.

[38]     Id.

[39]     Complaint, paragraphs 47 and 48.

[40]     Complaint, paragraph 48.

Christiana Hospital, a computed tomography scan ("CT scan") of B.D. was performed, which revealed that B.D. had a left frontal subdural hematoma.[41]  The examination did not reveal a skull fracture or any bruising or external signs of trauma.[42] Nonetheless, Christiana Hospital referred the matter to CYS and transferred B.D. to duPont Hospital in Wilmington, Delaware.[43]

### B.D.'s Admittance to duPont Hospital

B.D. was admitted to duPont Hospital on November 22, 2008.  On that date, a duPont Hospital radiologist found a "short segment of skull fracture identified in the left temporal region" on B.D.'s head CT scan.[44]  However, a full skeletal x-ray performed at duPont Hospital on November 24, 2008 did not confirm this skull fracture, and revealed that B.D. had a recent re-bleed of a chronic subdural hematoma that was weeks or months old, and could date back to B.D.'s difficult birth.[45]

In addition, radiologic studies at duPont Hospital revealed that B.D. had multiple healing anterior rib fractures, without any internal organ injury.[46]  Congenital rickets, from

---

[41]     Complaint, paragraph 49.

[42]     Complaint, paragraphs 49 and 308.

[43]     Complaint, paragraph 53.

[44]     Complaint, paragraph 309.

[45]     Complaint, paragraphs 54, 311-316 and 330-331.

[46]     Complaint, paragraphs 55 and 342.

which B.D. was suffering, is a type of metabolic bone disorder that can cause such anterior rib fractures.[47]  The duPont Hospital radiologic studies showed no medical evidence of a skull fracture, neck or spine injury to B.D.[48]

In addition to the radiologic studies, B.D. was evaluated by the Children At Risk Evaluation team ("CARE team") and the Children's Advocacy Center of Delaware ("CACD") at duPont Hospital.  duPont Hospital[49] established the CARE team, which evaluates and identifies patients whose injuries indicate that they may be victims of child abuse.  duPont Hospital appointed defendant Dr. Allan R. DeJong to serve as the medical director of the CARE team.[50]  Defendant Edward Speedling, a social worker employed by duPont Hospital, served as a member of the CARE team.[51]

duPont Hospital also hosts the CACD, which is a Delaware corporation that has a facility based at the hospital.[52] CACD operates a comprehensive program which allows law enforcement personnel, child protection professionals,

---

[47]     Complaint, paragraphs 55 and 362-363.

[48]     Complaint, paragraph 56.

[49]     The "d" in the proper name "duPont Hospital" is lower case. Accordingly, when a sentence in this Opinion begins with the name of that hospital, I will not capitalize the "d" in "duPont".

[50]     Complaint, paragraph 7.

[51]     Complaint, paragraph 16.

[52]     Complaint, paragraph 7.

-27-

prosecutors and medical personnel to work together when intervening in suspected child abuse cases. CACD appointed Dr. DeJong to serve as the statewide medical director of CACD.[53] Both the CARE team and CACD perform the same or similar functions in child abuse investigations at duPont Hospital.[54]

On November 24, 2008, Mrs. Dennis was interviewed by Dr. DeJong and Mr. Speedling.[55] She explained that she knew of no trauma, accidental or inflicted, that B.D. had sustained, and she provided a history of B.D.'s difficult birthing process.[56] Mrs. Dennis explained that neither she nor Mr. Dennis had done anything to harm B.D.[57] She also explained the brief moments of left side limpness which she and her husband had observed on November 20, 2008.[58]

In addition, Mrs. Dennis explained that when B.D.'s bilirubin level was extremely elevated in late October, which is a cause of jaundice, she noticed a small red mark on B.D.'s chest that disappeared by the following morning.[59] Although she did not know the cause of the mark, Mrs. Dennis discussed the mark

---

[53]   Id.

[54]   Id.

[55]   Complaint, paragraph 58.

[56]   Id.

[57]   Complaint, paragraph 60.

[58]   Complaint, paragraph 59.

[59]   Complaint, paragraphs 40 and 59.

with Mr. Dennis because she believed it may have been attributable to the way Mr. Dennis held B.D. when he was struggling or being fussy.[60]  They determined how Mr. Dennis could hold B.D. differently in the event that his previous way of holding B.D. had been the cause of the mark.[61]

Mrs. Dennis also explained that a week later a second red mark appeared on B.D.'s back, which again disappeared by the following morning.[62]  She believed the snaps on B.D.'s clothing may have caused the mark, so she began to dress B.D. differently, and she did not observe any further marks on B.D.[63]

### Dr. DeJong's Representations to CYS and Officer Collins

CYS and Officer Collins[64] of the Chester County Police Department interviewed Dr. DeJong regarding the information he obtained from speaking with Mrs. Dennis.  In interpreting his interview with Mrs. Dennis, Dr. DeJong claimed that Mrs. Dennis had provided no explanation for B.D.'s injuries, when in fact she had consistently described B.D.'s difficult birth.[65]  Dr. DeJong also represented Mrs. Dennis's explanation of the two red marks

---

[60]     Complaint, paragraphs 40 and 41.

[61]     Complaint, paragraph 41.

[62]     Complaint, paragraph 42.

[63]     Id.

[64]     The Complaint only refers to "Officer Collins" of the Chester County Police Department and does not provide his first name.

[65]     Complaint, paragraphs 58, 61 and 356-357.

she had observed in October as an admission that her husband had bruised B.D. in the past.[66]

On November 24, 2008 Dr. DeJong created a medical report regarding B.D., wherein he described B.D. as a "9½ week old biracial male."[67]

In his November 24, 2008 medical report, Dr. DeJong represented to Officer Collins and CYS that Mrs. Dennis's description of how her husband witnessed B.D.'s left side limpness while he was alone with B.D., changing his diaper on November 20, 2008, as a potential "injury event".[68]  Although the limpness was ultimately attributable to the re-bleeding of the subdural hematoma, which can occur spontaneously, Dr. DeJong classified the diaper-changing incident as an "injury event" during which time Mr. Dennis was abusing B.D.[69]

Further, without reviewing the records of B.D.'s difficult birth,[70] Dr. DeJong interpreted the magnetic resonance imaging ("MRI") and CT scan as showing evidence of severe and significant skull fractures,[71] construing them in accordance with

---

[66]     Complaint, paragraph 62 and 406.

[67]     Complaint, paragraph 490.

[68]     Complaint, paragraph 62.

[69]     Complaint, paragraphs 52, 54 and 62.

[70]     Complaint, paragraphs 354 and 358.

[71]     Complaint, paragraphs 317 and 318

the November 20, 2008 "injury event" he surmised from his interview with Mrs. Dennis.[72]

Dr. DeJong had concluded on or before November 26, 2008 that B.D.'s injuries were the result of abuse, and he represented that he had done "extensive" tests looking for non-traumatic explanations.[73]  However, Dr. DeJong did not perform additional tests to rule out non-traumatic explanations for B.D.'s injuries, including congenital rickets, until early December of 2008.[74]

Furthermore, although no duPont Hospital radiologists estimated the age of B.D.'s rib fractures, because dating such fractures is an "inexact science",[75] Dr. DeJong represented that the fractures were two-to-four-weeks old.[76]

Dr. DeJong never asked Mrs. Dennis about her pregnancy or medical history, which would have revealed that she suffered from a Vitamin D deficiency.[77]  Such deficiency is a cause of congenital rickets in infants, which can lead to metabolic bone disorders which cause the type of rib fractures present in B.D.[78]

---

[72]    Complaint, paragraphs 327 and 339.

[73]    Complaint, paragraphs 376 and 377.

[74]    Complaint, paragraphs 379, 385-386, and 390.

[75]    Complaint, paragraphs 341-343.

[76]    Complaint, paragraph 348.

[77]    Complaint, paragraphs 367-374.

[78]    Complaint, paragraphs 362 and 363.

In addition, in Dr. DeJong's interview with Officer Collins, Dr. DeJong omitted the fact that although B.D. was on a ventilator, B.D. had been electively intubated in order to facilitate the performance of an MRI, and that B.D. was breathing on his own when he was initially admitted to duPont Hospital.[79]

Further, Dr. DeJong informed CYS that "in the absence of any admission or disclosure by either parent of any abuse, it would be difficult to assure B.D.'s safety with either of his parents."[80]

duPont Hospital discharged B.D. on December 9, 2008. At his discharge, a second full skeletal x-ray was performed. The results confirmed the findings of the November 24, 2008 full skeletal x-ray, which determined that B.D. did not have a skull fracture, or a fracture of any type on his body.[81]

### Arrest of Reginald Dennis

On November 25, 2008, Mr. and Mrs. Dennis voluntarily went to the CYS office where they were interviewed.[82]  During the interviews, CYS stated its position that Mr. Dennis was the perpetrator of abuse by commission and that Mrs. Dennis was the perpetrator of abuse by omission, and that the police would be

---

[79]   Complaint, paragraphs 62, 394, 397, and 400-401.

[80]   Complaint, paragraph 82.  The Complaint does not allege the date of Dr. DeJong's statement.

[81]   Complaint, paragraphs 200 and 315.

[82]   Complaint, paragraph 66.

contacting them soon.[83]  Following these interviews, defendant
Patricia McGettigan, a supervisor at CYS, contacted Mr. Speedling
at duPont Hospital and informed him "that there would be no
change in [Mr. and Mrs. Dennis's] visitation [of B.D. at duPont
Hospital] at this time."[84]

Also on November 25, 2008, Mr. Speedling explained to
Ms. McGettigan that the "medical team was very concerned about
the child's injuries and felt that they were likely non-
accidental."[85]  Ms. McGettigan responded that although police
interviews had not yet been conducted, she had left three
messages for the Chester County Police Department to investigate
the potential abuse.[86]  Mr. Speedling asked Ms. McGettigan to
call him "once she had talked with law enforcement."[87]

Also on November 25, 2008, Mr. Speedling noted that he
personally contacted the Chester County Police Department and
left a message because he was "uncomfortable" with how the
investigative process had been conducted thus far.[88]  In the
message which he left, Mr. Speedling requested that someone from

---

[83]     Complaint, paragraph 150.

[84]     Complaint, paragraph 67.

[85]     Complaint, paragraphs 67 and 68.

[86]     Complaint, paragraph 68.

[87]     Complaint, paragraph 69.

[88]     Complaint, paragraph 71.

the Chester County Police Department contact either him or
Ms. McGettigan at CYS.[89]

On November 26, 2008, Mr. Speedling noted at 12:11 p.m.
that he had still not received a call from the Chester County
Police Department, and that he and Dr. DeJong were "very
concerned" that there had been no police response.[90]

Mr. Speedling contacted Ms. McGettigan regarding his
concern, and she informed him that she had not received a
response from the Chester County Police Department and that
Mr. Dennis had retained an attorney.[91]  Mr. Speedling noted that
he "updated the medical team about this investigative glitch",
and he asked Ms. McGettigan to contact her supervisor to see if
they could expedite a police response.[92]

During their correspondence, Ms. McGettigan also
indicated to Mr. Speedling that she would contact defendant Meta
Wertz, an intake administrator for CYS.[93]  Ms. McGettigan also
suggested to Mr. Speedling that Mr. Speedling and Dr. DeJong

---

[89]     Id.

[90]     Complaint, paragraph 72.

[91]     Id.

[92]     Id.

[93]     Id.  The Complaint provides the name in this paragraph as "Ms.
Mertz" instead of Ms. Wertz.  Ms. Mertz is not mentioned in any other
paragraph of the Complaint.  Construing the Complaint in the light most
favorable to plaintiffs, as I must, a reasonable reading of paragraph 72 is
that Ms. Mertz is actually Ms. Wertz, a named defendant.  See Fowler,
578 F.3d at 210.

attempt to reach Sergeant Archacki[94] of the Chester County Police Department in order to indicate the "pressing urgency."[95]

In addition, Dr. DeJong called defendant Delaware County Deputy District Attorney Michael R. Galantino and told him that Mr. Dennis should be charged with child abuse and arrested immediately.[96]  Also on November 26, 2008, Deputy District Attorney Galantino called Officer Collins and requested that the officer interview Mr. and Mrs. Dennis as soon as possible.[97]

On that same date, Ms. McGettigan contacted both Officer Collins and Sergeant Archacki of the Chester County Police Department.[98]  Following these phone calls, at 5:00 p.m. on November 26, 2008, Officer Collins went to duPont Hospital and interviewed Dr. DeJong.[99]

Subsequently, Officer Collins called Deputy District Attorney Galantino to report the findings of his investigation, and he received authorization to file criminal charges against Mr. Dennis.[100]  The Criminal Complaint charged Mr. Dennis with

---

[94]     The Complaint does not provide Sergeant Archacki's first name.

[95]     Complaint, paragraph 72.

[96]     Complaint, paragraph 73.

[97]     Id.

[98]     Complaint, paragraph 74.

[99]     Complaint, paragraph 75.

[100]     Id.

Simple assault,[101] Aggravated assault,[102] and Endangering welfare of children.[103]

Officer Collins based his affidavit of probable cause entirely on his interview with Dr. DeJong.  The officer obtained an arrest warrant at 10:29 p.m. on November 26, 2008 from Magisterial District Judge Nicholas S. Lippincott in Magisterial District 32-2-46, Media, Pennsylvania.[104]

At 1:00 a.m. on November 27, 2008, which was Thanksgiving morning, Mr. Dennis was arrested at duPont Hospital by Officer Collins.[105]  Bail was set at $100,000.00 cash bail.  A condition of bail was that Mr. Dennis have no contact with B.D.[106] On December 3, 2008, after Mr. Dennis had been incarcerated for eight days, Mrs. Dennis's parents, Bob and Marlene Groff, posted bail and Mr. Dennis was released from jail.[107]

## Dependency Proceedings

As early as November 22, 2008, CYS indicated to Mr. and Mrs. Dennis that B.D. would likely be removed from their custody upon his discharge from the duPont Hospital because the

---

[101]   18 Pa.C.S.A. § 2701.

[102]   18 Pa.C.S.A. § 2702.

[103]   18 Pa.C.S.A. § 4304.

[104]   Complaint, paragraph 77.

[105]   Complaint, paragraph 78.

[106]   Id.

[107]   Complaint, paragraph 84.

CYS investigation would be incomplete.[108]  On November 22, 2008,
plaintiffs offered Mrs. Dennis's parents, the Groffs, who live in
Lancaster County, as possible caregivers for B.D. in the
interim.[109]

During Mr. and Mrs. Dennis's November 25, 2008
interviews with CYS, they offered the Groffs again as caregivers
for B.D.[110]  However, CYS rejected the Groffs because it would be
"too much paperwork" to place B.D. with family in Lancaster
County.[111]

As an additional reason to reject the Groffs, CYS also
stated that the Groffs would have to make a two-hour commute each
way with B.D. for the weekly supervised visits which CYS would
allow with Mrs. Dennis at the Chester County CYS office.[112]

Mr. and Mrs. Dennis additionally offered friends of the
family, Bob and Linda Stevenson, located in Delaware County, as
possible caregivers for B.D. if the Groffs were unacceptable.[113]

On December 2, 2008, Ms. McGettigan informed
Mr. Speedling that B.D. would not be going home with a relative

---

[108]    Complaint, paragraph 144.

[109]    Complaint, paragraph 145.

[110]    Complaint, paragraph 146.

[111]    Complaint, paragraph 147.

[112]    Id.

[113]    Complaint, paragraph 148.

or friend of the family upon his release from the hospital.[114]   On December 8, 2008, although plaintiffs had explained to CYS that B.D. could be placed with Mrs. Dennis's parents or with the Stevensons, CYS informed plaintiffs that B.D. would be placed in foster care.[115]

On December 9, 2008, defendant Gina Giancristiforo, an intake case-worker at CYS, sent an ex parte memorandum, signed by Ms. McGettigan and Ms. Wertz, to Delaware County Court of Common Pleas Judge Maureen F. Fitzpatrick.[116]   Also on December 9, 2008, Judge Fitzpatrick issued an Order granting CYS protective custody over B.D. and approving B.D.'s placement in foster care.[117]

The ex parte memorandum alleged that CYS had made reasonable efforts to place B.D. with family.[118]   The ex parte memorandum additionally stated that "[t]here are no known family resources to care for the baby upon his discharge from the hospital."[119]   Regarding the Stevensons, the ex parte memorandum alleged that "[c]ommunity caregivers have come forward and want to be considered as caregivers.  It is the Agency's belief that the caregivers must complete a full resource home study before

---

[114]    Complaint, paragraph 83.

[115]    Complaint, paragraph 85.

[116]    Complaint, paragraph 86

[117]    Id.

[118]    Id.

[119]    Complaint, paragraph 158.

the agency would recommend that the baby be moved to their care."[120]

In addition, the ex parte memorandum stated that Mrs. Dennis "told Children and Youth Services staff that she was fearful of allowing the baby to be alone with the father yet she failed to protect the baby based on her beliefs."[121]  The memo further stated that Mrs. Dennis "admitted to observing on three separate occasions in the past bruises on the baby's torso, back, and chest."[122]

On December 11, 2008, a post-deprivation hearing was held before Delaware County Children and Youth Master David McNulty, who explained that his authority to change B.D.'s placement was limited.[123]  Master McNulty continued CYS's protective custody of B.D, and stated that the "investigation of the community resources" available to care for B.D. (that is, the Groffs and the Stevensons) should "continue" and be "expedited."[124]  Plaintiffs' counsel informed Master McNulty that CYS was not willing to listen to the alternatives to foster care

---

[120]    Complaint, paragraph 160.

[121]    Complaint, paragraph 135.

[122]    Id.

[123]    Complaint, paragraph 87.

[124]    Complaint, paragraph 174.

that plaintiffs had proposed, and Master McNulty responded that "those ears have been cleared."[125]

On December 29, 2008, CYS filed a dependency petition, signed by defendant Mary Germond, an administrator of CYS, alleging that B.D. was a child dependent on the Commonwealth of Pennsylvania.[126]  Specifically, despite the December 9, 2008 duPont Hospital full skeletal x-ray reports, which were given to CYS on December 11, 2008 and which confirmed that B.D. had no fractures, the petition alleged that B.D. had a skull fracture and "corner fractures of the long bone, right humerous [sic] and right distal radius."[127]

CYS identified two expert medical witnesses whom it planned to call at the hearing, Dr. DeJong and Dr. Messam,[128] but it did not provide these reports to plaintiffs until February 17, 2009 and April 8, 2009, respectively.[129]

---

[125]    Complaint, paragraph 177.

[126]    Complaint, paragraph 88.

[127]    Complaint, paragraphs 200-201 and 530.

The Complaint notes that at some point the radiologic studies identified possible corner fractures of the long bone, right humerus and right distal radius.  Complaint, paragraph 200.  However, the Complaint does not allege which reports identified these possible corner fractures, or when they were initially identified.  The Complaint only alleges that the December 9, 2008 full skeletal x-ray ruled out the previously identified possible corner fractures.

[128]    The Complaint does not provide Dr. Messam's first name.

[129]    Complaint, paragraphs 231 and 233.

The first day of the dependency hearing was scheduled by CYS for January 13, 2009 before Master McNulty.[130]  However, Master McNulty had stated in chambers at the December 11, 2008 post-deprivation hearing that he had a conflict because he knew one of the witnesses for plaintiffs, and that he should not preside over the dependency hearings.[131]  Accordingly, the case was "continued to [the] first available judge day."[132]

CYS rescheduled the first day of the dependency hearing to February 20, 2009.[133]  However, plaintiffs' counsel had a conflict and requested a continuance.[134]  Because no dependency hearing had been held, Mrs. Dennis filed an emergency petition on February 19, 2009 to release B.D. pursuant to 42 Pa.C.S.A. § 6335.[135]  At the hearing on February 20, 2009, the court denied Mrs. Dennis's petition, but CYS agreed to place B.D. in foster care with the Stevensons, which occurred on February 23, 2009.[136]

For the six months that B.D. resided with the Stevensons, Mrs. Dennis was permitted one hour of weekly

---

[130]    Complaint, paragraph 222.  The Complaint does not specify which CYS employee scheduled the January 13, 2009 hearing.

[131]    Complaint, paragraph 220.

[132]    Complaint, paragraph 223.

[133]    Complaint, paragraph 225.  The Complaint does not specify which CYS employee scheduled the February 20, 2009 hearing.

[134]    Complaint, paragraph 226.

[135]    Complaint, paragraph 89.

[136]    Complaint, paragraphs 89 and 90.

visitation with B.D.  Mr. Dennis was not permitted any visitation
with his son pursuant to condition of his bail.[137]

Mrs. Dennis complied with CYS recommendations, pursuant
to the Family Service Plan it devised for the Dennis family, that
she see a CYS parent educator and obtain a psychological
evaluation from a CYS psychologist.  She received favorable
evaluations from both experts.[138]

Plaintiffs' counsel requested that Mrs. Dennis have
longer visitation with B.D., or that B.D. be returned to
Mrs. Dennis, on April 22 and July 20, 2009.[139]  Nonetheless, CYS
refused to provide Mrs. Dennis with longer visitation or to
return B.D., even if Mr. Dennis agreed to leave the family home
pending the investigation against him.[140]

Specifically, on April 22, 2009, defendants Beth
Prodoehl, the CYS kinship administrator, "deferred to" the
judgment of Ms. Wertz, who refused to grant plaintiffs' request
because Mr. and Mrs. Dennis were still married and were living
together as husband and wife.[141]  Ms. Wertz would not consider any

---

[137]   Complaint, paragraph 138.

[138]   Complaint, paragraphs 250 and 253.

[139]   Complaint, paragraphs 251 and 253.

[140]   Complaint, paragraphs 250 and 251.

[141]   Complaint, paragraph 251.

changes in the visitation or placement until the dependency proceedings had been concluded.[142]

The dependency hearing was continued from February 20, 2009 to April 22, 2009.  The first day of the dependency hearing was scheduled by Ms. McGettigan,[143] and three subsequent days of the dependency hearing were scheduled by the court.

The hearing was conducted on June 2, July 8, and August 21, 2009.[144]  At the hearing, CYS called Dr. DeJong as an expert witness.  However, CYS never called Dr. Messam, the other medical expert it identified during discovery.[145]

At the conclusion of the dependency hearings, the Delaware County Court of Common Pleas determined that, although the applicable standard was clear and convincing evidence, the allegations that B.D. were abused could not even be sustained by a preponderance of the evidence.[146]  Therefore, the court dismissed the dependency petition.[147]

B.D. was immediately returned to Mrs. Dennis on August 21, 2009.[148]

---

[142]  Id.

[143]  Complaint, paragraphs 214 and 236.

[144]  Complaint, paragraph 92.

[145]  Complaint, paragraphs 293 and 295.

[146]  Complaint, paragraph 547.

[147]  Complaint, paragraph 93.

[148]  Id.

-43-

## Criminal Proceedings Against Mr. Dennis

Following the dependency hearing, Deputy District Attorney Galantino decided to pursue the criminal charges against Mr. Dennis.[149]  Mr. Dennis filed a motion to dismiss the criminal charges pursuant to the doctrine of collateral estoppel.[150] Deputy District Attorney Galantino represented to the Delaware County Court of Common Pleas that collateral estoppel would not prevent a criminal trial because he would present new medical evidence that B.D's injuries were caused by abuse, and he requested a continuance in order to seek another doctor's expert opinion.[151]

Deputy District Attorney Galantino initially claimed that he had retained Dr. Paul Kleinman, a professor of radiology at Harvard Medical School, as an expert, but subsequently informed the court that Dr. Kleinman had been too busy to write an expert report.[152]  Deputy District Attorney Galantino eventually secured medical opinion reports from defendant Cindy W. Christian, M.D., and Danielle K. Boal, M.D., on March 12, 2010 and March 18, 2010, respectively.[153]

---

[149]    Complaint, paragraph 94.

[150]    Complaint, paragraph 95.

[151]    Complaint, paragraph 96.

[152]    Complaint, paragraphs 98 and 99.

[153]    Complaint, paragraphs 99 and 100.

Deputy District Attorney Galantino sought expert medical opinions that could date the age of B.D.'s subdural hematoma to correspond to the time when Mr. Dennis took B.D. upstairs to change his diaper, which was the "injury event" identified by Dr. DeJong.[154]

### *Dr. DeJong's Involvement in the Investigation*

Dr. DeJong was appointed by the Attorney General of Pennsylvania, along with Deputy District Attorney Galantino, to serve on the Pennsylvania Attorney General's Medical/Legal Advisory Board on Child Abuse.  This Board consults and advises prosecutors and child protection services caseworkers on child abuse cases.[155]  The Board meets bi-monthly and consults and advises prosecutors and child protection services caseworkers from around the Commonwealth of Pennsylvania on child abuse cases presented to the Board.[156]

Dr. DeJong writes also medical opinions for the Board.[157]  Specifically, Dr. DeJong and Deputy District Attorney Galantino presented the allegations of the abuse of B.D. to the Board in this case.[158]

---

[154]    Complaint, paragraphs 542 and 562-563.

[155]    Complaint, paragraphs 429-432.

[156]    Complaint, paragraph 431.

[157]    Complaint, paragraph 433.

[158]    Complaint, paragraph 435.

In addition, Dr. DeJong, along with Deputy District Attorney Galantino, Officer Collins, Mr. Speedling, Ms. Giancristiforo, Ms. Wertz, and Ms. McGettigan, served as part of the investigative team which was created pursuant to 23 Pa.C.S.A. § 6365(c).[159]  This team investigated the allegations of abuse against B.D. as a result of the clinical findings made on or about November 22, 2008.[160]

### PSUHMS Expert Witness Policy

Mr. Dennis retained Dr. Julie Mack, a radiologist from PSUHMS, to contradict the opinions of the prosecution expert

---

[159]    Complaint, paragraphs 425-428, and 527.

23 Pa.C.S.A. § 6365 provides, in relevant part:

> § 6365. Services for prevention, investigation and treatment of child abuse.

>                         . . . .

> (c) **Investigative team.**--The county agency and the district attorney shall develop a protocol for the convening of investigative teams for any case of child abuse involving crimes against children which are set forth in section 6340(a)(9) and (10) (relating to release of information in confidential reports). The county protocol shall include standards and procedures to be used in receiving and referring reports and coordinating investigations of reported cases of child abuse and a system for sharing the information obtained as a result of any interview. The protocol shall include any other standards and procedures to avoid duplication of fact-finding efforts and interviews to minimize the trauma to the child. The district attorney shall convene an investigative team in accordance with the protocol. The investigative team shall consist of those individuals and agencies responsible for investigating the abuse or for providing services to the child and shall at a minimum include a health care provider, county caseworker and law enforcement official.

23 Pa.C.S.A. § 6365(c).

[160]    Complaint, paragraph 428.

witnesses, Dr. Christian and Dr. Boal.  PSUHMS has an expert witness policy which delegates discretion to department chairs to either approve or disapprove reports and testimony in legal proceedings.[161]  The policy applies to PSUHMS employees who provide testimony in "legal proceedings", but the policy does not provide criminal cases as an example of a type of case for which the policy applies.[162]

The policy requires any staff physician who is considering being retained as an expert witness, to inform the department chair.[163]  The policy states that when the department chair approves the expert witness activity, at the discretion of the chair, such activities may be considered within the scope and duty of the physician's employment.  The physician then enjoys the benefit of coverage of the PSUHMS liability insurance and the use of the PSUHMS stationery and logo in such expert witness activity.[164]

Accordingly, the chair of the radiology department, defendant Kathleen Eggli, M.D., was responsible for administering the expert witness policy regarding Dr. Mack and Dr. Boal, who

---

[161]    Complaint, paragraph 20.

[162]    Complaint, paragraph 586.

[163]    Complaint, paragraph 587.

[164]    Complaint, paragraph 588.

were both employees of the radiology department.[165]  Dr. Eggli was

neither aware of, nor enforced, the policy with respect to

Dr. Boal, who wrote an expert report in March of 2010 for the

prosecution.[166]

Dr. Boal did not follow the policy and obtain

Dr. Eggli's approval prior to her retention as an expert witness

by the prosecution.[167]  Nonetheless, Dr. Eggli considered

Dr. Boal's report and expected testimony in the criminal trial as

within the scope of Dr. Boal's employment.  Accordingly, Dr. Boal

received the benefits of PSUHMS liability insurance, stationery,

and logo in her expert witness activities.[168]

After the prosecution had retained Dr. Boal, plaintiffs

attempted to retain Dr. Mack as an expert witness.[169]  On July 2,

2010, Dr. Mack rendered an opinion that contradicted Dr. Boal's

opinion regarding the age of B.D.'s subdural hematoma.[170]

In September 2010, Dr. Eggli corresponded with

Dr. Mack and informed her that her expert witness activities

would not be approved, and that, accordingly, she would not be

---

[165]    Complaint, paragraph 19.

[166]    Complaint, paragraph 589.

[167]    Complaint, paragraph 590.

[168]    Complaint, paragraph 593.

[169]    Complaint, paragraph 596.

[170]    Complaint, paragraph 600.

covered by PSUHMS liability insurance and could not use the PSUHMS logo or stationery.[171]

On October 1, 2010, days before the criminal trial of Mr. Dennis was scheduled to begin, Dr. Eggli forwarded Dr. Mack a letter confirming that her expert witness activities were not approved.[172] Accordingly, Dr. Mack's expert report was not accompanied by the benefits of PSUHMS liability insurance, the PSUHMS logo, and PSUHMS stationery.

### Entrance of Reginald Dennis into the Accelerated Rehabilitative Disposition Program

Between August and October 2009, Deputy District Attorney Galantino communicated multiple guilty-plea-agreement offers to Mr. Dennis. He explained to Mr. Dennis that the Commonwealth of Pennsylvania would dismiss the Aggravated assault and Simple assault charges in exchange for a guilty plea to Endangering welfare of children, with a recommendation that Mr. Dennis serve no jail time.[173] Mr. Dennis consistently declined to accept any plea offers because he maintained he had never abused B.D.[174]

---

[171]    Complaint, paragraph 601.

[172]    Complaint, paragraph 602.

[173]    Complaint, paragraphs 101 and 102.

[174]    Complaint, paragraph 103.

The criminal trial of Mr. Dennis was continued until October 5, 2009.[175]  On the morning of October 5, 2009, Deputy District Attorney Galantino renewed his plea offer.[176]  Mr. Dennis did not agree to plead guilty.  However, counsel for Mr. Dennis suggested that Mr. Dennis be considered for the Accelerated Rehabilitative Disposition ("A.R.D.") program.

A.R.D. is a pretrial probationary program of the Commonwealth of Pennsylvania.  If Mr. Dennis were accepted into the program, he would not have to plead guilty nor go to trial. He would be placed on ARD probation before trial.  Upon his satisfactory completion of A.R.D., Mr. Dennis' criminal charges would be dismissed.[177]

Deputy District Attorney Galantino initially informed plaintiffs that child abuse cases do not qualify for the A.R.D. program.[178]  However, about an hour later Deputy District Attorney Galantino decided that Mr. Dennis would be a candidate for the A.R.D. program, and he agreed to move the court to place Mr. Dennis in the A.R.D. program.[179]

---

[175]    Complaint, paragraph 104.

[176]    Complaint, paragraph 105.

[177]    Complaint, paragraphs 107 and 108.

[178]    Complaint, paragraph 109.

[179]    Complaint, paragraph 110.

-50-

Mr. Dennis agreed to the A.R.D. program because he did not have to plead guilty to harming his son, and the program was less expensive and time consuming than the expected two-week criminal trial, which would require testimony from six expert medical witnesses.[180]  Deputy District Attorney Galantino agreed that if Mr. Dennis successfully completed the A.R.D. program, he would not oppose the expungement of the record of the arrests of Mr. Dennis for Aggravated assault, Simple assault, and Endangering welfare of children.[181]

## DISCUSSION

### Motion to Strike

As an initial matter, the Delaware County defendants, the Nemours defendants, District Attorney Green and Deputy District Attorney Galantino allege that the Complaint should be stricken pursuant to Federal Rule of Civil Procedure 12(f) because it failed to comply with Federal Rule of Civil Procedure 8(a), which requires a "short and plain" statement of the facts. Because the Complaint is 166 pages in length and contains 676 paragraphs, defendants contend it far exceeds the notice pleading standard envisioned by the Federal Rules of Civil Procedure.

Plaintiffs aver that the long length of the Complaint is justified because Federal Rule of Civil Procedure 9(b)

---

[180]    Complaint, paragraphs 111 and 112.

[181]    Complaint, paragraph 113.

requires pleading with particularity for claims involving allegations of fraud.  Evancho v. Fischer, 423 F.3d 347, 352 (3d Cir. 2005).  Plaintiffs contend that the Complaint alleges fraud in the following circumstances: CYS's ex parte memorandum; a sham post-deprivation hearing on December 11, 2008; Dr. DeJong's history of fraudulent testimony; Dr. DeJong's deliberate misrepresentation of (1) the presence of a non-existent skull fracture; (2) that B.D.'s subdural hematoma was hyperacute;[182] (3) that B.D.'s rib injuries could be two to four weeks old; (4) that Mr. and Mrs. Dennis had provided no history of trauma to explain the injuries; (5) that there was an extensive work-up looking for non-traumatic explanations of B.D.'s injuries; (6) that B.D. could not breathe on his own when admitted to duPont Hospital; and (7) that Mrs. Dennis described "injury events" when she described the red marks on B.D.

Furthermore, plaintiffs assert that Dr. DeJong, Dr. Christian, and Dr. Boal were knowingly trying to perpetrate a fraud in their attempts to characterize the age of B.D.'s subdural hematoma as hyperacute.  Accordingly, plaintiffs aver that they were required to plead allegations of fraud with particularity, and that failure to do so could have warranted dismissal.

----

[182]    The Complaint explains that a hyperacute subdural hematoma means that the bleeding in the brain is the result of a more recent trauma, rather than the result of re-bleeding of an injury that had occurred farther in the past.

The United States Court of Appeals for the Third
Circuit has explained that although most complaints in civil
actions must only meet the simplified pleading standard set out
in Rule 8(a), Rule 9(b) is an exception that "provides for
greater particularity in all averments of fraud or mistake".
Evancho, 423 F.3d at 352 (quoting Swierkiewicz v. Sorema,
534 U.S. 506, 513, 122 S.Ct. 992, 998, 152 L.Ed.2d 1, 10 (2002)).
Because I conclude that plaintiffs' claims involving fraud must
be pled with particularity pursuant to Rule 9(b), I deny
defendants' motion to strike the Complaint.

### Rooker-Feldman Doctrine[183]

The Delaware County defendants maintain that plaintiffs
are effectively requesting a reversal of the interlocutory
Delaware County Court of Common Pleas's Orders granting physical
and legal custody to CYS until the final determination of the
dependency proceeding.  The Delaware County defendants contend
that a federal district court does not have, or should not
exercise, subject matter jurisdiction over such claim pursuant to
the Rooker-Feldman doctrine, Knapper v. Bankers Trust Company,
407 F.3d 573 (3d Cir. 2005), and because federal courts do not
have general jurisdiction over state domestic relations cases,

---

[183]    The doctrine takes its name from two United States Supreme Court
cases, Rooker v. Fidelity Trust Company, 263 U.S. 413, 44 S.Ct. 149,
68 L.Ed. 362 (1923) and District of Columbia Court of Appeals v. Feldman,
460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983).

Lazaridis v. Wehmer, 591 F.3d 666, 671 (3d Cir. 2010).
Therefore, the Delaware County defendants aver that the Complaint
should be dismissed pursuant to Federal Rule of Civil Procedure
12(b)(1).

However, defendants appear to misunderstand the relief
plaintiffs seek.  Plaintiffs bring claims for the alleged
violation of their civil rights based upon various actions taken
by defendants, but plaintiffs do not request a reversal of any of
the Orders entered against them by the Delaware County Court of
Common Pleas.  Further, plaintiffs ultimately prevailed in the
dependency proceedings because the Delaware County Court of
Common Pleas denied the dependency petition filed by CYS and
returned custody of B.D. to Mrs. Dennis.

Because plaintiffs are not seeking the reversal of
state court Orders, the Rooker-Feldman doctrine is inapplicable.
The Rooker-Feldman doctrine deprives a federal district court
jurisdiction in "cases brought by state-court losers complaining
of injuries caused by state-court judgments rendered before the
district court proceedings commenced and inviting district court
review and rejection of those judgments."  Turner v. Crawford
Square Apartments III, L.P., 449 F.3d 542, 547 (3d Cir. 2006).

The doctrine is based on protecting the jurisdiction
granted to the United States Supreme Court in 28 U.S.C. § 1257,
which gives the Supreme Court the power to review the decisions

of the highest state courts for compliance with the United States
Constitution.  Ernst v. Child and Youth Services of Chester
County, 108 F.3d 486, 491 (3d Cir. 1997).  "Because this
jurisdiction is reserved exclusively to the Supreme Court, it is
improper for federal district courts to exercise jurisdiction
over a case that is the functional equivalent of an appeal from a
state court judgment."  Id.

        The civil rights claims plaintiffs bring have never
been previously decided by the Delaware County Court of Common
Pleas, and so plaintiffs' claims cannot be the "functional
equivalent of an appeal".  Id. at 492.  Furthermore, plaintiffs
prevailed in the state court dependency proceedings, and as such,
are not requesting the review and rejection of the state court's
judgment.  Accordingly, I conclude that the Rooker-Feldman
doctrine does not apply to bar consideration of plaintiffs'
claims.

        In addition, I conclude that the fact that federal
courts do not have general jurisdiction over domestic relations
cases does not preclude consideration of the case under review.
Lazaridis, the authority cited by defendants, concerned a claim
for abstention pursuant to Younger v. Harris, 401 U.S. 37,
91 S.Ct. 746, 27 L.Ed.2d 669 (1971), which is not applicable
here.

As formulated by the Third Circuit, <u>Younger</u> abstention "is appropriate only if (1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise federal claims."  <u>Schall v. Joyce</u>, 885 F.2d 101, 106 (3d Cir. 1989).

In considering the second prong for <u>Younger</u> abstention, the Third Circuit in <u>Lazaridis</u> concluded that domestic relations cases implicate important state interests, whereas federal courts have no general jurisdiction in this area.  <u>Lazaridis</u>, 591 F.3d at 671.  However, there are no ongoing state proceedings in this case.  Therefore, I conclude that <u>Younger</u> abstention is not appropriate.

Accordingly, I deny the Delaware County defendants' motion to dismiss plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1).

### **Fourth Amendment Claims**

Plaintiffs seek relief in Counts I-V, X, XI and XIII pursuant to the Fourth Amendment of the United States Constitution.  Plaintiffs' voluminous memoranda of law do not mention or elaborate on these claims.  As such, it is unclear how defendants allegedly abridged plaintiffs' rights under the Fourth Amendment.

The Delaware County defendants contend that the Fourth Amendment claim should be dismissed because probable cause existed for the government action in the dependency proceedings.[184]  See Duffy v. County of Bucks, 7 F.Supp.2d 569, 576 (E.D.Pa. 1998).  The PSUHMS defendants contend that plaintiffs have failed to allege any Fourth Amendment violations and, accordingly, have failed to state a claim upon which relief can be granted.[185]  Plaintiffs do not address either of these arguments.

Pursuant to Rule 7.1(c) of the Rules of Civil Procedure of the United States District Court for the Eastern District of Pennsylvania, failing to address substantive matters raised in a motion may result in the unaddressed issue being granted as uncontested.  Because plaintiffs do not provide any legal authority or analysis to contest dismissal based on the grounds argued by the Delaware County defendants and the PSUHMS defendants, I regard defendants' motion to dismiss the Fourth Amendment claims in Counts I-V, X-XI, and XIII as uncontested and I grant the motion to dismiss these claims as unopposed.  See Toth v. Bristol Township, 215 F.Supp.2d 595, 598 (E.D.Pa. 2002)

---

[184]     Memorandum of Law in Support of Motion of Defendants, County of Delaware on Behalf of its Council, Mary Germond, Meta Wertz, Beth Prodochl, Patricia McGettigan and Gina Giancristiforo to Dismiss Plaintiffs' Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6) or, Alternatively, to Strike the Pleading Under Fed.R.C.P. 12(f) ("Delaware County Defendants' Motion to Dismiss"), filed January 7, 2011, pages 17-18.

[185]     PSUHMS Defendants' Motion to Dismiss, pages 9 and 19.

(Joyner, J.); Smith v. National Flood Insurance Program of the
Federal Emergency Management Agency, 156 F.Supp.2d 520, 522
(E.D.Pa. 2001)(Robreno, J.).

### Substantive and Procedural Due Process

In Counts I-VII, IX, X, and XII plaintiffs allege
substantive and procedural due process violations against
numerous defendants in connection with the dependency proceedings
against Mr. and Mrs. Dennis and the criminal proceedings against
Mr. Dennis.

### *42 U.S.C. § 1983*

Plaintiffs' Complaint asserts constitutional claims
actionable against defendants through 42 U.S.C. § 1983.
Section 1983 is an enabling statute that does not create any
substantive rights, but provides a remedy for the violation of
federal constitutional or statutory rights. Gruenke v. Seip,
225 F.3d 290, 298 (3d Cir. 2000). To state a claim under
section 1983, plaintiffs must allege that a defendant acting
under color of state law deprived plaintiffs of a federal
constitutional or statutory right. Gruenke, 225 F.3d at 298.

Plaintiffs additionally allege section 1983 claims
against Delaware County. Following the United States Supreme
Court decision in Monell v. Department of Social Services,
436 U.S. 658, 694, 98 S.Ct. 2018, 2037-2038, 56 L.Ed.2d 611, 638
(1978), a local government cannot be sued pursuant to section

1983 for injuries inflicted solely by its employees. Rather, local governments can only be held liable under section 1983 for "their *own* illegal acts". Connick v. Thompson, __ U.S. __, __, 131 S.Ct. 1350, 1359, 179 L.Ed.2d 417, 426 (2011) (internal quotations omitted)(emphasis in original).

The Third Circuit has recognized liability for local governments in three circumstances:

> First, the municipality will be liable if its employee acted pursuant to a formal government policy or a standard operating procedure long accepted within the government entity; second, liability will attach when the individual has policy making authority rendering his or her behavior an act of official government policy; third, the municipality will be liable if an official with authority has ratified the unconstitutional actions of a subordinate, rendering such behavior official for liability purposes.

McGreevy v. Stroup, 413 F.3d 359, 367 (3d Cir. 2005)(internal citations omitted). Plaintiffs must prove that the action in question conducted pursuant to official municipal policy caused their injury. Connick, __ U.S. at __, 131 S.Ct. at 1359, 179 L.Ed.2d at 426.

### *Due Process in Child Abuse Cases*

Plaintiffs are guaranteed due process of law pursuant to the Fourteenth Amendment to the United States Constitution. The Fourteenth Amendment provides, in relevant part, "nor shall any State deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, cl. 1.

Plaintiffs bring claims for violations of both substantive and procedural due process.

Substantive due process rights are those rights which are "fundamental" under the Constitution. Nicolas v. Pennsylvania State University, 227 F.3d 133, 139-141 (3d Cir. 2000). The United States Supreme Court has recognized a "fundamental liberty interest of natural parents in the care, custody, and management of their child" protected by the Fourteenth Amendment. Miller v. City of Philadelphia, 174 F.3d 368, 374 (3d Cir. 1999)(quoting Santosky v. Kramer, 455 U.S. 745, 753, 102 S.Ct. 1388, 1394-1395, 71 L.Ed.2d 599, 606 (1982)); see also Anspach v. City of Philadelphia, 503 F.3d 256, 261 (3d Cir. 2007).

"The touchstone of due process is the protection of the individual against arbitrary action of government." Miller, 174 F.3d at 374 (internal quotations omitted). To incur liability, the objective character of the government action must be so egregious that it "shocks the conscience". Miller, 174 F.3d at 375.

Specifically, the Third Circuit has held that child welfare workers abridge an individual's substantive due process rights where their actions "exceed both negligence and deliberate indifference, and reach a level of gross negligence or arbitrariness that indeed 'shocks the conscience.'" Miller,

174 F.3d at 375-376.  The Third Circuit, in explaining Miller,
held that in order for a child welfare worker to be liable for
removing a child from his parents upon suspicions of abuse, the
worker must have "consciously disregarded a great risk that there
had been no abuse."  Ziccardi v. City of Philadelphia,
288 F.3d 57, 66 (3d Cir. 2002).

There may be cases in which a child is justifiably
removed from the home, without violating due process, even where
a later investigation reveals no abuse actually occurred.
Croft v. Westmoreland County Children and Youth Services,
103 F.3d 1123, 1126 (3d Cir. 1997).  The focus for due process
purposes is "whether the information available to the defendants
at the time would have created an objectively reasonable
suspicion of abuse justifying the degree of interference" with
Mr. and Mrs. Dennis's rights as parents.  Croft,
103 F.3d at 1126.  "Absent such reasonable grounds, governmental
intrusions of this type are arbitrary abuses of power."  Id.

To state a Section 1983 claim for deprivation of
procedural due process, plaintiffs must allege that: (1) they
were deprived of an individual interest that is encompassed
within the Fourteenth Amendment's protection of life, liberty or
property; and (2) the procedures available did not provide due
process of law.  Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir.
2000).

Regarding the first requirement, as discussed above, parents have a constitutionally cognizable liberty interest in the care, custody, and management of their children.  Miller, 174 F.3d at 374.  Regarding the procedures available, "the fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner."  Id. at 373 (internal quotations omitted).

### Immunities for Government Officials

In section 1983 claims for violations of procedural and substantive due process, state actors may assert an affirmative defense of absolute or qualified immunity.

Absolute immunity "defeats a suit at the outset, so long as the official's actions were within the scope of the immunity."  Imbler v. Pachtman, 424 U.S. 409, 419 n.13, 96 S.Ct. 984, 990 n.13, 47 L.Ed.2d 128, 137 n.19 (1976).  The Supreme Court has held that judges, Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967), prosecutors, Imbler, supra, and witnesses, Briscoe v. LaHue, 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983), are entitled to absolute immunity when they perform judicial or quasi-judicial acts that are integral parts of the judicial process.  See Ernst, 108 F.3d at 494.

The Third Circuit has held that child welfare workers are also entitled to absolute immunity "for their actions on behalf of the state in preparing for, initiating, and prosecuting

dependency proceedings.  Their immunity is broad enough to include the formulation and presentation of recommendations to the court in the course of such proceedings." Ernst, 108 F.3d at 495.

Qualified immunity, on the other hand, applies to all public officials and must be analyzed in light of the circumstances of each particular case.  Qualified immunity protects government officials from insubstantial claims in order to "shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson v. Callahan, 555 U.S. 223, 231, 129 S.Ct. 808, 815, 172 L.Ed.2d 565, 573 (2009).

In resolving a claim for qualified immunity, a court must decide: (1) whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right; and (2) whether the right at issue was clearly established at the time of defendant's alleged misconduct. Pearson, 555 U.S. at 232, 129 S.Ct. at 815-816, 172 L.Ed.2d at 573. A court may address either of these prongs first, based on the particular circumstances of the case at hand. Pearson, 555 U.S. at 236, 129 S.Ct. at 818, 172 L.Ed.2d at 576.

The constitutional right at issue is "clearly established" where the "contours of the right [are] sufficiently clear that a reasonable official would understand that what he is

-63-

doing violates that right." Wilson v. Layne, 526 U.S. 603, 614-
615, 119 S.Ct. 1692, 1699, 143 L.Ed.2d 818, 830 (1999) (quoting
Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039,
97 L.Ed.2d 523, 531 (1987)).  A court must consider the state of
the existing law at the time of the alleged violation and the
circumstances confronting the official to determine whether a
reasonable state actor could have believed his conduct was
lawful.  MFS Inc. v. Dilazaro, 771 F.Supp.2d 382, 449 (E.D.Pa.
2011)(internal quotation omitted).

      The United States Court of Appeals for the Third
Circuit has held that the determination of immunity should be
made as early as possible in civil actions against government
officials.  Thomas v. Independence Township, 463 F.3d 285, 295
(3d Cir. 2006).  Qualified immunity provides immunity from suit
instead of merely providing a defense to liability.  Pearson,
555 U.S. at 231, 129 S.Ct. at 815, 172 L.Ed.2d at 573.  Qualified
immunity will be upheld on a motion to dismiss "only when the
immunity is established on the face of the complaint." Thomas,
463 F.3d at 291 (internal quotations omitted).

### *Pennsylvania Law Governing Dependency Proceedings*

      Many of plaintiffs' allegations spring from alleged
violations of Pennsylvania law regarding the process of removing
a child from his parents.  The applicable state-laws governing
dependency proceedings are the Child Protective Services Law,

23 Pa.C.S.A. §§ 6301-6386, and the Juvenile Act, 42 Pa.C.S.A. §§ 6301-6375.

Under 23 Pa.C.S.A. § 6315(a), a child may be taken into "protective custody" pursuant to a court order issued according to 42 Pa.C.S.A. § 6324.  "Protective custody" is a temporary solution for a child at risk of abuse.  42 Pa.C.S.A. § 6324(1). Additionally, 23 Pa.C.S.A. § 6315 provides that upon obtaining an order for protective custody, an informal hearing must be held within 72 hours to determine whether to continue protective custody.  See also 42 Pa.C.S.A. § 6332.

If at this informal hearing it is determined that protective custody should be continued, then CYS has 48 hours to file a petition with the court alleging that the child is a dependent child, which is a more long-term solution and requires hearings to determine whether the child is a "dependent child". 23 Pa.C.S.A. § 6315(d).

A dependent child, in relevant part,

> is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals. A determination that there is a lack of proper parental care or control may be based upon evidence of conduct by the parent, guardian or other custodian that places the health, safety or welfare of the child at risk, including evidence of the parent's, guardian's or other custodian's use of alcohol or a controlled substance that places the health, safety or welfare of the child at risk.

42 Pa.C.S.A. § 6302.  A dependency hearing shall be held not later than ten days after the filing of the dependency petition. 42 Pa.C.S.A. § 6335(a).[186]

### *Claims Against Delaware County Defendants*

#### *Fifth Amendment*

The Complaint alleges violations of the Fifth Amendment against the Delaware County defendants in Counts I-V and X. Plaintiffs do not elaborate on their Fifth Amendment claims pertaining to these counts in any of their memoranda of law.

The Delaware County defendants argue that the Fifth Amendment claims should be dismissed because the "takings clause" of the Fifth Amendment only applies when the government takes property, and children have not been defined as property.[187]  See

---

[186]  The focus of dependency proceedings is "the best interest of the child" and "protect[ing] that child from any party who may have hurt or may continue to hurt [the] child", and the focus is not on proving who inflicted the abuse.  C.S. v. Department of Public Welfare, 972 A.2d 1254, 1258 (Pa.Commw. 2009).  The purpose of dependency proceedings is described as follows:

> In dependency proceedings, which are held pursuant to the Juvenile Act, 42 Pa.C.S.A. §§ 6301-6375, the county agency first has the burden of establishing through clear and convincing evidence that a minor was abused, but then need only prove the identity of the perpetrator by prima facie evidence.  The Superior Court [of Pennsylvania] has defined the prima facie evidence standard in dependency cases as a mere presumption that the abuse normally would not have occurred except by reason of acts or omissions of the parents.

C.S., 972 A.2d at 1259 (internal citations and quotations omitted).

[187]  Delaware County Defendants' Motion to Dismiss, page 18.

U.S. v. Fazal-Ur-Raheman-Fazal, 355 F.3d 40, 55 (1ˢᵗ Cir. 2004).
Plaintiffs do not address this argument.

    To the extent that plaintiffs allege due process
violations under the Fifth Amendment, because plaintiffs do not
provide any legal authority or analysis to contest dismissal
based on the grounds argued by the Delaware County defendants, I
regard defendants' motion to dismiss as uncontested and I grant
the motion to dismiss the Fifth Amendment claims in these counts
with prejudice as unopposed.  See Toth, 215 F.Supp.2d at 598;
see also Smith, 156 F.Supp.2d at 522.

*Count I*

    In Count I, plaintiffs contend that their due process
rights were violated by Delaware County's policy of deputizing a
CYS employee to serve as the clerk of juvenile court in
dependency matters.  Plaintiffs claim that Cynthia Deconte served
as both a CYS employee and as the clerk of juvenile court at all
times during the actions giving rise to this case.  Plaintiffs
aver that Pennsylvania Rule of Juvenile Court Procedure 1120
contains a comment that CYS is a party to dependency proceedings
and "should not function as the 'Clerk of Courts'".

    Defendant does not appear to contest that deputizing a
CYS employee to serve as clerk of juvenile court was the policy
or custom of Delaware County.  However, defendant contends that

Cynthia Deconte, who is not a party in this action, was acting on behalf of the judiciary, and not Delaware County.  Accordingly, defendant avers that Delaware County cannot be liable for her actions.  Further, defendant claims that the Complaint fails to allege any wrongdoing by Ms. Deconte, but even if it had, she would be entitled to quasi-judicial immunity as a clerk of court for actions taken in her official capacity.[188]

Assuming that Delaware County had the above-described policy, plaintiffs are correct that this practice is contrary to the comment in Pennsylvania Rule of Juvenile Court Procedure 1120.[189]  However, plaintiffs have failed to allege how the alleged policy caused the deprivation of plaintiffs' due process rights.  Plaintiffs do not allege that Ms. Deconte wrongfully

---

[188]    Because Ms. Deconte is not a party in this action, I do not consider defendant's argument that she would be entitled to quasi-judicial immunity for her actions.

[189]    The comment to Pennsylvania Rule of Juvenile Court Procedure 1120 provides, in relevant part, as follows:

> *Comment*: The county agency is a party to the proceeding and should not function as the "Clerk of Courts."
>
> The definition of "clerk of courts" should not necessarily be interpreted to mean the office of clerk of courts as set forth in 42 Pa.C.S.A. § 102, but instead refers to that official who maintains the official court record and docket regardless of the person's official title in each judicial district. It is to be determined locally which official is to maintain these records and the associated docket.

Pa.R.Juv.Ct.P 1120.

rejected an earlier available date for a dependency hearing, or that she acted irregularly or illegally in any way.[190]

The United States Supreme Court has explained that "it is not enough for a § 1983 plaintiff merely to identify conduct properly attributable" to the local government.  Board of the County of Commissioners of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 404, 117 S.Ct. 1382, 1388, 137 L.Ed.2d 626, 639 (1997).  Instead, plaintiffs must allege causation by pleading "a direct causal link between the [county] action and the deprivation of federal rights."  Id.

Plaintiffs have not alleged how the Delaware County policy at issue caused them any deprivation of due process. Plaintiffs have not alleged that Ms. Deconte rejected earlier available dates in order to benefit CYS or that she violated plaintiffs' rights in any other way.  Accordingly, I conclude that plaintiffs have not stated a claim upon which relief can be

---

[190]    Plaintiffs allege that Ms. Deconte drafted the proposed Order that Judge Fitzgerald issued on December 9, 2008.  Memorandum of Law in Opposition of Defendants, County of Delaware on Behalf of Its Council, Mary Germond, Meta Wertz, Beth Prodoehl, Patricia McGettigan and Gina Giancristiforo to Dismiss Plaintiffs' Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6) or, Alternatively, to Strike the Pleading Under Fed.R.C.P. 12(f) ("Plaintiffs' Response to Delaware County Defendants' Motion to Dismiss"), filed January 20, 2011, page 10.

However, plaintiffs do not contend that there was anything illegitimate or improper about the Order issued by Judge Fitzpatrick.  They instead contend that the ex parte memorandum prepared by CYS employees, and not Ms. Deconte, provided incorrect information.

granted arising from Delaware County's policy of having a CYS employee serve as clerk of juvenile court.

In appropriate circumstances, the court has the discretion to dismiss without prejudice and permit plaintiffs to re-plead and provide more specificity in an amended complaint. See Hobson v. St. Luke's Hospital and Health Network, 2009 WL 3125513, at *4 (E.D.Pa. Sept. 28, 2009)(Gardner, J.); see also Progressive Casualty Insurance Co. v. PNC Bank, N.A., 1999 WL 557292, at *9 (E.D.Pa. July 26, 1999)(Reed, S.J.). Therefore, rather than dismissing plaintiffs' claim that Delaware County's policy of deputizing a CYS employee to serve as clerk of juvenile court violated plaintiffs' due process rights pursuant to the Fourteenth Amendment with prejudice, I will permit plaintiffs to provide more specificity in an amended complaint. See Alston v. Parker, 363 F.3d 229, 235-236 (3d Cir. 2004).

Plaintiffs further seek injunctive relief in Count I against Delaware County "for themselves and for all other parents similarly situated who will or may have to file any legal papers or have a hearing scheduled in a dependency proceeding in Delaware County enjoining Delaware County from deputizing CYS as Clerk of court in dependency matters."[191]  Plaintiffs contend that they are not seeking a preliminary injunction, but are seeking a permanent injunction because such relief in the "public interest"

---

[191]    Complaint, paragraph 128.

for those subjected to dependency proceedings in Delaware County.[192]

Although section 1983 authorizes equitable relief, an "injunction is to be used sparingly, and only in a clear and plain case." Rizzo v. Goode, 423 U.S. 362, 378, 96 S.Ct. 598, 607, 46 L.Ed.2d 561, 574 (1976) (internal quotations omitted). "[P]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief...if unaccompanied by continuing, present adverse effects." City of Los Angeles v. Lyons, 461 U.S. 95, 102, 103 S.Ct. 1660, 1665, 75 L.Ed.2d 675, 684 (1983)(internal quotations omitted).

In order to have standing under Article III of the United States Constitution, plaintiffs must show:

> (1) [they have] suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical;

> (2) the injury is fairly traceable to the challenged action of the defendant; and

> (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

---

[192]     Plaintiffs' Response to Delaware County Defendants' Motion to Dismiss, page 8.

PA Prison Society v. Cortes, 622 F.3d 215, 228 (3d Cir. 2010)

(quoting Friends of the Earth, Inc. v. Laidlaw,

528 U.S. 167, 180-181, 120 S.Ct. 693, 704, 145 L.Ed.2d 610, 627

(2000)).

When plaintiffs allege a future injury, that injury

must be "certainly impending," not an injury that will only occur

at "some indefinite future time." PA Prison Society,

622 F.3d at 228 (quoting Lujan v. Defenders of Wildlife,

504 U.S. 555, 564 n.2, 112 S.Ct. 2130, 2138 n.2,

119 L.Ed.2d 351, 367 n.2 (1992)).

The United States Supreme Court held in Lyons that

plaintiff's allegations that the police routinely apply

chokeholds in situations where the police are not threatened by

the use of deadly force, and that police may stop plaintiff in

the future and apply the chokehold to him, falls far short of the

allegations that would be necessary to establish a case or

controversy for Article III purposes. Lyons, 461 U.S. at 105,

103 S.Ct. at 1667, 75 L.Ed.2d at 686.

Similarly, plaintiffs' allegations that they may be

subject to another dependency proceeding and suffer Delaware

County's alleged unconstitutional policy does not establish a

case or controversy. Plaintiffs are not facing any pending state

proceedings, and therefore the injunctive relief plaintiffs seek

is for a prospective future injury.  Because the injury plaintiffs allege is not "actual or imminent", or "certainly impending", I conclude that plaintiffs lack standing to seek injunctive relief against future CYS proceedings.

Further, because plaintiffs' seek injunctive relief for a prospective future action, I conclude that allowing plaintiffs to amend the Complaint where they lack standing would be futile. See Alston, 363 F.3d at 235-236.  Therefore, I dismiss the claim for injunctive relief in Count I with prejudice.[193] Accordingly, I dismiss plaintiffs' request for injunctive relief in Count I with prejudice, and I dismiss plaintiffs' claims for violation of the Fourteenth Amendment in Count I without prejudice, allowing plaintiffs to provide more specificity in an amended complaint.

*Count II*

Count II seeks relief for due process violations in connection with the December 9, 2008 ex parte memorandum seeking protective custody.  Plaintiffs contend that defendants Wertz, McGettigan and Giancristiforo sent the December 9, 2008 ex parte memorandum to the Delaware County Court of Common Pleas seeking protective custody of B.D.

---

[193]     I further conclude, based upon the same reasoning, that plaintiffs lack standing for the injunctive relief alleged in Counts II-IV, VI, VII, IX, X, XII and XIII.  Moreover, I dismiss these counts with prejudice.

Plaintiffs allege that the ex parte memorandum was made with deliberate indifference and reckless disregard for the truth, and contained misstatements of law and fact.  Further, plaintiffs claim that CYS decided to place B.D. in protective custody with a foster family, instead of Mrs. Dennis's parents or a family friend, in retaliation for the Dennis family maintaining their innocence and because Mr. Dennis retained a lawyer.

As discussed above, the Third Circuit has held that child welfare workers are entitled to absolute immunity from suit for their actions on behalf of the state in preparing for, initiating, and prosecuting dependency proceedings.  Ernst, 108 F.3d at 495.  This immunity includes the formulation and presentation of recommendations to the court in the course of such proceedings.  Id.

Defendants McGettigan, Giancristiforo and Wertz are employees of CYS, and were acting under the color of state law in the scope of their employment when the alleged events occurred. As the Third Circuit has held, making "presentations or recommendations to the court" is a type of function normally performed by a prosecutor for which a child welfare worker receives absolute immunity.  Miller, 174 F.3d at 376 n.6; see also Ernst, 108 F.3d at 497.

Accordingly, I conclude that these defendants are protected by absolute immunity for their actions in making

-74-

presentations and recommendations to the court in the context of

the ex parte memorandum.[194]   Therefore, I dismiss with prejudice

---

[194]     The Third Circuit stated in a footnote that absolute immunity "concerns only actions taken by child welfare workers in the context of dependency proceedings." Ernst, 108 F.3d at 497 n.7.  This raises some ambiguity regarding what constitutes dependency proceedings, specifically, whether seeking protective custody before a dependency petition is formally filed falls within the "dependency proceedings" umbrella for the purposes of absolute immunity.

    The footnote in Ernst additionally contained a citation to a decision by the United States Court of Appeals for the Fifth Circuit, Austin v. Borel, 830 F.2d 1356 (5th Cir. 1987), as an example of a case where the child welfare worker was not entitled to absolute immunity because the child welfare worker's actions occurred outside the context of dependency proceedings.  Ernst, 108 F.3d at 497 n.7.  The Third Circuit interpreted the Fifth Circuit's decision in Austin in a parenthetical for the case as "holding that filing of complaint that allowed child services to obtain custody but did not initiate adjudicative proceeding was analogous to police officer's complaint filed to obtain arrest warrant and was therefore entitled only to qualified immunity." Ernst, 108 F.3d at 497 n.7.

    At first glance, it appears that the ex parte memorandum seeking protective custody is analogous to the type of procedure in Austin which gave rise only to qualified immunity.  This concern was addressed by the United States District Court for the Western District of Pennsylvania, in Bowser v. Blair County Children and Youth Services, 546 F.Supp.2d 788 (W.D.Pa. 2004).  I agree with District Judge Kim Gibson's conclusion in Bowser that the Pennsylvania ex parte procedures for protective custody by court order are not analogous to the procedures in Austin where the child welfare workers were entitled only to qualified immunity.  Bowser, 546 F.Supp.2d at 792-793.

    In Austin, plaintiff sought to recover from child welfare workers who filed an allegedly false "verified complaint", averring that reasonable grounds exist to believe that a child should be taken into custody. 830 F.2d at 1361.  Although the court may issue an order removing the child from his parents' custody upon the filing of a verified complaint, only the district attorney's filing of a "petition" initiates the adjudication process. Id.  Accordingly, the Fifth Circuit held that under Louisiana law, the dependency proceedings do not begin until the district attorney decides to file a petition.  Id.

    However, under Pennsylvania law, both the filing of a petition and taking a child into protective custody pursuant to court order commence a proceeding under the Juvenile Act.  42 Pa.C.S.A. § 6321.  The actions of defendants Wertz, McGettigan, and Giancristiforo, seeking protective custody by ex parte memorandum are entitled to absolute immunity because they constitute "preparing for" and "initiating" dependency proceedings under Ernst, supra.  "Such actions are clearly part of the judicial dependency adjudication proceeding in Pennsylvania, whereas in Austin, supra, the actions

(Footnote 194 continued):

the Fourteenth Amendment claims in Count II against defendants
Wertz, McGettigan, and Giancristiforo in their individual
capacities.

Plaintiffs additionally allege that Delaware County has
a retaliatory policy, which it applied to plaintiffs in this
case, of insisting that parents who maintain their innocence of
child abuse must either (1) voluntarily agree to placement of
their child in foster care with strangers or (2) will be subject
to an ex parte request for protective custody which:
(a) misrepresents to the court that Mrs. Dennis believed
Mr. Dennis caused B.D.'s injuries; (b) misrepresents to the court
that family members are not available to care for the child when
CYS is fully aware that family members are capable, qualified,
and willing to care for the child; (c) misrepresents to the court
that a full resource home study is required before CYS can place
a child with a family member or friend of the parents;
(d) misrepresents to the court that reasonable efforts to avoid
placement have been made when they have not been made; and
(e) that is recklessly delayed for the specific purpose of
denying the parents their due process right of an opportunity to

---

(Footnote 194 continued):

of the caseworkers were not part of the adjudication process under Louisiana
law." Bowser, 346 F.Supp.2d at 794.

Accordingly, I conclude that child welfare workers are entitled to
absolute immunity for their actions seeking protective custody by an ex parte
memorandum.

be heard prior to any court order depriving them of the custody of their child.

As described above, pursuant to Monell, because Delaware County's liability cannot be predicated upon respondeat superior liability, plaintiffs must plead that an action pursuant to official county policy caused their injury.  436 U.S. at 691, 98 S.Ct. at 2036, 56 L.Ed.2d at 636.  "Official [county] policy includes [1] the decisions of a government's lawmakers, [2] the acts of its policymaking officials, and [3] practices so persistent and widespread as to practically have the force of law."  Connick, __ U.S. at __, 131 S.Ct. at 1359, 179 L.Ed.2d at 426.

Plaintiffs appear to allege that Delaware County is liable pursuant to both the second and the third theories of liability described in Connick.  First, the Complaint alleges that Delaware County has a practice, policy, or custom of retaliating against parents who maintain their innocence of child abuse allegations by placing the child in foster care with strangers.

In support of this contention, the Complaint alleges that CYS employees refused to place B.D. with the Groffs or Stevensons, despite their availability as caregivers, because Mrs. Dennis remained supportive of Mr. Dennis following his arrest.  Further, the Complaint identifies portions of the

ex parte memorandum, immediately following CYS's recommendation that B.D. be placed in foster care, stating that Mrs. Dennis remains supportive of her husband and does not acknowledge that B.D.'s injuries are non-accidental.[195]

The Complaint offers only bald assertions that such policy or custom existed without any facts to support that what happened to plaintiffs were not the result of "idiosyncratic actions of individual public actors." Burke v. Twp. of Cheltenham, 742 F.Supp.2d 660, 676 (E.D.Pa. 2010). The Complaint has not alleged any practices that are persistent and widespread.

However, Delaware County may nonetheless be liable for a single act by a policymaking official. Oklahoma City v. Tuttle, 471 U.S. 808, 823-824, 105 S.Ct. 2427, 2436, 85 L.Ed.2d 791, 804 (1985). Plaintiffs additionally allege that Ms. Wertz, as the intake administrator at CYS, is a policymaker for the intake department at CYS and that she approved the ex parte memorandum which was prepared by Ms. Giancristiforo.[196] Accordingly, plaintiffs appear to allege that Delaware County is liable for the misrepresentations in the ex parte memorandum because the memorandum was approved by a policymaking official.

The United States Supreme Court has held that "where action is directed by those who establish governmental policy,

---

[195]    Complaint, paragraph 162.

[196]    Complaint, paragraph 10.

-78-

the [county] is equally responsible whether that action is to be
taken only once or is to be taken repeatedly." Pembaur v. City
of Cincinnati, 475 U.S. 469, 481, 106 S.Ct. 1292, 1299,
89 L.Ed.2d 452, 464 (1986).  Alleging that the action taken or
directed by the county's "authorized decisionmaker itself
violates federal law will also determine that the [county] action
was the moving force behind the injury of which the plaintiff
complains." Brown, 520 U.S. at 405, 117 S.Ct. at 1389,
137 L.Ed.2d at 640.

> Further, the Supreme Court has held that

>> when a subordinate's decision is subject to review
>> by the municipality's authorized policymakers,
>> they have retained the authority to measure the
>> official's conduct for conformance with their
>> policies.  If the authorized policymakers approve
>> a subordinate's decision and the basis for it,
>> their ratification would be chargeable to the
>> municipality because their decision is final.

St. Louis v. Praprotnik, 485 U.S. 112, 127, 108 S.Ct. 915, 926,
99 L.Ed.2d 107, 120 (1988).

> Plaintiffs have alleged that Ms. Wertz is a
policymaking official in the relevant capacity as intake
supervisor.  Defendants do not contest that Ms. Wertz had such
policymaking authority.  An official has policymaking authority
for Monell purposes (1) when, as a matter of state law, the
official is responsible for making policy in the particular area
of county business in question; and (2) when the official's

authority to make policy in that area is final and unreviewable. Hill v. Borough of Kutztown, 455 F.3d 225, 245-246 (3d Cir. 2006).

At this stage of the proceedings, plaintiffs have sufficiently alleged that Ms. Wertz is responsible for setting the policy for the intake department at CYS. Plaintiffs' allegations support the reasonable inference that because Ms. Wertz sets the policy for the intake department at CYS, her approval of the ex parte memorandum was final and unreviewable.

Further, I conclude that the facts alleged in the Complaint support the reasonable inference that Ms. Wertz's approved the ex parte memorandum, given its alleged facial deficiencies in misrepresenting the law, and is therefore "chargeable to [Delaware County] because [Ms. Wertz's] decision is final." Praprotnik, 485 U.S. at 127, 108 S.Ct. at 926, 99 L.Ed.2d at 120.

Accordingly, I now analyze whether the underlying action allegedly taken by Ms. Wertz constitutes a violation of plaintiffs' constitutional rights. I conclude that the alleged retaliatory policy described above, including the alleged misrepresentations in the ex parte memorandum, give rise to a prima facie claim for substantive and procedural due process violations.

In <u>Miller v. City of Philadelphia</u>, 954 F.Supp. 1056, 1060 and 1065 (E.D.Pa. 1997), a social worker investigating possible child abuse allegedly misrepresented the medical report by the examining doctor of the children to a judge.  The social worker advocated removal of the mother's three children even though the examining doctor found no evidence of abuse for two of the children, and could not determine that the bruises on the third child were the result of abuse.  <u>Id.</u>  Further, the social worker allegedly attempted to suborn perjury from the examining doctor, and induced the hospital wherein the examination was performed to falsify records.  <u>Id.</u> at 1065.

In denying defendants' motion to dismiss, my colleague, then United States District Judge, now Senior District Judge, William H. Yohn, Jr. held that "[t]hese allegations when applied to taking children from their parents would by anyone's definition be patently unlawful and a clearly established substantive due process violation."  <u>Miller</u>, 954 F.Supp. at 1065. Further, Judge Yohn concluded that the social worker would not be entitled to qualified immunity.  <u>Id.</u>

Here, the Complaint alleges serious misrepresentations made to the court in the ex parte memorandum, similar to the misrepresentations in <u>Miller</u>, which, if made pursuant to Delaware County policy, would be sufficient to violate substantive due process.  Specifically, the Complaint alleges that the ex parte

memorandum falsely stated that Mrs. Dennis had told CYS staff that she was fearful of allowing B.D. to be alone with Mr. Dennis, that there were "no known family resources to care for the baby upon his discharge from the hospital", and that there were no temporary procedures available under the law to immediately place B.D. with the Stevensons pending a full-home study.

Plaintiffs allege that CYS knew the Groffs, Mrs. Dennis's parents, were ready and willing to care for B.D. In addition, regarding the Stevensons, plaintiffs allege that defendants misrepresented Pennsylvania law because they omitted reference to 55 Pa.Code. § 3700.70, which provides for temporary and provisional approval of foster families.  Plaintiffs allege that the Stevensons could have been approved on a temporary basis, prior to conducting a lengthier full-home study.

I conclude that "[t]hese allegations when applied to taking children from their parents would by anyone's definition be patently unlawful and a clearly established substantive due process violation."  Miller, 954 F.Supp. at 1065.  Accordingly, I hold that these alleged misrepresentations exceed both negligence and deliberate indifference, reaching a level of gross negligence or arbitrariness that shocks the conscience, and that defendants are not entitled to qualified immunity.  Miller, 174 F.3d at 375-376.

-82-

Plaintiffs further allege a claim for violation of procedural due process against Delaware County based upon the same grounds.  Plaintiffs allege that the misrepresentations in the ex parte memorandum, specifically that B.D. had no family or friends to care for him, caused both the court to place B.D. in foster care on December 9, 2008, and caused Master McNulty to continue B.D.'s placement in foster care on December 11, 2008.

Although plaintiffs had a post-deprivation hearing on December 11, 2008, plaintiffs allege that the serious misrepresentations in the ex parte memorandum deprived them of the opportunity to explain to the court that B.D. could be placed with family or friends instead of with strangers.  Plaintiffs allege that Master McNulty informed them that because the court had accepted the misrepresentation in the ex parte memorandum that CYS had made reasonable efforts to avoid placing B.D. in foster care on December 9, 2008, Master McNulty's authority to change B.D.'s placement on December 11, 2008 was accordingly limited.

The Third Circuit has held that initiating child custody proceedings by ex parte order is generally constitutional so long as a prompt post-deprivation hearing is held.  Miller, 174 F.3d at 372 n.4.  Although plaintiffs' received a prompt post-deprivation hearing, I conclude that the misrepresentations in the ex parte memorandum denied plaintiffs procedural due

process because they deprived plaintiffs of "the opportunity to be heard at a meaningful time and in a meaningful manner." Miller, 174 F.3d at 373 (internal quotations omitted).

Plaintiffs were deprived of a meaningful opportunity to inform the court of the availability of the Groffs and the Stevensons to care for B.D.  CYS had already misrepresented to the court in the ex parte memorandum, which Master McNulty stated limited his authority at the December 11, 2008 hearing, that B.D. had no suitable caretakers and needed to be placed in foster care.

Therefore, because I conclude that plaintiffs have stated a prima facie claim for substantive and procedural due process violations against Delaware County, pursuant to the decisions of Ms. Wertz as a policymaker in approving the ex parte memorandum, I deny defendant's motion to dismiss the claim in Count II under the Fourteenth Amendment against Delaware County.[197]

_____

[197]  It is unclear whether plaintiffs additionally are pursuing a claim against CYS employees individually for allegedly delaying filing the ex parte memorandum until December 9, 2008.  Separate from the alleged misrepresentations contained in the ex parte memorandum, for which defendants are entitled to absolute immunity, the Complaint also alleges that CYS delayed filing the ex parte memorandum in retaliation for Mr. and Mrs. Dennis maintaining their innocence of child abuse allegations.

The Complaint alleges that CYS had conclusively determined that it would seek protective custody of B.D., and that it would place B.D. in foster care, on December 2, 2008.  However, the Complaint alleges that CYS deliberately delayed seeking protective custody until December 9, 2008 in order to retaliate against Mr. and Mrs. Dennis for maintaining their innocence, and to deny them the opportunity to explain to the court that B.D.

(Footnote 197 continued):

-84-

*Counts III and IV*

In Count III, plaintiffs contend that defendant Mary Germond violated their right to procedural due process because she did not file the dependency petition within 48 hours of the December 11, 2008 post-deprivation hearing, as required by 23 Pa.C.S.A. § 6315.  Moreover, plaintiffs aver that the petition contained false allegations regarding B.D.'s injuries, and that it did not allege why Mrs. Dennis was unable to care for B.D. in light of the fact that only Mr. Dennis was criminally charged with abusing B.D.

In Count IV, plaintiffs further allege that Ms. McGettigan delayed scheduling the dependency hearing until

_____

(Continuation of footnote 197):

could be placed with the Groffs or the Stevensons instead of with strangers. Complaint, paragraphs 155-156 and 185.

Defendants are not entitled to absolute immunity for administrative decisions that take place outside the context of judicial proceedings.  Ernst, 108 F.3d at 497 n.7.  To the extent that deciding whether and when to file an ex parte memorandum is an administrative decision, which occurred before defendants actually initiated judicial proceedings by ex parte memorandum, I conclude that defendants would not be entitled to absolute immunity.

However, the Complaint does not allege with particularity which CYS employee allegedly decided to delay filing the ex parte memorandum until December 9, 2008, or which CYS employee decided to pursue an ex parte request for protective custody instead of seeking an earlier pre-deprivation hearing prior to December 9, 2008.  The Complaint merely alleges that "CYS" was the actor in taking such actions.

I cannot conclude at this stage of the proceedings that plaintiffs are unable to state a prima facie claim for due process violations against any CYS employees individually for these administrative actions.  Therefore, I permit plaintiffs to re-plead with more specificity a Fourteenth Amendment claim in Count II against defendants Wertz, McGettigan, and Giancristiforo in their individual capacities for retaliating against Mr. and Mrs. Dennis by allegedly delaying filing an ex parte request for protective custody of B.D. See Alston, 363 F.3d at 235.

-85-

April 22, 2009.  Plaintiffs aver that the hearing should have been held no more than ten days after the filing of the dependency petition, pursuant to 42 Pa.C.S.A. § 6335.

As described above, child welfare workers are entitled to absolute immunity for the formulation and presentation of recommendations to the court in the course of dependency proceedings.  Ernst, 108 F.3d at 495.  Therefore, Ms. Germond is entitled to absolute immunity for the representations she made to the court in the dependency petition.  Accordingly, to the extent plaintiffs seek relief for Ms. Germond's alleged misrepresentations in the dependency petition, I dismiss such claims in Count IV with prejudice.

The Third Circuit has additionally explained that it "would be unwilling to accord absolute immunity to 'investigative or administrative' actions taken by child welfare workers outside the context of a judicial proceeding." Ernst, 108 F.3d at 497 n.7.

In Counts III and IV, plaintiffs allege that the date on which the dependency petition was filed, and the first day scheduled for the dependency hearing, were within the control of CYS.  Accordingly, the scheduling of the dependency hearing and the filing of the dependency petition appear to be "adminis-trative actions", and defendants McGettigan and Germond would not

be entitled to absolute immunity for those actions.  Ernst,
108 F.3d at 497 n.7.

I now consider whether these scheduling matters
violated plaintiffs' rights.

Plaintiffs correctly contend that the dependency
petition should have been filed within 48 hours of the
December 11, 2008 post-deprivation hearing.  23 Pa.C.S.A. § 6315.
However, Ms. Germond filed it on December 29, 2008, eighteen days
after the post-deprivation hearing.  In addition, Ms. McGettigan
scheduled the first day of the dependency hearing on April 22,
2009, although, under Pennsylvania law, it should have been
scheduled not later than ten days after the filing of the
dependency petition on December 29, 2008.  42 Pa.C.S.A. § 6335.

In Brown v. Daniels, 128 Fed.Appx. 910 (3d Cir. 2005),
the United States Court of Appeals for the Third Circuit held
that a post-deprivation hearing held seven weeks after the child
was taken into custody, instead of 72 hours, made out a prima
facie claim for a procedural due process violation.  Further, the
Third Circuit held that the child services caseworker was not
entitled to qualified immunity because "a reasonable [children
and youth services] employee could not have believed that a post-
deprivation hearing conducted seven weeks after the removal of a
child from his parents' home complied with due process."  Brown,
128 Fed.Appx. at 916.

Although <u>Brown</u> concerned delay in a post-deprivation hearing, which was timely in this case, I conclude that the Third Circuit's holding that excessive delay in a statutorily required hearing can deprive plaintiffs of procedural due process also applies to filing dependency petitions and scheduling dependency hearings.

The Third Circuit held that "[a]lthough there is no bright-line rule for deciding whether a post-deprivation hearing is sufficiently 'prompt', the delay should ordinarily be measured in hours and days, as opposed to weeks." <u>Brown</u>, 128 Fed.Appx. at 915. I conclude that this reasoning also applies to the later stages of a dependency proceeding, and defendants have cited no authority to the contrary.

Here, the dependency petition, which should have been filed within 48 hours of the post-deprivation hearing under 23 Pa.C.S.A. § 6315, was filed over two weeks late. Moreover, the first day of the dependency hearing, which should have been held within ten days of the filing of the petition under 42 Pa.C.S.A. § 6335, was ultimately nearly four months late.[198]

---

[198] It is true that the Complaint alleges CYS initially scheduled the first day of the dependency hearing for January 13, 2009. This date also violates the ten-day rule set out in 42 Pa.C.S.A. § 6335, although the violation is by a matter of days instead of months.

Nonetheless, the Complaint alleges that CYS scheduled the January 13, 2009 hearing before Master McNulty, who already informed CYS on December 11, 2008 that he should not preside over the dependency hearing because he had a conflict. Therefore, the January 13, 2009 hearing had to be

(<u>Footnote 198 continued</u>):

Because plaintiffs prevailed at the conclusion of the dependency proceedings, plaintiffs can establish that a timely hearing would have prevented the extended infringement on their familial rights.  See Brown v. Daniels, 290 Fed.Appx. 467, 473 (3d Cir. 2008).

Therefore, I conclude that plaintiffs have sufficiently alleged a violation of their procedural due process rights against defendants Wertz and McGettigan for those alleged delays. Further, because I conclude that a reasonable CYS employee could not have believed that these delays complied with due process, I reject defendants' qualified immunity affirmative defense.  See Pearson, 555 U.S. at 232, 129 S.Ct. at 815, 172 L.Ed.2d at 573; see also Brown, 128 Fed.Appx. at 916.  Accordingly, I deny defendants' motion to dismiss Counts III and IV in these respects.

Plaintiffs additionally allege in Count IV that their substantive due process rights were violated because the

---

(Continuation of footnote 198):

continued, and it was rescheduled for February 20, 2009 before a judge of the Delaware County Court of Common Pleas.

    The February 20, 2009 hearing date also violates the ten-day rule set out in section 6335.  Plaintiffs admit that their counsel requested a continuance for the February 20, 2009 hearing because he was scheduled for trial that day.  However, CYS did not reschedule the hearing until April 22, 2009.  This final date for the dependency hearing also violates section 6335.

    Accordingly, although CYS attempted to schedule the dependency hearing on two dates prior to the April 22, 2009 date, both prior dates violated section 6335, and the final date violates section 6335 by nearly four months.

dependency petition was filed on April 22, 2009.  Plaintiffs cite
both Miller and Croft for the proposition that the late
scheduling of the dependency hearing, which separated B.D. from
Mrs. Dennis for months, violates substantive due process.

        However, Croft concerned whether a child welfare worker
violated substantive due process because the child welfare worker
did not possess an objectively reasonable basis for *removing* a
child from parental custody.  103 F.3d at 1127.  Miller, as
described above, concerned whether a prima facie claim for a
substantive due process violation existed where a social worker
attempted to suborn perjury, misrepresented a doctor's medical
report, and induced a hospital to falsify records in connection
with the social worker's attempts to *remove* children from their
mother's custody.  Miller, 954 F.Supp. at 1065.

        Count IV, on the other hand, alleges due process
violations for the alleged *delays* in beginning the dependency
hearing, which were scheduled months after the time specified
under Pennsylvania law.  It does not appear that Count IV
challenges the initial decision by CYS to *remove* B.D. from
Mr. and Mrs. Dennis's custody.

        Plaintiffs have cited no authority, and I am aware of
none, for the proposition that the late scheduling of a
dependency hearing constitutes a violation of substantive due
process.  As a result, because the facts in the Complaint only

support a cause of action for a procedural due process violation,
I dismiss plaintiffs' substantive due process claim on this
ground with prejudice.  See <u>Alston</u>, 363 F.3d at 235.

Plaintiffs also allege that Delaware County has <u>Monell</u>
liability for the injuries alleged in Counts III and IV.
Plaintiffs allege that Ms. Germond's late filing of the
dependency petition, in addition to the deficiencies in the
dependency petition, and Ms. McGettigan's late scheduling of the
first day of the dependency hearing in their case, were all done
pursuant to Delaware County policy.

As described above, plaintiffs have stated a prima
facie claim for violation of their procedural due process rights
because of Ms. Germond's late filing of the dependency petition
and Ms. McGettigan's late scheduling the first day of the
dependency hearing.  Accordingly, I now analyze whether
plaintiffs have sufficiently alleged that these actions were
taken pursuant to a Delaware County policy, custom, or practice.

In Count III, the Complaint alleges that Ms. Germond is
the administrator of CYS and that she was responsible for setting
the policy of CYS when she filed and signed the dependency
petition on December 29, 2008.[199]

As described above, Delaware County can be liable for a
single unconstitutional act if the act was directed by an

---

[199]    Complaint, paragraph 9.

authorized policymaker.  <u>Pembaur</u>, 475 U.S. at 481,
106 S.Ct. at 1299, 89 L.Ed.2d at 464.  At this stage of the
proceedings, plaintiffs have sufficiently alleged that
Ms. Germond is a policymaker of CYS and was responsible for
setting CYS policy when she approved the late filing of the
dependency petition.  <u>See</u> <u>Hill</u>, 455 F.3d at 245-246.  Plaintiffs'
allegations support the reasonable inference that because
Ms. Germond sets CYS policy and serves as the top administrator,
her approval of the dependency petition was final and
unreviewable.

Accordingly, I deny defendant's motion to dismiss the
procedural due process claim against Delaware County in Count
III, based upon the acts of Ms. Germond as an authorized
policymaker.  <u>See</u> <u>Brown</u>, 520 U.S. at 405, 117 S.Ct. at 1389,
137 L.Ed.2d at 640.

In Count IV, the Complaint alleges that Delaware County
has a custom, policy, or practice of scheduling the first day of
dependency hearings weeks or months after the filing of the
dependency petition.[200]  Plaintiffs contend that Ms. McGettigan's
scheduling of the dependency hearing for April 22, 2009, nearly
four months after the filing of the dependency petition, is
evidence of Delaware County's policy.

---

[200]      Complaint, paragraph 241.

The Complaint does not allege that Ms. McGettigan is a policymaker for CYS.  Instead, it appears plaintiffs contend that Delaware County is liable for Ms. McGettigan's conduct because her alleged delays in scheduling represent a Delaware County policy, practice, or custom.

However, <u>Monell</u> and its progeny make clear that a county cannot be liable simply because the county "hired one 'bad apple.'"  <u>Tuttle</u>, 471 U.S. at 821, 105 S.Ct. at 2435, 85 L.Ed.2d at 803.  Beyond conclusory allegations, plaintiffs fail to present any facts regarding an official policy or custom of Delaware County that caused violation of their civil rights.

Plaintiffs have not pled sufficient facts to suggest that the late scheduling of dependency hearings was a persistent and widespread practice or custom of Delaware County, rather than just the "idiosyncratic action[] of [an] individual public actor[]."  <u>Burke</u>, 742 F.Supp.2d at 676; <u>see also</u> <u>Connick</u>, __ U.S. at __, 131 S.Ct. at 1359, 179 L.Ed.2d at 426.

Therefore, I conclude that plaintiffs' allegations in Count IV do not satisfy the <u>Twombly</u> pleading standard because the factual averments regarding Delaware County's policy, custom, or practice are nothing more than "bald assertions" which fail to state a claim upon which relief can be granted.  <u>In re Burlington Coat Factory Securities Litigation</u>, 114 F.3d 1410, 1429-1430 (3d Cir. 1997).

Because I cannot conclude at this time that permitting leave to amend would be futile, I will permit plaintiffs to re-plead their <u>Monell</u> claim in Count IV with more specificity, for the purpose of alleging facts supporting the assertion that the nearly-four-month alleged delay in scheduling the dependency hearing was pursuant to a policy or custom of Delaware County.[201] See <u>Alston</u>, 363 F.3d at 235.

In addition, as described above, I conclude that plaintiffs have not stated a prima facie claim for violation of plaintiffs' substantive due process rights against Ms. McGettigan, individually, for her alleged delay in scheduling the dependency hearing.  There can be no award for damages against a county based upon the actions of one of its employees when the employee has inflicted no constitutional harm.  <u>Hill</u>, 455 F.3d at 245.  Therefore, I dismiss the substantive due process claim against Delaware County in Count IV with prejudice.

---

[201]    The Complaint additionally alleges that CYS delayed complying with mandatory discovery rules regarding defendants' two proposed expert witnesses for the dependency hearing until after both the January 13, 2009 and the February 20, 2009 dependency hearing dates had passed.  Accordingly, plaintiffs contend that CYS made starting the hearing on either of these two earlier dates impossible because CYS had not produced information regarding their proposed expert witnesses.  The Complaint alleges that CYS did not fully comply with plaintiffs' discovery requests until April 8, 2009.

The Complaint does not allege that these delays in discovery were the result of Delaware County policy, practice, or custom.

Because I am permitting plaintiffs to re-plead their <u>Monell</u> claim in Count IV with more specificity, I will also permit plaintiffs to re-plead with more specificity that the alleged nearly-four-month delay in beginning the dependency hearing was also because of a Delaware County custom, policy, or practice of delaying discovery requests in dependency proceedings.

Accordingly, I deny defendants' motion to dismiss the
Fourteenth Amendment claims in Counts III for violating
plaintiffs' procedural due process rights against Ms. Germond and
Delaware County, and the Fourteenth Amendment claim in Count IV
for violating plaintiffs' procedural due process rights against
Ms. McGettigan.  Further, I dismiss without prejudice plaintiffs'
claim in Count IV for violation of their procedural due process
rights against Delaware County, with leave to re-plead the claims
in an amended complaint according to the standard set forth
above.  Finally, I dismiss with prejudice plaintiffs' claims for
violation of their substantive due process rights in Count IV
against Ms. McGettigan and Delaware County.

*Count V*

Count V contains a substantive due process claim
against Delaware County for its alleged custom, practice, or
policy of refusing to permit a child in its custody from having
more time with, or returning the child to, his mother in
retaliation for the mother and father maintaining their
innocence.

Plaintiffs aver that, because CYS had been granted
protective custody of B.D. by court order, which was continued at
the post-deprivation hearing, CYS had the discretion to decide
who to place B.D. with, and how long Mrs. Dennis's visitation
with B.D. should be.  Plaintiffs contend that CYS created a

"Family Service Plan" which directed Mrs. Dennis to attend parent education classes and to have a psychological evaluation.

Plaintiffs aver that Mrs. Dennis completed both requirements, and that in both cases the CYS professionals administering the services praised her parenting skills and declared that she was a fit mother.  Despite these positive evaluations, plaintiffs claim that CYS refused to return B.D. to Mrs. Dennis while the dependency proceedings were pending, and that it refused to allow Mrs. Dennis more than one hour of weekly visitation with B.D.

The Third Circuit has held that "a state has no interest in protecting children from their parents unless it has some reasonable and articulable evidence giving rise to a reasonable suspicion that a child has been abused or is in imminent danger of abuse." Croft, 103 F.3d at 1126.  Defendants needed an "objectively reasonable suspicion of abuse" in order to justify "the degree of interference" with Mrs. Dennis's rights as a parent. Id.

Plaintiffs have alleged that following her successful reviews by the CYS psychologist and the CYS parent educator, CYS did not have an objectively reasonable suspicion that Mrs. Dennis was a perpetrator of abuse by omission.  If Delaware County had a retaliatory policy of continuing to interfere with a parent's rights absent any articulable evidence giving rise to a

reasonable suspicion of abuse, such policy would violate the parent's substantive due process rights.  See Croft, 174 F.3d at 1126.  The policy would constitute decision-making that is "so clearly arbitrary" that it shocks the conscience. Miller, 174 F.3d at 376.  I now examine whether plaintiffs' have sufficiently pled that such retaliatory policy existed.

As described above, Delaware County cannot be liable for the constitutional torts of its employees based upon a respondeat superior theory of liability.  Tuttle, 471 U.S. at 821, 105 S.Ct. at 2435, 85 L.Ed.2d at 803. Plaintiffs allege that Delaware County had a policy, practice, or custom of separating a parent from her child without reasonable suspicion of abuse and in retaliation for her maintaining her husband's innocence.  However, plaintiffs have failed to plead any facts that the alleged wrongs of CYS employees (refusing to return B.D. to Mrs. Dennis and refusing her longer visitation rights) resulted from a county "practice – and not an isolated act".  Anela v. City of Wildwood, 790 F.2d 1063, 1067 (3d Cir. 1986).

Although plaintiffs have not sufficiently alleged that widespread and persistent practices existed, plaintiffs have stated a claim for Delaware County's liability based upon the acts of an authorized policymaker.  See Connick, __ U.S. at __, 131 S.Ct. at 1359, 179 L.Ed.2d at 426.   The Complaint alleges

that defendant Beth Prodoehl, as the kinship administrator, sets the policy for the CYS kinship department.[202]

The Complaint alleges that the kinship department is responsible for the decision to reunite a child with his parents.[203]  Drawing all reasonable inferences in favor of plaintiffs, which I must, at this stage of the proceedings, plaintiffs have sufficiently alleged that Ms. Prodoehl is responsible for setting the policy of the CYS kinship department, and that her authority to make policy in that area is final and unreviewable.  Hill, 455 F.3d at 245-246.

The Complaint alleges that in her capacity as policymaker for the kinship department, Ms. Prodoehl refused to allow Mrs. Dennis more than one hour of supervised visitation with B.D. for over six months while B.D. was placed with the Stevensons.[204]  The Complaint further alleges that Ms. Prodoehl refused to allow Mrs. Dennis longer visitation because she was retaliating against Mrs. Dennis for maintaining her innocence and her husband's innocence.[205]

---

[202]    Complaint, paragraph 11.

[203]    Id.

[204]    Id.

[205]    Id.

Accordingly, I conclude that Ms. Prodoehl's alleged decision to deny Mrs. Dennis longer visitation with B.D. in retaliation for Mrs. Dennis maintaining her innocence and her husband's innocence, without regard to the positive reports Mrs. Dennis received from CYS professionals, is attributable to Delaware County.  See Pembaur, 475 U.S. at 481, 106 S.Ct. at 1299, 89 L.Ed.2d at 464.

In addition, the Complaint alleges that on April 22, 2009, following the positive report regarding Mrs. Dennis from the CYS parent educator, Mr. Dennis's counsel approached Ms. Wertz  and Ms. Prodoehl and requested that B.D. be placed with Mrs. Dennis.  Counsel's request included the offer that Mr. Dennis would move out of the family residence so that he would not be near B.D. while the dependency proceedings were pending.

The Complaint alleges that Ms. Prodoehl "deferred to" Ms. Wertz on whether to grant this request.[206]  The Complaint alleges that Ms. Wertz retaliated against Mrs. Dennis, who continued to support Mr. Dennis, by denying the request because Mr. and Mrs. Dennis were still married and were living as husband and wife.

I conclude that it is a reasonable inference that Ms. Prodoehl, as administrator for the kinship department, was

---

[206]     Complaint, paragraph 251.

ultimately responsible for the decision of whether to reunite Mrs. Dennis and B.D. while the dependency proceedings were pending.

It is also a reasonable inference that, in deferring to Ms. Wertz when plaintiffs' counsel approached both Ms. Prodoehl and Ms. Wertz on April 22, 2009, Ms. Prodoehl authorized or ratified Ms. Wertz's allegedly retaliatory decision refusing to return B.D. to Mrs. Dennis during the pendency of the dependency proceedings.  See Praprotnik, 485 U.S. at 127, 108 S.Ct. at 926, 99 L.Ed.2d at 120.  Therefore, Ms. Prodoehl's decision is chargeable to Delaware County.  Id.

Accordingly, I conclude that plaintiffs have stated a prima facie claim for violation of their substantive due process rights against Delaware County because of the interference with Mrs. Dennis's parental rights absent objectively reasonable suspicion of abuse.  See Croft, 103 F.3d at 1126.  Therefore, I deny defendant's motion to dismiss Count V.

*Count VI*

Count VI alleges a substantive due process claim against Delaware County for relying on the biased and unreliable medical opinions of Dr. DeJong in the dependency proceedings.

Plaintiffs allege that Dr. DeJong has a history of bias and unreliability in investigating suspected cases of child abuse.  Plaintiffs bring the same allegations against District

Attorney Green for the exclusive reliance of the Delaware County District Attorney's office on Dr. DeJong's opinion in bringing the criminal charges of Aggravated assault, Simple assault, and Endangering welfare of children against Mr. Dennis.[207]

Plaintiffs contend that neither CYS nor the District Attorney's office conducted an independent investigation before initiating dependency proceedings and criminal proceedings, respectively.  Plaintiffs contend that Ms. Giancristiforo initiated dependency proceedings by filing the ex parte memorandum, and that she initiated these proceedings based entirely on Dr. DeJong's medical opinions.[208]  Plaintiffs additionally contend that Deputy District Attorney Galantino approved criminal charges against Mr. Dennis based solely upon Officer Collins' interview with Dr. DeJong.

Plaintiffs allege numerous instances in which they contend that Dr. DeJong misrepresents the medical evidence in order to conclude that the evidence is consistent with child abuse.  They allege that he has misrepresented medical evidence in "tens, if not hundreds, of child abuse investigations",[209] and they contend specifically that Dr. DeJong testified in four cases wherein he made a mis-diagnosis of child abuse.

---

[207]    The allegations in Count VI against the Delaware County District Attorney's office are addressed in the following section.

[208]    Complaint, paragraph 265.

[209]    Complaint, paragraph 273.

Plaintiffs additionally aver that Dr. DeJong has a bias that there are no non-abusive explanations for subdural hematomas, rib fractures, and retinal hemorrhages, although plaintiffs contend there are non-traumatic causes for these injuries (such as a difficult birthing process).

Plaintiffs aver that the American Academy of Pediatrics has enunciated a policy explaining that there is a "need for a presumption of child abuse when a child younger than 1 year has suffered an intracranial injury."[210]   Plaintiffs contend that Dr. DeJong adopts this presumption in the context of subdural hematomas and in the presence of rib fractures as well.

Plaintiffs also contend that Delaware County and the Delaware County District Attorney's office knew or should have known of Dr. DeJong's history of unreliable and biased child abuse investigations.[211]

Delaware County contends that plaintiffs have not stated a claim upon which relief can be granted because plaintiffs acknowledge that Dr. DeJong is a known expert in the area of child abuse.  Further, Delaware County argues that plaintiffs' allegations that defendants should have conducted a more comprehensive investigation do not rise to the level of a constitutional claim.

---

[210]     Complaint, paragraph 278.

[211]     Complaint, paragraph 298.

Neither party has cited authority supporting their positions, but the governing standard for a substantive due process claim is identified by the Third Circuit in <u>Croft</u>, <u>Miller</u>, and <u>Ziccardi</u>, <u>supra</u>.  Specifically, child welfare workers abridge a parent's substantive due process rights when they remove a child from his parents while consciously disregarding a great risk that there had been no abuse.  <u>Ziccardi</u>, 288 F.3d at 66.

The focus for due process purposes is "whether the information available to the defendants at the time would have created an objectively reasonable suspicion of abuse justifying the degree of interference" with Mr. and Mrs. Dennis's rights as parents.  <u>Croft</u>, 103 F.3d at 1126.  "Absent such reasonable grounds, governmental intrusions of this type are arbitrary abuses of power."  <u>Id.</u>

In <u>Croft</u>, a social worker ordered a child's father to immediately leave the home, threatening to otherwise place the child in foster care, pending an investigation into whether the father had sexually abused his daughter.  103 F.3d at 1124.  The social worker had no evidence of abuse except for an anonymous tip based on hearsay.  <u>Id.</u> at 1127.

Further, upon interviewing the parents, the social worker had not personally formed an opinion as to whether abuse was likely.  <u>Id.</u>  The Third Circuit held that the social worker

violated the father's substantive due process rights because the social worker did not have an objectively reasonable suspicion of abuse. <u>Id.</u>

Here, plaintiffs allege that Ms. Giancristiforo based her conclusion that B.D. had been abused completely on Dr. DeJong's medical opinion. Accordingly, it is a reasonable inference from the Complaint that Ms. Giancristiforo, like the social worker in <u>Croft</u>, had not formed a personal opinion regarding whether B.D. had been abused.

However, Ms. Giancristiforo relied on the opinion of a child abuse medical expert, rather than an anonymous tip that was based upon hearsay. Nonetheless, if Ms. Giancristiforo had reason to believe that Dr. DeJong's opinion was biased and unreliable, then she consciously disregarded a great risk that there had been no abuse to B.D. in removing him from his parents. <u>Ziccardi</u>, <u>supra</u>.

The Complaint does not contain specifically pled facts supporting the conclusion that Ms. Giancristiforo (or any other CYS employee responsible for removing B.D.) *consciously disregarded* a great risk that B.D. had not been abused because she knew of Dr. DeJong's alleged history of false child abuse accusations. Further, the Complaint does not contain sufficient facts, beyond conclusory assertions, supporting the conclusion that Delaware County had a custom, policy, or practice of relying

upon Dr. DeJong's medical opinions.  See In re Burlington Coat Factory Securities Litigation, 114 F.3d at 1429-1430.

Because I cannot conclude at this time that permitting leave to amend would be futile, I will permit plaintiffs to re-plead their Monell claim in Count VI with more specificity, for the purpose of alleging facts supporting the assertion that removing a child from his parents based solely upon Dr. DeJong's biased and unreliable medical opinions was pursuant to a policy or custom of Delaware County.  See Alston, 363 F.3d at 235.

### Count IX

Count IX raises a due process claim against Dr. DeJong, Ms. Germond, Ms. Wertz, Ms. McGettigan, Ms. Giancristiforo, District Attorney Green, Deputy District Attorney Galantino, and Delaware County for allegedly adopting a presumption identified by the American Academy of Pediatrics that a child younger than one year with an intracranial injury is a victim of child abuse.[212]  The Complaint alleges that "the presumption unconstitutionally tainted the chances of a voluntary safety plan, the presumption tainted the investigation itself and tainted CYS decisions to allow [Mrs. Dennis] time to be with B.D. to a degree that violated [plaintiffs'] due process rights."[213]

---

[212]    The claims against Dr. DeJong, District Attorney Green, and Deputy District Attorney Galantino in Count IX are addressed below.

[213]    Plaintiffs' Response to Delaware County Defendants' Motion to Dismiss, page 37.

Although the Complaint does not specify whether Count IX alleges a substantive or a procedural due process claim, it appears from plaintiffs' memorandum of law that Count IX alleges a procedural due process violation for two reasons. First, plaintiffs explain that they are not claiming in Count IX that the alleged medical presumption of abuse failed to raise a reasonable suspicion of abuse sufficient to commence an investigation, which is the standard for a substantive due process violation identified in <u>Croft</u>, <u>supra</u>.

In Plaintiffs' Response to Delaware County Defendants' Motion to Dismiss, plaintiffs state:

> The Dennis family is not suggesting that the presence of a subdural hemorrhage and multiple rib fractures should not raise a suspicion of child abuse nor are they taking the position that a child abuse investigation should not have been initiated or that a safety plan should not have been implemented during the investigation.[214]

Second, plaintiffs further contend that Count IX alleges that the medical presumption of abuse denied them the opportunity to be heard at a meaningful time and in a meaningful manner, which is the standard for a procedural due process violation identified in <u>Miller</u>, <u>supra</u>.

In Plaintiffs' Response to Delaware County Defendants' Motion to Dismiss, plaintiffs state:

---

[214]    Plaintiffs' Response to Delaware County Defendants' Motion to Dismiss, page 37.

> If the Dennis family had opportunity through genuine due process to challenge the presumption made by Defendant DeJong and adopted by CYS, there would be no due process violation. However, when CYS delayed seeking emergency custody until the day B.D. was to be discharged from the hospital and then submitted an ex parte memorandum to the court, without any notice for the Dennis family to be heard, or to cross examine any witnesses, then the adoption of the presumption tainted even the judicial forum due to the lack of candor by CYS and constitutes a due process violation.[215]

Plaintiffs allege that the medical presumption of abuse which Dr. DeJong utilized unconstitutionally shifted the burden to Mr. and Mrs. Dennis to provide a non-accidental explanation for B.D.'s injuries. Plaintiffs contend that because CYS employees and the Delaware County District Attorney's office failed to do an independent investigation into the cause of B.D.'s injuries, their reliance on Dr. DeJong's opinion constitutes a de facto adoption of the medical presumption of abuse.

Plaintiffs assert that the alleged medical presumption violated the presumption of innocence, which plaintiffs allege applies to both criminal proceedings and dependency proceedings. Plaintiffs aver that the presumption of innocence "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which

---

[215] Plaintiffs' Response to Delaware County Defendants' Motion to Dismiss, pages 38 and 39.

he is charged." <u>In re Winship</u>, 397 U.S. 358, 364,
90 S.Ct. 1068, 1073, 25 L.Ed.2d 368, 375 (1970).

Plaintiffs cite no authority regarding dependency
proceedings and the presumption of innocence.  As described
above, the standards for dependency proceedings differ from the
standards in criminal proceedings.  In a dependency proceeding,
prima facie evidence that the child's custodian caused the child
abuse, by either acts or omissions, is all that is required.
<u>In the Interest of J.R.W.</u>, 428 Pa.Super. 597, 607,
631 A.2d 1019, 1024 (Pa.Super. 1993).  Proof that the child has
been abused must be established by clear and convincing evidence.
42 Pa.C.S.A. § 6341(c).

Plaintiffs have not alleged that the court applied
these standards improperly.  In fact, the court ultimately
determined that CYS had not proven by clear and convincing
evidence that B.D. was abused.  It appears, then, that plaintiffs
essentially contend that the alleged medical presumption caused
CYS to lack clear and convincing evidence of abuse, or prima
facie evidence that Mr. and Mrs. Dennis caused the abuse, in
pursuing the dependency proceedings.

Plaintiffs allege that had they been afforded the
opportunity at a meaningful time and in a meaningful manner to
contest CYS's reliance on the medical presumption of abuse in its
investigation (although an investigation nonetheless would have

been commenced):   (1) B.D. either would not have been removed pending the investigation or would have been placed with the Groffs or Stevensons; and (2) CYS would have either returned B.D. to Mrs. Dennis after her successful reviews by the CYS psychologist and parent educator, or Mrs. Dennis would have been provided longer visitation with B.D.

The Complaint fails to identify a factual predicate for the conclusory assertion that Delaware County had a policy, custom, or practice of presuming that children under one year of age with subdural hematomas are victims of child abuse.  The Complaint fails to allege how such policy, even if it existed, was the direct causal link for the violation of plaintiffs' due process rights in the two ways identified above.  See Brown, 520 U.S. at 404, 117 S.Ct. at 1388, 137 L.Ed.2d at 639.

The Complaint alleges that the language of the ex parte memorandum and the dependency petition are evidence that Delaware County adopted the medical presumption.  However, the language quoted in the Complaint from the respective documents does not support a reasonable inference that Delaware County adopted the presumption that a subdural hematoma in an infant conclusively determines that a child was abused.

The ex parte memorandum states: "[d]ue to the findings and the lack of adequate trauma history there was a concern for non-accidental trauma....[Mrs. Dennis] indicated that the baby's

father could have caused the injuries....Ms. Dennis does not
appear to acknowledge...that the injuries are non accidental."[216]

These statements from the ex parte memorandum, even
accepting plaintiffs' allegations as true, do not support the
reasonable inference that Delaware County adopted the medical
presumption described above.  See Fowler, 578 F.3d at 210.
Instead, the ex parte memorandum attributes the cause of the
injuries to the actions of Mr. Dennis.[217]

Plaintiffs also quote the following language from the
dependency petition, describing B.D.'s injuries:

> a significant skull fracture with severe bleeding
> and pressure on the brain, bilateral acute on
> chronic subdural hematomas, thirteen healing rib
> fractures, as well as corner fractures of the long
> bone, right humerous [sic] and right distal
> radius.  The medical professionals report that the
> injuries are a result from non-accidental
> trauma....Both parents have reported that they
> have been the primary caregivers of the child
> since birth and have offered no explanation for
> the injuries.[218]

The petition identifies numerous injuries in addition
to the subdural hematomas.[219]  Even construing the Complaint in

---

[216]    Complaint, paragraph 529.

[217]    Although the Complaint alleges that no reasonable basis existed
for the representation in the ex parte memorandum that Mrs. Dennis indicated
that Mr. Dennis caused B.D.'s injuries, this allegation is not relevant to
Count IX.

[218]    Complaint, paragraph 530.

[219]    Plaintiffs allege that the injuries identified in the dependency
petition are not supported by the radiological studies of duPont Hospital.

(Footnote 219 continued):

the light most favorable to plaintiffs, as I must, I conclude that this language does not support the assertion that Delaware County adopted a medical presumption that the presence of a subdural hematoma in B.D. was caused by abuse.  Fowler, 578 F.3d at 210.

        The Complaint further fails to identify a factual predicate for the conclusory assertion that defendants Germond, Wertz, McGettigan, and Giancristiforo acted to remove B.D. and place him in foster care with strangers, or continued to separate B.D. from Mrs. Dennis during the dependency proceedings, because they were acting pursuant to this medical presumption.  The Complaint does not allege that CYS or its employees even knew of the existence of the American Academy of Pediatrics presumption, or that Dr. DeJong allegedly employed it in his investigation. Instead, the Complaint alleges that CYS de facto adopted Dr. DeJong's presumption by relying on his medical opinion regarding B.D.

        If Delaware County had a policy of presuming abuse in every instance of a subdural hematoma in children under one year of age, and plaintiffs were denied a meaningful opportunity to

---

(Continuation of footnote 219):

This concern, addressed in Count II, is not relevant for Count IX, which cites the language of the petition for the purpose of showing that Delaware County had an unconstitutional policy of adopting Dr. DeJong's medical presumption that subdural hematomas in children under one year of age are caused by child abuse.

challenge the conclusions CYS employees' drew from the policy as applied to them, then plaintiffs would be able to state a prima facie claim for violation of their procedural due process rights. Accordingly, I will permit plaintiffs to re-plead their <u>Monell</u> claim in Count IX to allege with more specificity that Delaware County has a policy adopting the medical presumption that a child under one year of age with a subdural hematoma is a victim of child abuse, and that such policy was applied to deprive plaintiffs of their procedural due process rights. <u>See</u> <u>Alston</u>, 363 F.3d at 235.

Regarding the CYS employees in their individual capacities, as noted above, they are entitled to absolute immunity for their representations to the court in the ex parte memorandum and the dependency petition. <u>Ernst</u>, 108 F.3d at 497 n.7. Accordingly, to the extent that Count IX alleges that defendants Germond, Wertz, McGettigan, and Giancristiforo, misinformed the court regarding the evidence sustaining allegations of abuse, plaintiffs have not stated a claim upon which relief can be granted.

Although CYS employees are not entitled to absolute immunity for their investigative and administrative decisions, plaintiffs have failed to allege facts supporting their conclusory assertions that these defendants refused to place B.D. with Mrs. Dennis, the Groffs, or the Stevensons, or refused to

give Mrs. Dennis longer visitation, because they employed the medical presumption of abuse.  Because I cannot conclude at this stage of the proceedings that plaintiffs are unable to state a prima facie claim for violation of their due process rights, I will permit plaintiffs to re-plead with more specificity facts regarding this claim.  See Alston, 363 F.3d at 235.

Accordingly, I dismiss Count IX without prejudice against defendants Germond, Wertz, McGettigan, Giancristiforo, and Delaware County.

### Claims Against District Attorney Green and Deputy District Attorney Galantino

Regarding the claim against District Attorney Green in Count VI for relying on Dr. DeJong's medical opinion in bringing criminal charges against Mr. Dennis, and the similar claims against Deputy District Attorney Galantino and District Attorney Green in Counts IX and XII, I conclude that Mr. Dennis'[220] section 1983 claims in those counts are barred because Mr. Dennis entered the A.R.D. program.

In Heck v. Humphrey, 512 U.S. 477, 484-487, 114 S.Ct. 2364, 2371-2373, 129 L.Ed.2d 383, 393-395 (1994), the

---

[220]     Both Reginald Dennis and his wife Renee Dennis appear to assert a claim in Counts VI, IX, and XII.  However, it is well-established that a spouse has no standing to assert a section 1983 claim premised on the violation of the other spouse's constitutional rights.  See Hogan v. City of Easton, 2004 WL 1836992, at *6 (E.D.Pa. Aug. 17, 2004) (Padova, J.); Pahle v. Colebrookdale Township Police Department, 227 F.Supp.2d 361, 381 (E.D.Pa. 2002)(Van Antwerpen, J.).  Because any claim asserted by Mrs. Dennis appears to be solely predicated on the violation of Mr. Dennis' rights, I conclude she has no standing to assert this claim.

United States Supreme Court held that a plaintiff must prove a
favorable termination of the underlying criminal proceeding
against him in order to recover damages in a section 1983 suit.
Accordingly, a plaintiff can recover damages for an
unconstitutional conviction or imprisonment only by proving that
the conviction or sentence has been reversed on direct appeal,
expunged by executive order, declared invalid by a state
tribunal, or called into question by a federal court's issuance
of a writ of habeas corpus.  Id.

    In Gilles v. Davis, 427 F.3d 197, 201 (3d Cir. 2005),
the Third Circuit considered "whether resolution of a criminal
charge under Pennsylvania's 'Accelerated Rehabilitative
Disposition' program bars a subsequent § 1983 claim."  The Third
Circuit concluded that, under the reasoning in Heck, enrollment
in the A.R.D. program does not constitute a "favorable
termination" of the prior criminal proceeding.  Gilles,
427 F.3d at 211-212.

    The Third Circuit held that Heck requires this result
because the purpose of the decision was to "avoid parallel
litigation of probable cause and guilt", and because success in a
section 1983 claim would result in parallel litigation over the
substance of the charges for which a defendant enters the A.R.D.
program.  Gilles, 427 F.3d at 209.  The Third Circuit held that
Heck applies despite the fact that successful completion of an

-114-

A.R.D. program results in dismissal of the criminal charges and the expungement of the arrest record.  <u>Gilles</u>, 427 F.3d at 212 n.13.

The Third Circuit additionally held that enrollment in an A.R.D. program effectively releases a county and government officials from any subsequent civil rights claims brought pursuant to section 1983.  <u>Gilles</u>, 427 F.3d at 210 n.10. Accordingly, because Mr. Dennis agreed to resolve the criminal charges against him through the A.R.D. program, his section 1983 claims are barred pursuant to <u>Gilles</u>.

Mr. Dennis argues that <u>Gilles</u> should not apply when the subject matter comprising the criminal charges against a defendant have also been adjudicated in a dependency proceeding, and where the result of the dependency proceeding have been terminated in favor of the criminal defendant.  Mr. Dennis contends that the United States Supreme Court conclusion in <u>Heck</u> that a plaintiff can bring a section 1983 suit by proving that the conviction or sentence was subsequently "declared invalid by a state tribunal authorized to make such determination" is applicable in this case.  <u>Heck</u>, 512 U.S. at 487, 114 S.Ct. at 2372, 129 L.Ed.2d at 394.

Specifically, Mr. Dennis avers that the Delaware County Court of Common Pleas is the relevant "state tribunal", and that its dismissal of the dependency petition declares Mr. Dennis's

criminal charges and subsequent entrance into the A.R.D. program
"invalid". Hence, Mr. Dennis contends that because the
dependency proceedings terminated in his favor, District Attorney
Green and Deputy District Attorney Galantino are collaterally
estopped from arguing that A.R.D. is not a favorable termination
of the underlying accusations against Mr. Dennis.

Mr. Dennis claims that the A.R.D. program was merely
the wrong procedure for Deputy District Attorney Galantino to
use, but that, because the charges would ultimately be dismissed,
it came to the correct result.

Mr. Dennis' argument appears to be novel, and does not
remove him from the legal precedent clearly governing his claims.
As described above, dependency proceedings have different burdens
of proof, and they are not criminal proceedings. <u>C.S.</u>,
972 A.2d at 1262. Mr. Dennis has not cited any authority, and I
am aware of none, that the state court in a dependency proceeding
is "authorized" to declare subsequent criminal proceedings
brought against a defendant "invalid". <u>Heck</u>, 512 U.S. at 487,
114 S.Ct. at 2372, 129 L.Ed.2d at 394.

Furthermore, the Third Circuit has explicitly held in
<u>Gilles</u> that entrance into an A.R.D. program does not constitute a
favorable termination of the proceedings, thereby barring
subsequent section 1983 claims. <u>Gilles</u> did not make an exception
for those defendants who have also been involved in dependency

-116-

proceedings, and Mr. Dennis has failed to cite any authority to support his contention that such an exception exists.  Therefore, I conclude that, as a matter of law, Mr. Dennis's section 1983 claims against District Attorney Green and Deputy District Attorney Galantino are barred.

Accordingly, I dismiss with prejudice Counts XII of the Complaint, and I dismiss Counts VI and IX with respect to District Attorney Green and Deputy District Attorney Galantino.[221]

### *Claims Against Nemours Defendants*

Count VII alleges a substantive due process claim against Dr. DeJong individually for his numerous misrepresentations in his medical findings and his bias in favor of finding child abuse.  Count IX alleges a due process claim against Dr. DeJong for his adoption and application of the medical presumption that intracranial injuries in children under one year of age is the result of child abuse in this case.

To state a claim under section 1983, plaintiffs must allege that a defendant acting under color of state law deprived plaintiffs of a federal constitutional or statutory right. Gruenke, 225 F.3d at 298.  Plaintiffs allege that Dr. DeJong's actions are fairly attributable to Delaware County and the

---

[221]    Because I conclude that plaintiffs' section 1983 claim is barred by Gilles, I do not consider defendants' additional arguments that they are entitled to absolute or qualified immunity for their actions.

District Attorney, and therefore he is a state actor for purposes of a section 1983 suit.

According to the Complaint, Dr. DeJong worked as a private doctor at duPont Hospital, and he rendered medical opinions regarding B.D.'s injuries upon B.D.'s admittance to the hospital.  Although Dr. DeJong is otherwise a private actor, private action can be converted into action under color of state law where a defendant "exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law."  Groman v. Township of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995)(internal quotations omitted).

The Third Circuit has noted three approaches for detecting the presence of action under color of state law: (1) the exclusive government function approach; (2) the joint participation or symbiotic relationship approach; and (3) the nexus approach.  Groman, 47 F.3d at 639.  Plaintiffs appear to argue all three approaches regarding Dr. DeJong.

First, plaintiffs argue that both the Commonwealth of Pennsylvania and the State of Delaware have delegated the authority to temporarily take children into protective custody without a court order to doctors and hospitals, which plaintiffs contend has traditionally been an exclusive government function.

The United States Supreme Court has explained that the scope of the exclusive government function approach is limited, and the relevant "question is whether the function performed has been traditionally the *exclusive* prerogative of the State." Rendell-Baker v. Kohn, 457 U.S. 830, 842, 102 S.Ct. 2764, 2772, 73 L.Ed.2d 418, 428 (1982)(internal quotations omitted)(emphasis in original).  Further, in determining the contours of what constitutes an exclusive government function, the Third Circuit has held that performing a function serving the public, and even receipt of public funds, are not enough to make a private entity a state actor.  Groman, 47 F.3d at 640.

Plaintiffs have cited no authority for the proposition that a doctor temporarily taking a child into protective custody without a court order, pursuant to state-law, constitutes an exclusive government function for the purposes of bringing a section 1983 suit.  Further, even if taking B.D. into protective custody constitutes an exclusive government function, plaintiffs have not alleged that in this case, Dr. DeJong actually took B.D. into protective custody.

Therefore, without addressing the merits of whether such activity constitutes an exclusive government function, I conclude that plaintiffs have not pled facts alleging that Dr. DeJong performed an exclusive government function which transformed his private action into state action.

In addition, plaintiffs' other theories that Dr. DeJong was acting under the color of state law appear to involve both the joint participation/symbiotic relationship approach and the nexus approach.  Plaintiffs allege that Dr. DeJong and Mr. Speedling jointly participated with state officials in the seizure of B.D. and in the seizure of Mr. Dennis.

Plaintiffs contend that Dr. DeJong and Mr. Speedling assumed the role of child abuse investigators by their involvement with the CARE team at duPont Hospital, and Dr. DeJong's involvement with the CACD at duPont Hospital. Plaintiffs aver that Dr. DeJong collaborates with child protection services and law enforcement for CACD, such as by interviewing potential perpetrators, so that they can be arrested and prosecuted for child abuse without delay.

Plaintiffs also contend that Dr. DeJong is on the Attorney General's Medical/Legal Advisory Board on Child Abuse, which assists prosecutors and child protection personnel in the investigation and prosecution of child abuse cases. Specifically, the Complaint alleges that Dr. DeJong writes medical opinions for this Board, and that he presented his medical findings of abuse to the Board regarding B.D.

Additionally, not specific to this case, plaintiffs allege that Dr. DeJong in the past has participated in setting Delaware policy regarding how the police and child protective

agencies conduct child abuse investigations.  Further, plaintiffs
aver that Dr. DeJong has served on various state-created
committees related to child abuse in Delaware.  Finally,
plaintiffs allege that Pennsylvania and Delaware fund the
provision of child abuse medical experts through grants to the
CACD and to duPont Hospital.

The Third Circuit has addressed the joint partici-
pation/symbiotic relationship and the nexus theories in Groman,
47 F.3d at 641.  Groman involved a volunteer first-aid squad that
responded to police calls to aid a man whom police were taking
into custody.  The first-aid squad arrived and attempted to treat
the man at his home, and the squad responded to the police a
second time to treat the man when he was at the police station.

The Third Circuit held that the first-aid squad was not
a state actor for section 1983 purposes even though it received
public funds, it functioned to support the police, and it
responded twice to the request of the police to aid a man in
police custody.  Groman, 47 F.3d at 642.

The Third Circuit held that "the interdependence
between the state and private actor must be pronounced before the
law will transform the private actor into a state actor."
Id. at 641.  Because there was no evidence that the first-aid
squad's professional decisions were dictated or guided by the
state, or that the state controlled the first-aid squad's

professional conduct in helping the man, the first-aid squad was not a state actor.  Id. at 642.

Here, there is no evidence that Dr. DeJong's professional opinions, or his professional conduct, regarding determining the cause of B.D.'s injuries were dictated or controlled by the state.  Although the Complaint alleges that Dr. DeJong provided his medical opinion that B.D. had been abused to the Chester County Police Department and the Delaware County District Attorney's office, the Complaint does not allege that these entities dictated his opinion.

Further, the fact that Dr. DeJong assisted the police and the Delaware District Attorney's office by providing his medical opinion, like the first-aid squad's responses to the police requests for assistance in Groman, is not sufficient to transform his private action into state action.  See Groman, 47 F.3d at 641-642.  In addition, even if CACD and duPont Hospital received public funds, this fact does not convert Dr. DeJong's actions in rendering medical opinions into state action.  See Groman, 47 F.3d at 642.

Accordingly, I dismiss without prejudice Count VII in its entirety, and I dismiss without prejudice Count IX with regard to Dr. DeJong.  I will permit plaintiffs to re-plead Counts VII and IX with additional facts regarding whether

Dr. DeJong is a state actor for section 1983 purposes, consistent

with the above-described standard.  See Alston, 363 F.3d at 235.

### Claims Against PSUHMS Defendants

Count XIII of the Complaint contends that the PSUHMS

defendants denied Mr. Dennis[222] due process, effective assistance

of counsel, and the prospect of a fair trial in violation of the

Fourth, Fifth, Sixth, and Fourteenth Amendments because defendant

Kathleen D. Eggli, M.D. implemented PSUHMS's expert witness

policy in a discriminatory manner.

Mr. Dennis avers that Dr. Eggli, the radiology

department chair at PSUHMS, is responsible for implementing the

expert witness policy.  According to the Complaint, PSUHMS has an

expert witness policy which delegates discretion to department

chairs to either approve or disapprove reports and testimony in

legal proceedings, and which does not explicitly include criminal

cases.  The policy requires that any staff physician who is

considering being retained as an expert witness inform the

department chair.

The policy states that when the department chair

approves the expert witness activity, at the discretion of the

chair, such activities may be considered within the scope and

---

[222] Because Count XIII appears to only pertain to the alleged
violation of Mr. Dennis's civil rights in the context of his criminal
prosecution and has not alleged that Mrs. Dennis suffered any injury, I
dismiss Count XIII to the extent that plaintiffs' seek relief for Mrs. Dennis
as well because Mrs. Dennis lacks standing.  See PA Prison Society,
622 F.3d at 228.

duty of the physician's employment, and the physician then enjoys the benefit of coverage of the PSUHMS liability insurance and the use of the PSUHMS stationery and logo in such expert witness activity.

Defendant Danielle K. Boal, M.D. and Dr. Julie Mack (not a party) are employees of PSUHMS.  Dr. Boal provided an expert report for the prosecution in Mr. Dennis's criminal case, and Dr. Mack provided an expert report for plaintiffs.  Dr. Eggli allowed Dr. Boal to provide the report on PSUHMS stationery, and provided Dr. Boal with liability insurance, even though Dr. Boal did not follow the policy and obtain Dr. Eggli's approval prior to her retention by the prosecution.

However, Dr. Eggli did not approve Dr. Mack's expert report.  Accordingly, Dr. Mack's expert report was not accompanied by the benefits of being on PSUHMS stationery, and Dr. Mack was not covered by PSUHMS liability insurance.

Mr. Dennis alleges that Dr. Eggli did not apply the PSUHMS expert witness policy properly, and that she used the policy to discriminate against criminal defendants seeking an expert opinion.  Mr. Dennis nonetheless retained Dr. Mack and obtained her expert opinion without the benefits of the PSUHMS stationery and liability insurance.

Accordingly, Mr. Dennis contends that he was denied effective assistance of counsel because the PSUHMS defendants

prevented Mr. Dennis' counsel from obtaining an expert report with the official backing of PSUHMS.  Mr. Dennis further contends that this denied him due process, and denied him the prospect of a fair trial, notwithstanding the fact that Mr. Dennis ultimately entered the A.R.D. program.

A claim of ineffective assistance of counsel involves two elements: (1) counsel's performance must have been deficient, meaning that counsel made errors so serious that he was not functioning as "the counsel" guaranteed by the Sixth Amendment; and (2) the deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984).

Mr. Dennis has cited no authority, and I am aware of none, that a claim for ineffective assistance of counsel can be brought, not against the criminal defendant's counsel, but against a third party (the PSUHMS defendants) for their actions in interfering with the effectiveness of defendant's counsel.

Accordingly, because an ineffective assistance of counsel claim against a third party is not cognizable as a matter of law, I dismiss with prejudice Mr. Dennis's claim for ineffective assistance of counsel.  In addition, even if such claim were cognizable, Mr. Dennis cannot establish prejudice because he was actually able to retain Dr. Mack and obtained her expert medical report.

In addition, I dismiss with prejudice Mr. Dennis's claim to the extent that he alleges that the policy deprived him of a fair trial, because Mr. Dennis's criminal trial did not actually occur.  Mr. Dennis lacks standing because there is no case or controversy before the court, and the threat of injury is merely conjectural or hypothetical.  See PA Prison Society, 622 F.3d at 228.

Finally, Mr. Dennis has cited no case law supporting or further explaining his due process claims pursuant to the Fifth and Fourteenth Amendments.  It is also unclear whether Mr. Dennis asserts a procedural or substantive due process claim.

The PSUHMS defendants argue that Mr. Dennis was not denied procedural due process because he was not denied the opportunity to be heard merely because his medical expert did not write her report on PSUHMS stationery.  Further, the PSUHMS defendants contend that Mr. Dennis was not denied substantive due process because Mr. Dennis has not alleged any facts regarding Dr. Eggli's implementation of the expert witness policy that shocks the conscience.  Mr. Dennis does not respond to these arguments.

Pursuant to Rule 7.1(c) of the Rules of Civil Procedure of the United States District Court for the Eastern District of Pennsylvania, failing to address substantive matters raised in a motion may result in the unaddressed issue being granted as

uncontested.  Because Mr. Dennis does not provide any legal authority or analysis to contest dismissal based on the grounds argued by the PSUHMS defendants, I regard defendants' motion to dismiss the due process claims as uncontested and I grant the motion to dismiss the due process claim as unopposed.  See Toth, 215 F.Supp.2d at 598.

Accordingly, I dismiss with prejudice Count XIII of plaintiffs' Complaint in its entirety.

## Civil Conspiracy

In Counts VIII and XI, plaintiffs bring conspiracy claims for violation of equal protection and due process pursuant to 42 U.S.C. §§ 1981, 1983 and 1985.

### *Legal Standards for 42 U.S.C. §§ 1981, 1983, and 1985*

Section 1981 protects the rights to "make and enforce contracts, to sue, to be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property."  42 U.S.C. § 1981(a).  A section 1981 claim must allege that defendants intentionally discriminated against plaintiffs because of their race.  Pryor v. National Collegiate Athletic Association, 288 F.3d 548, 562 (3d Cir. 2002).

To state a prima facie case under section 1981, plaintiffs must prove: (1) that plaintiff is a member of a racial minority; (2) intent to discriminate on the basis of race by the

defendant; and (3) discrimination concerning one or more of the activities enumerated in the statute. <u>Brown v. Phillip Morris</u>, 250 F.3d 789, 797 (3d Cir. 2001).

A section 1983 conspiracy claim requires proof that two or more conspirators reached an agreement to deprive plaintiff of a constitutional right under color of law. <u>Williams v. Fedor</u>, 69 F.Supp.2d 649, 666 (M.D.Pa. 1999), <u>aff'd</u>, 211 F.3d 1263 (3d Cir. 2000). Plaintiffs must allege proof of (1) an actual violation of a right protected under section 1983 and (2) actions taken in concert by defendants with the specific intent to violate the right protected under section 1983. <u>Id.</u> at 665.

Section 1985(3) permits an action to be brought where defendants formed a conspiracy "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." 42 U.S.C. § 1985(3).

To state a claim under section 1985(3), plaintiffs must show

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is injured in his person or property or deprived of any right or privilege of a citizen of the United States.

<u>United Brotherhood of Carpenters & Joiners of America, Local 610 v. Scott</u>, 463 U.S. 825, 828-829, 103 S.Ct. 3352, 3356,

-128-

77 L.Ed.2d 1049, 1054 (1983) (citing Griffin v. Breckenridge, 403 U.S. 88, 102-103, 91 S.Ct. 1790, 1798-1799, 29 L.Ed.2d 338, 348 (1971)).  Section 1985(3) does not create any substantive rights, but it allows individuals to enforce substantive rights against conspiring parties.  Farber v. City of Paterson, 440 F.3d 131, 134 (3d Cir. 2006).

The United States Supreme Court has made clear that section 1985(3) does not provide a cause of action for "all tortious, conspiratorial interferences with the rights of others," or create "general federal tort law."  Farber, 440 F.3d at 135 (quoting Griffin, 403 U.S. at 101-102, 91 S.Ct. at 1798, 29 L.Ed.2d at 348).  Instead, plaintiffs must allege "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action" in order to state a claim.  Griffin, 403 U.S. at 102, 91 S.Ct. at 1798, 29 L.Ed.2d at 348.

The United States Court of Appeals for the Third Circuit identified two requirements to establish "class-based invidiously discriminatory animus": plaintiffs must allege (1) that the conspiracy was motivated by discriminatory animus against an identifiable class and (2) that the discrimination against the identifiable class was invidious.  Farber, 440 F.3d at 135.

-129-

In order to make out the first prong, the class needs to have an "independent identifiable existence" to a reasonable person that is readily distinguishable by an objective criterion or set of criteria clearly indicating who is a member of the group and who is not.  Id.  The second prong requires invidious discrimination against the identifiable class.  Discrimination based on race unquestionably qualifies as "invidious" for the purposes of section 1985(3).  Id. at 138.

*Count VIII*

Count VIII alleges that Dr. DeJong, Ms. Wertz, Ms. McGettigan, and Mr. Speedling conspired to deprive plaintiffs of equal protection of laws and due process based upon their racial and gender biases in order to get Mr. Dennis arrested.

Plaintiffs allege that although Dr. DeJong believed Mrs. Dennis when she informed him, during her November 24, 2008 interview, that she did not abuse B.D., he did not believe her when she informed him that Mr. Dennis also did not abuse B.D. Plaintiffs contend that there was no reasonable basis for Dr. DeJong to draw this conclusion, and plaintiffs contend that there is a "medical institutional bias" against men in child abuse investigations.[223]

---

[223]    Plaintiffs' Response to Delaware County Defendants' Motion to Dismiss, page 26.

(Footnote 223 continued):

-130-

Plaintiffs further allege that defendants did not seek to have Mrs. Dennis arrested because defendants held a racial and gender bias that she, as a white female, would not be the perpetrator of abuse by commission.  In support of establishing a racial bias, the Complaint alleges that Dr. DeJong described B.D. as "biracial" in a medical report dated November 24, 2008, which plaintiffs contend is not a medically relevant descriptive term.[224]

Plaintiffs allege that Ms. Wertz and Ms. McGettigan delegated their investigatory judgment regarding whether B.D.'s injuries were caused by abuse and the identity of the alleged perpetrator to Dr. DeJong and Mr. Speedling, and thereby adopted their biases.

Thus, plaintiffs contend that Mr. Dennis was denied equal protection of laws because he was treated differently than Mrs. Dennis, who is similarly situated in that both maintained

---

(Continuation of footnote 223):

As further evidence of the alleged medical institutional bias against men in child abuse investigations, the Complaint alleges that Dr. Christian made a joke during a conference in July of 2009, which Dr. DeJong attended, that the word "paramour" is defined as "boyfriend who abuses children."  Complaint, paragraph 486.

There are no allegations that Mr. Dennis was mentioned at this conference or that the criminal charges against him were the subject of the conference.  I conclude that this fact does not support the reasonable inference that any of defendants held a gender bias against Mr. Dennis, who, as B.D.'s father and a married man, is not a "boyfriend", or that defendants acted to deprive Mr. Dennis of his constitutional rights pursuant to this bias.  See Fowler, 578 F.3d at 210.

[224]    Complaint, paragraph 490.

their innocence of harming B.D., but only Mr. Dennis was implicated criminally.  See Murray v. Pittsburgh Board of Public Education, 919 F.Supp. 838, 847 (W.D.Pa. 1996).

The Complaint alleges that Mr. Dennis, a black male, was the target of defendants' investigation in order to break up the Dennis's marriage.  The Complaint also alleges that Mrs. Dennis was discriminated against because CYS refused to return B.D. to her during the dependency proceedings because she was in a "biracial" marriage.[225]

For the reasons discussed above, I conclude that Dr. DeJong and Mr. Speedling[226] are not state actors for the purpose of plaintiffs' section 1983 suit.  Therefore, I dismiss Count VIII against them in this respect.

I further conclude that the facts alleged in plaintiffs' Complaint fail to demonstrate a conspiracy or

---

[225]    Complaint, paragraph 516.

[226]    My above analysis that Dr. DeJong did not act under color of state law applies to Mr. Speedling as well.  However, the Complaint alleges even fewer reasons supporting the conclusion that Mr. Speedling is a state actor than it did for Dr. DeJong.

Specifically, the Complaint alleges that Mr. Speedling has been a member of the CARE team at duPont Hospital as a social worker for the past four years.  Plaintiffs allege that Mr. Speedling's role in investigating allegations of child abuse, primarily by interviewing parents at duPont Hospital, transforms his private action as a social worker at a private hospital into state action.

As described above, plaintiffs have not alleged that Mr. Speedling's professional decisions in his capacity as a duPont Hospital social worker were dictated or guided by the state, or that the state controlled his professional conduct when he reported his concerns of child abuse to CYS and the Chester County Police Department.  Groman, 47 F.3d at 642.  Accordingly, I conclude that Mr. Speedling is not a state actor for section 1983 purposes.

agreement to violate plaintiffs' due process or equal protection rights.  The Complaint alleges one phone call by Mr. Speedling to the police, one phone call by Dr. DeJong to Deputy District Attorney Galantino, and a handful of calls by Ms. McGettigan to the police inquiring why there was a delay in beginning a police investigation of B.D.'s possible abuse.

The Complaint also states that while B.D. was at duPont Hospital, Ms. McGettigan and Mr. Speedling were in communication with one another regarding the seriousness of B.D.'s injuries, Mr. Speedling's concern that the injuries were the result of abuse, and the lax police response.  The Complaint further alleges that Ms. McGettigan and Mr. Speedling agreed to enlist Dr. DeJong and Ms. Wertz to help contact the Chester County Police Department regarding a "pressing urgency" that there had been no police response as of November 26, 2008.[227]

Even assuming that the facts alleged demonstrate a conspiracy to get Mr. Dennis arrested,[228] the facts do not support

---

[227]   Complaint, paragraph 72.

[228]   Mr. Dennis contends that further evidence of the conspiracy to get Mr. Dennis arrested is that Ms. Giancristiforo allegedly attempted to cover-up their conspiracy.

Mr. Dennis contends that Deputy District Attorney Galantino coached Officer Collins to add an untrue statement, later denied by Dr. DeJong, in the affidavit of probable cause: "Dr. DeJong stated to this officer, that the head injuries to the child, occurred while the child was in the care of the father, Reginald Dennis."  Complaint, paragraphs 509 and 512. The Complaint appears to allege that Dr. DeJong did not make this statement, but rather that Deputy District Attorney Galantino coached Officer Collins to

(Footnote 228 continued):

-133-

that such action was motivated by a discriminatory animus.
Disregarding all legal conclusions as required by <u>Fowler</u>, <u>supra</u>,
I conclude that no facts are alleged which demonstrate any
agreement to harm Mr. Dennis, or that defendants were acting
improperly in their communications regarding B.D.'s welfare.

There is no evidence, beyond conclusory allegations,
that any of the defendants had racial or gender biases which
motivated their investigation in the allegations of child abuse.
The only fact pled in this regard is that Dr. DeJong described
B.D. as "biracial" in a medical report dated November 24, 2008.
Plaintiffs have alleged no facts supporting that defendants

---

(<u>Continuation of footnote 228</u>):

add this statement to ensure that Officer Collins could obtain an arrest
warrant.

Mr. Dennis additionally contends that Ms. Giancristiforo omitted
this statement in the affidavit of probable cause from her presentation to the
court at the December 11, 2008 hearing.  It is a reasonable inference that
Ms. Giancristiforo knew the statement was untrue, thereby spurring her to omit
it in her presentation to the court on December 11, 2008.  However, the
Complaint does not allege any facts supporting the reasonable inference that
Dr. DeJong, Ms. Wertz, Ms. McGettigan, or Mr. Speeling were involved in, or
were aware of, the addition of the untrue statement to the affidavit of
probable cause.

I agree with the contention of Mr. Dennis that Deputy District
Attorney Galantino would not receive prosecutorial immunity for the allegation
that he coached Officer Collins and instructed him to add an untrue sentence
in the affidavit of probable cause.  <u>Buckley v. Fitzsimmons</u>, 509 U.S. 259,
275-276, 113 S.Ct. 2606, 2617, 125 L.Ed.2d 209, 227-228 (1993).  However,
because I conclude that plaintiffs have not alleged sufficient facts to
demonstrate a conspiracy among Dr. DeJong, Ms. Wertz, Ms. McGettigan, and
Mr. Speeling pursuant to sections 1981, 1983, or 1985, this allegation is not
actionable under these claims.  Accordingly, the Complaint fails to allege
that these defendants conspired to harm Mr. Dennis or were acting improperly
or with any discriminatory animus in their communications.

Wertz, McGettigan, and Speedling held an intentional racial animus against Mr. Dennis.

Even drawing all reasonable inferences in favor of plaintiffs, as I must, the fact that Dr. DeJong used the term "biracial" in a medical report does not support the inference that Dr. DeJong, or any of defendants, acted in concert for the purpose of getting Mr. Dennis arrested because he is a black male.

Likewise, plaintiffs make the conclusory assertion that Dr. DeJong had a gender bias against males because he believed that Mr. Dennis was the perpetrator of abuse who inflicted B.D.'s injuries while Mrs. Dennis was merely the perpetrator of abuse by omission.  Plaintiffs contend that it is a reasonable inference that, absent any other explanation for Dr. DeJong's decision to disbelieve Mrs. Dennis when she stated that Mr. Dennis did not abuse B.D., Dr. DeJong's decision was motivated by gender bias.

However, I conclude that plaintiffs' proposed inference is not reasonable when the Complaint alleges that during Mrs. Dennis's interview with Dr. DeJong and Mr. Speedling, Mrs. Dennis explained that she initially attributed the red marks that she had seen on B.D. to Mr. Dennis.  Although Mrs. Dennis ultimately concluded that these marks did not implicate any wrongdoing by her husband, defendants were entitled to view her conclusion "skeptically."  See Croft, 103 F.3d at 1126-1127.  The

inference that Dr. DeJong disbelieved her because he had a gender bias is not reasonable in light of the circumstances, and does not give rise to a "plausible claim".  See Iqbal, __ U.S. at __, 129 S.Ct. at 1950-1951, 178 L.Ed.2d at 884-885.

Accordingly, I conclude that plaintiffs have failed to state a claim upon which relief can be granted, and I dismiss Count VIII of the Complaint.

Because I cannot conclude at this stage of the proceedings that allowing plaintiffs to amend the Complaint would be futile, I permit plaintiffs to re-plead Count VIII for the purpose of alleging with more specificity that defendants acted with an intentional discriminatory animus against Mr. and Mrs. Dennis.  I additionally permit plaintiffs to re-plead the section 1983 claim in Count VIII against Dr. DeJong and Mr. Speedling for the purpose of alleging facts showing that they acted under color of state law, pursuant to the standard identified above.

*Count XI*

Count XI alleges a conspiracy claim against Dr. DeJong, Dr. Christian, Dr. Boal, and Deputy District Attorney Galantino for violation of Mr. Dennis's[229] equal protection and due process rights pursuant to sections 1981, 1983, and 1985.  Mr. Dennis

---

[229]    Because Count XI appears to only pertain to the alleged violation of Mr. Dennis's civil rights in the context of his criminal prosecution and has not alleged that Mrs. Dennis suffered any injury, I dismiss Count XI to the extent plaintiffs' seek relief for Mrs. Dennis as well because Mrs. Dennis lacks standing.  See PA Prison Society, 622 F.3d at 228.

contends that defendants conspired to misrepresent the medical evidence concerning the age of B.D.'s subdural hematoma in order to date the cause of the injury to November 20, 2008, when Mr. Dennis was alone with B.D. changing B.D.'s diaper.

Following the dismissal of the dependency petition by the Delaware County Court of Common Pleas, Mr. Dennis moved to dismiss the criminal charges pending against him pursuant to the doctrine of collateral estoppel.

Deputy District Attorney Galantino represented to the court that he could retain additional medical experts who would substantiate the criminal charges against Mr. Dennis. Mr. Dennis alleges that Deputy District Attorney Galantino conspired with Dr. DeJong, and two additional doctors he retained, Dr. Christian and Dr. Boal, to proceed with the criminal prosecution of Mr. Dennis and to force Mr. Dennis to plead guilty. Mr. Dennis contends that the motive for the conspiracy was to use a guilty plea from Mr. Dennis to validate the hypothesis of shaken baby syndrome.

As an initial matter, <u>Gilles</u> bars section 1983 claims to "avoid parallel litigation of probable cause and guilt" in cases where a defendant has entered into an A.R.D. program. <u>Gilles</u>, 427 F.3d at 209. Mr. Dennis entered an A.R.D. program, which is not a "favorable termination" of his criminal

-137-

proceedings for section 1983 purposes pursuant to <u>Heck</u> and <u>Gilles</u>.

Because Mr. Dennis's section 1983 claim entails issues related to his guilt in the criminal proceedings (that is, whether Mr. Dennis abused B.D. on November 20, 2008), and because he entered an A.R.D. program, I conclude that Mr. Dennis's section 1983 claims for damages are barred as a matter of law. Accordingly, I dismiss Count XI in this respect with prejudice.[230]

I further conclude that the facts alleged do not state a prima facie claim for a section 1981 or section 1985 claim. Plaintiffs have alleged no facts demonstrating that Dr. Christian and Dr. Boal provided their medical opinions in preparation for Mr. Dennis's trial for discriminatory or improper purposes.

The Complaint provides no facts supporting a reasonable inference that Dr. DeJong, Dr. Christian, or Dr. Boal were involved in, or were aware of, Deputy District Attorney Galantino's alleged insertion of a false statement in Officer Collins' affidavit of probable cause, to the effect that B.D.'s injuries occurred while he was in the care of Mr. Dennis. Further, the Complaint alleges no facts supporting that a conspiracy existed, or that defendants were motivated by racial

---

[230] Because I dismiss plaintiff's section 1983 claim, I do not need to address defendants' arguments that they are entitled to absolute immunity regarding this claim.

or gender biases or any discriminatory animus, as required by sections 1981 and 1985(3).

Accordingly, I dismiss Count XI of the Complaint for failure to state a claim upon which relief can be granted. Because I cannot conclude at this stage of the proceedings that Mr. Dennis's claims should be dismissed with prejudice, I permit Mr. Dennis to re-plead his section 1981 and 1985(3) claims to more specifically allege that a conspiracy motivated by a discriminatory animus among Dr. DeJong, Dr. Christian, Dr. Boal, and Deputy District Attorney Galantino against Mr. Dennis existed.

### **Failure to Train**

Count X alleges that Ms. Germond, Ms. Wertz, Ms. McGettigan, Ms. Giancristiforo, and Delaware County denied plaintiffs due process by failing to properly train and supervise CYS employees about how:

> a.  Pennsylvania law and due process requires that a dependency petition be filed within 48 hours of an informal hearing, not 18 days;
>
> b.  Pennsylvania law and due process requires that a dependency hearing be held within 10 days after the dependency petition, not more than four months;
>
> c.  the normal legal due process requires the filing of a petition for protective custody with the court and affords the parents the opportunity to be heard before a child is taken into protective custody, as should have been done in the case with B.D. where CYS had more than two

weeks to file a petition and schedule a hearing
that [Mr. and Mrs. Dennis] could attend;

d.  due process requires that ex parte communi-
cations and requests should not be the routine
procedure but should only be made in an emergency;

e.  CYS has a duty of candor to the court
regarding its knowledge of the facts in ex-parte
communications and that CYS' misrepresentations
that [Mrs. Dennis's] parents were not available to
care for B.D. violated that duty of candor and due
process;

f.  CYS has a duty of candor to the court
regarding its knowledge of the law, and that CYS'
ex-parte misrepresentations to the court that a
full resource home study was required before CYS
could recommend placement with Bob and Linda
Stevenson when Pennsylvania law provides a
temporary approval procedure violated that duty of
candor and due process;

g.  a bias in a particular investigation that
fathers or boyfriends are more likely to
perpetrate abuse is a violation of equal
protection under the law;

h.  in the absence of any external signs of
trauma, making a legal presumption that shifts
the burden of proof to the parents to provide a
nonaccidental "explanation" for a SDH is a
violation of due process; and

i.  refusing to increase visitation between a
parent and a child because the parent is
maintaining her innocence and telling the truth
violates the parent's constitutional rights.[231]

The Delaware County defendants in their motion to

dismiss construed Count X as a <u>Monell</u> claim against Delaware

County.  Upon review of plaintiffs' memorandum of law in

---

[231]     Complaint, paragraph 541.

response, it is clear that although the Complaint names CYS employees individually, Count X is against Delaware County.[232]

A prima facie claim for failure to train requires plaintiffs to plead a "pattern of similar constitutional violations by untrained employees" which "demonstrate[s] deliberate indifference" to the rights of persons with whom the untrained employees come into contact. Connick, __ U.S. at __, 131 S.Ct. at 1360, 179 L.Ed.2d at 427. Plaintiffs "must identify a failure to provide specific training that has a causal nexus with their injuries...." Reitz v. County of Bucks, 125 F.3d 139, 145 (3d Cir. 1997).

The United States Supreme Court defines deliberate indifference as follows:

> [D]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. Thus, when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program. The city's policy of inaction in light of notice that its program will cause constitutional violations is the functional equivalent of a decision by the city itself to violate the Constitution.

---

[232]  To the extent that the Fourteenth Amendment claim in Count X is also alleged against Ms. Germond, Ms. Wertz, Ms. McGettigan, Ms. Giancris-tiforo, I dismiss this aspect of Count X with prejudice because plaintiffs' have cited no authority, and I am aware of none, that a failure-to-train claim can be brought against defendants in their individual capacities. See Connick, __ U.S. at __, 131 S.Ct. at 1360, 179 L.Ed.2d at 427.

<u>Connick</u>, __ U.S. at __, 131 S.Ct. at 1360, 179 L.Ed.2d at 427 (internal quotations and citations omitted).

Regarding all nine of the above allegations of failure train, plaintiffs have not pled a pattern of constitutional violations by untrained employees or that Delaware County or its employees acted with the requisite deliberate indifference.

In limited situations, the United States Supreme Court has recognized that a single incident can give rise to municipal liability for failure to train. <u>Connick</u>, __ U.S. at __, 131 S.Ct. at 1360-1361, 179 L.Ed.2d at 428.

In order to avoid "collapse into *respondeat superior*", merely alleging that a single injury "could have been avoided if an employee had had better or more training" is insufficient to state a cause of action. <u>Connick</u>, __ U.S. at __, 131 S.Ct. at 1363-1365, 179 L.Ed.2d at 431-432 (internal brackets omitted). Instead, plaintiffs must show that the need for the county to provide specific training in order to avoid constitutional injury was "highly predictable" or "patently obvious". <u>Connick</u>, __ U.S. at __, 131 S.Ct. at 1360, 179 L.Ed.2d at 427; <u>Board of the County Commissioners of Bryan County, Oklahoma v. Brown</u>, 520 U.S. 397, 409, 117 S.Ct. 1382, 1391, 137 L.Ed.2d 626, 643 (1997).

The United States Supreme Court provided a hypothetical example regarding when single-incident liability could attach.

City of Canton v. Harris, 498 U.S. 378, 390 n.10, 109 S.Ct. 1197, 1205 n.10, 103 L.Ed.2d 412, 428 n.10 (1989); see also Connick, __ U.S. at __, 131 S.Ct. at 1361, 179 L.Ed.2d at 428.  The Supreme Court explained that if a city armed its police officers with firearms, and deployed those police officers into the public to capture fleeing felons, the need to instruct the officers on the constitutional limitation on using deadly force in apprehending fleeing felons would be patently obvious.  City of Canton, 498 U.S. at 390 n.10, 109 S.Ct. at 1205 n.10, 103 L.Ed.2d at 428 n.10.  If an untrained police officer violated a citizen's constitutional rights in using deadly force, this would be a "highly predictable consequence" of the city's failure to train.  Id.

Plaintiffs' have not pled any facts supporting the inference that any of the nine allegations above were constitutional injuries which were highly predictable or patently obvious.  Accordingly, I dismiss Count X without prejudice, and I permit plaintiffs to re-plead their failure to train claims consistent with the above-identified standard.

### State-law Civil Conspiracy

Count XVII alleges a claim against Dr. DeJong, Ms. Wertz, Ms. McGettigan, and Mr. Speedling for state-law civil conspiracy.  In Pennsylvania, to state a cause of action for civil conspiracy, the following elements are required: (1) a

combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage.[233]  General Refractories Company v. Fireman's Fund Insurance Company, 337 F.3d 297, 313 (3d Cir. 2003); see Strickland v. University of Scranton, 700 A.2d 979, 987-988 (Pa.Super. 1997).

Proof of malice or an intent to injure is essential to the proof of a conspiracy.  Strickland, 700 A.2d at 988.

---

[233]    The parties agree that Pennsylvania law, instead of Delaware law, applies.

A federal court must apply the choice of law rules for the forum state.  Shuder v. McDonald's Corporation, 859 F.2d 266 (3d Cir. 1988). Accordingly, applying Pennsylvania choice of law rules, Pennsylvania "has created a rule that takes into account the nature of the conflict between the laws, the interests of the states in having their laws applied, and the significance of the contacts between the state and the controversy." Ramey v. Wal-Mart, Inc., 967 F.Supp. 843, 844 (E.D.Pa. 1997); see also Cipolla v. Shaposka, 439 Pa. 563, 267 A.2d 854, 856 (Pa. 1970).

Pennsylvania courts apply the law of the forum with the "'most interest in the problem,' rather than the law of the place of injury." Hammersmith v. TIG Insurance Company, 480 F.3d 220, 227 (3d Cir. 2007)(quoting Griffith v. United Air Lines Inc., 416 Pa. 1, 203 A.2d 796 (Pa. 1964)).

"First, the court must look to see whether a false conflict exists.  Then, if there is no false conflict, the court determines which state has the greater interest in the application of its law."  LeJeune v. Bliss-Salem, Inc., 85 F.3d 1069 (3d Cir. 1996).  A false conflict exists when (1) there is no relevant differences between the laws of the two states or (2) only one jurisdiction's governmental interests would be impaired by the application of the other jurisdiction's laws.  Hammersmith, 480 F.3d at 229-230; see also Lacey v. Cessna Aircraft Company, 932 F.2d 170, 187 & n.15 (3d Cir. 1991).  A true conflict exists where the "governmental interests of both jurisdictions would be impaired if their law were not applied...." Hammersmith, 480 F.3d at 230 (internal quotations omitted).

The Nemours defendants contend that civil conspiracy and intentional infliction of emotional distress do not present a conflict because the laws are not different.  Hammersmith, 480 F.3d at 229-230; see also Lacey, 932 F.2d at 187 & n.15.  I agree with defendants' conclusion that any distinctions between the laws of the two states create a "false conflict", and, accordingly, I apply Pennsylvania law.

-144-

Moreover, a claim for civil conspiracy cannot be pled without also alleging an underlying tort.  McGreevy, 413 F.3d at 371.

Plaintiffs allege that Dr. DeJong, Ms. Wertz, Ms. McGettigan, and Mr. Speedling conspired to get Mr. Dennis arrested, and that two overt acts were committed in furtherance of the conspiracy: (1) their personal communications with each other; and (2) their agreement to make multiple phone calls to the Chester County Police Department and Deputy District Attorney Galantino.

Plaintiffs contend that the motive for the conspiracy was that Mr. Dennis had exercised his Fifth Amendment right to an attorney by retaining counsel.  Although it is not particularly alleged, it appears that the underlying tort is intentional infliction of emotional distress.[234]

The Complaint further alleges that the named defendants conspired to misrepresent to law enforcement officials both the medical evidence and the statements made by Mrs. Dennis to CYS and medical staff at duPont Hospital.

Consistent with the discussion of the facts alleged above, the few phone calls alleged in the Complaint do not evidence either a common purpose to do an unlawful act, or that defendants acted with an unlawful purpose.  At most, the Complaint alleges a common purpose to ensure that a police

---

[234]    Plaintiffs' Response to Delaware County Defendants' Motion to Dismiss, pages 45 and 46.

*investigation* was commenced regarding defendants' suspicions of child abuse. Further, the Complaint has not alleged facts that any defendant acted with malice or an intent to injure in the making of these phone calls.

With respect to Ms. Wertz, the Complaint alleges no facts regarding her involvement in this alleged conspiracy. The Complaint does not allege that Ms. Wertz made any phone calls or had any communication with the other named defendants regarding the arrest of Mr. Dennis.

Further, the Complaint alleges that Dr. DeJong, alone, affirmatively stated to Deputy District Attorney Galantino that he believed Mr. Dennis should be arrested because of his suspicions of child abuse – which is not a common purpose attributed to the other defendants by the facts alleged in the Complaint. While the Complaint alleges that Dr. DeJong misrepresented the medical evidence and Mrs. Dennis's statements to the police in order to get Mr. Dennis arrested, the Complaint does not allege that any of the other named defendants knew about these misrepresentations or participated in them regarding instigating Mr. Dennis's arrest. Accordingly, I dismiss Count XVII for failure to state a claim upon which relief can be granted.

I dismiss Count XVII with prejudice against defendants Wertz and McGettigan because I conclude that they are entitled to

immunity pursuant to 23 Pa.C.S.A. § 6318.  Section 6318 provides immunity from civil liability for "any official or employee of a county agency who refers a report of suspected abuse to law enforcement authorities or provides services under [the Child Protective Services Law]".  23 Pa.C.S.A. § 6318(a).

Further, persons in compliance with section 6318 are additionally immune from their activities relating to "cooperating with an investigation" and from "testifying in a proceeding arising out of an instance of suspected child abuse".  23 Pa.C.S.A. § 6318(a).

CYS employees are entitled to a presumption of good faith in their activities, which must be judged pursuant to an objective standard rather than by alleged motives or allegations of maliciousness.  23 Pa.C.S.A. § 6318(b); Jones v. Snyder, 714 A.2d 453 (Pa.Super. 1998).

The Complaint does not allege any facts to rebut the statutory presumption that Ms. Wertz and Ms. McGettigan participated in "good faith in the making of a report...[or] cooperating with an investigation...in a proceeding arising out of an instance of suspected child abuse".  23 Pa.C.S.A. § 6318(a).  Instead, ample medical evidence suggested that abuse was present, and the Complaint alleges no facts indicating that Ms. Wertz or Ms. McGettigan knew that Dr. DeJong allegedly

misrepresented the medical evidence and Mrs. Dennis's statements to the police at the time of Mr. Dennis's arrest.[235]

I further dismiss Count XVIII against Mr. Speedling with prejudice because he is entitled to immunity pursuant to 16 Del.C. §§ 903, 904 and 908.[236]   Delaware law provides immunity from civil liability to anyone participating in good faith in making a report of child abuse to the appropriate child protection agency.   16. Del.C. § 908; see also Hedrick v. Quest Diagnostics Clinical Laboratories, Inc., 807 A.2d 584, 585 (Del.Super. 2002).   Good faith is presumed absent evidence of malice or willful misconduct.   16. Del.C. § 902.

The Complaint fails to identify any facts that Mr. Speedling acted with malice or willful misconduct in contacting CYS or the police regarding his suspicions of child

---

[235]   Because I have concluded that the Delaware County defendants are entitled to state-law immunity for their compliance with 23 Pa.C.S.A. § 6318, I do not consider these defendants' additional arguments that they are entitled to state statutory immunity pursuant to the Pennsylvania Political Subdivision Tort Claims Act, 42 Pa.C.S.A. §§ 8541-8564.

[236]   Defendants contend that because duPont Hospital is located in Delaware, B.D.'s care took place in Delaware, and Delaware law requires medical care providers to report suspicions of child abuse, Delaware law regarding mandatory reporting should apply.   Plaintiffs appear to concede that Delaware law applies to this issue.   Accordingly, I apply Delaware law regarding immunity for reporting child abuse.

I note that Pennsylvania law differs from Delaware law in its reporting procedure because it requires mandated reporters, including doctors and social workers, to make a report to the child services agency by telephone and then to make a subsequent report in writing within forty-eight hours to the child services agency.   23 Pa.C.S.A. § 6313.   There is no evidence that Mr. Speedling made such oral and written reports.   Accordingly, if Pennsylvania law were applied, Mr. Speedling would not have been in compliance with the reporting procedures.

abuse.[237]  Accordingly, I conclude that Mr. Speedling is immune
from suit for his actions relating to discussing his concerns
that Mr. Dennis abused B.D. with Ms. McGettigan and the police.

Finally, I dismiss Count XVIII against Dr. DeJong with
prejudice because civil conspiracy requires the "combination of
two or more persons", and the facts alleged only support the
inference that Dr. DeJong alone misrepresented the medical
evidence and Mrs. Dennis's statements for the purpose of getting
Mr. Dennis arrested.  General Refractories Company,
337 F.3d at 313.  Because the other named defendants cannot be
co-conspirators for the reasons discussed above, I conclude that
permitting plaintiffs leave to re-plead would be futile.  See
Alston, 363 F.3d at 235-236.

### Intentional Infliction of Emotional Distress

Count XIX alleges a pendant Pennsylvania state-law
claim for intentional infliction of emotional distress against
Dr. DeJong, Ms. Wertz, Ms. McGettigan, and Mr. Speedling.
Plaintiffs contend that defendants accelerated their efforts to
get Mr. Dennis arrested in retaliation for his retention of a
lawyer on November 26, 2008.  Further, plaintiffs contend that

---

[237]    16 Del.C. § 904 requires the report of child abuse to be made to
the Department of Services for Children, Youth and Their Families.  Although,
in addition to contacting CYS, Mr. Speedling contacted the police, courts have
applied the statutory immunity even where the reporters have failed to report
to the precise organization identified in the statute.  See Myers v. Medical
Center of Delaware, Inc., 86 F.Supp.2d 389, 411-412 (D.Del. 2000); Hedrick,
807 A.2d at 585.

Dr. DeJong intentionally misrepresented the medical evidence to Officer Collins, including that B.D. could not breathe on his own, and misrepresented his interview with Mrs. Dennis for the purpose of getting Mr. Dennis arrested.

Under Pennsylvania law, which follows the standard set forth in the Restatement (Second) of Torts, § 46, a tort of intentional infliction of emotional distress lies where a person, whose acts constitute extreme or outrageous conduct, intentionally inflicts severe emotional distress on another person.  Hunger v. Grand Central Sanitation, 447 Pa.Super. 575, 583-584, 670 A.2d 173, 177 (Pa.Super. 1996).

Conduct is considered "extreme or outrageous" where the conduct goes "beyond all possible bounds of decency, and [is] regarded as atrocious, and utterly intolerable in a civilized community."  Hunger, 447 Pa.Super. at 584, 670 A.2d at 177 (quoting Restatement (Second) of Torts, § 46 comment (d)); see also Kazatsky v. King David Memorial Park, Inc., 515 Pa. 183, 191, 527 A.2d 988, 991 (Pa. 1987).  Plaintiffs who claim that they suffered emotional distress must substantiate these claims with competent medical evidence.  Hunger, 447 Pa.Super. at 584-585, 670 A.2d at 177-178.

The Complaint alleges that Ms. McGettigan informed Mr. Speedling on November 26, 2008 that Mr. Dennis retained a lawyer, and that Mr. Speedling noted that this was an

"investigative glitch".[238]   However, even viewing this allegation
in the light most favorable to plaintiffs, the Complaint does not
allege sufficient facts to sustain the conclusion that any of
defendants contacted the Chester County Police Department or
Deputy District Attorney Galantino in retaliation for
Mr. Dennis's retention of an attorney.   Such a conclusion is
speculative and does not give rise to a plausible claim for
relief.   Fowler, 578 F.3d at 211.

        Further, the allegations in the Complaint that
defendants contacted these officials based upon their suspicions
of child abuse, does not allege any extreme or outrageous
behavior.   In addition, I conclude that Ms. Wertz,
Ms. McGettigan, and Mr. Speedling, are entitled to the state-
statutory immunities discussed above.   Therefore, I dismiss
Count XIX with prejudice regarding these defendants.

        Regarding Dr. DeJong, plaintiffs have cited no
authority supporting their contention that misrepresenting to a
police officer medical evidence and an interview for the purpose
of ensuring an individual's arrest, constitutes extreme or
outrageous behavior.   However, I cannot conclude at this stage of
the proceedings that the allegations against Dr. DeJong do not
rise to this level.

---

[238]     Complaint, paragraphs 72 and 668.

It is clear that liability does not extend "'to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.'" <u>Kazatsky</u>, 515 Pa. at 191, 527 A.2d at 991. (quoting Restatement (Second) of Torts, § 46 comment (d)). Dr. DeJong's alleged misrepresentations to Officer Collins go beyond these trivialities because they falsely assert that B.D. had a skull fracture and could not breathe on his own when he was admitted to duPont Hospital, allegedly for the purpose of securing Mr. Dennis's arrest.

However, I dismiss Count XIX with respect to Dr. DeJong because plaintiffs have not alleged facts regarding "expert medical confirmation that [plaintiffs] actually suffered the claimed distress." <u>Kazatsky</u>, 515 Pa. at 197, 527 A.2d at 995. Plaintiffs merely contend that they suffered depression and anxiety, without alleging expert medical confirmation for these facts.[239]  Therefore, I dismiss Count XIX without prejudice, and permitting plaintiffs to re-plead with more specificity competent medical evidence that Dr. DeJong's conduct caused them emotional distress.

## **<u>Negligence</u>**

Count XIV alleges a pendant Pennsylvania state-law negligence claim against The Nemours Foundation for negligently retaining Dr. DeJong as the medical director in charge of child

---

[239]    Complaint, paragraph 675.

abuse investigations at duPont Hospital.  The Complaint alleges
that The Nemours Foundation knew or should have known of
Dr. DeJong's alleged pattern and practice of deliberately
misrepresenting medical evidence and statements made in
interviews as supporting allegations of child abuse.

     The Nemours Defendants move to dismiss because they
allege that Delaware law applies to this claim, and that,
contrary to Pennsylvania law, Delaware law has not recognized
corporate liability against a hospital for negligently retaining
a medical director or an attending physician.  The Nemours
Defendants argue that Delaware law applies because Delaware has
more of an interest with respect to the liability of a Delaware
hospital for retaining a Delaware physician.  See Troxel v. A.I.
DuPont Institute, 19 Pa. D. & C.4th 423 (C.P. Delaware 1993)
(Hazel, J.).

     Plaintiffs fail to address any of defendants' arguments
on this issue in their memorandum of law.  Pursuant to Rule
7.1(c) of the Rules of Civil Procedure of the United States
District Court for the Eastern District of Pennsylvania, failing
to address substantive matters raised in a motion may result in
the unaddressed issue being granted as uncontested.

     Because plaintiffs do not provide any legal authority
or analysis to contest dismissal based on the grounds argued by

defendants, I grant the motion to dismiss Count XIV as unopposed, with prejudice.  See <u>Toth</u>, 215 F.Supp.2d at 598.

Count XV alleges a negligence claim against Dr. Doe, an unidentified doctor who, on November 24, 2008, allegedly performed a negligent operation on B.D. while he was at duPont Hospital.  Dr. Doe remains unidentified, and has not appeared in this action.  None of defendants have moved to dismiss Count XV, nor do they have standing to make such motion.

However, because I am allowing plaintiffs to file an amended complaint, I will allow plaintiffs to re-plead in order to identify Dr. Doe.  Courts have held that the interests of justice require that plaintiffs be provided with the opportunity to determine the true identity of an unnamed defendant where discovery is likely to reveal the identity of the correct defendant.  <u>Penalbert-Rosa v. Fortuno-Burset</u>, 631 F.3d 592, 596-597 (1st Cir. 2011); <u>Galarza v. Szalczyk</u>, 2011 U.S.Dist. LEXIS 29942, at *5-6 (E.D.Pa. Mar. 21, 2011)(Perkin, M.J.); <u>Warner Bros. Records Inc. v. Does 1-6</u>, 527 F.Supp.2d 1, 2-3 (D.D.C. 2007).  Upon request, plaintiffs may be permitted to conduct limited expedited discovery in order to determine Dr. Doe's identity.  See <u>Galarza</u>, 2011 U.S.Dist. LEXIS 29942, at *9-10.

## **Malicious Prosecution**

Count XVI alleges a pendant Pennsylvania state-law claim for malicious prosecution against Ms. Germond, Ms. Wertz, Ms. McGettigan, and Ms. Giancristiforo alleging that they had no reasonable basis to file or proceed with the dependency proceedings, especially after Mrs. Dennis received positive reports from both a CYS parent educator and a CYS psychologist.

In order to sustain a claim for malicious prosecution under Pennsylvania law, Mr. Dennis must demonstrate that (1) defendants instituted criminal proceedings; (2) without probable cause; (3) with malice; and (4) that the proceedings were terminated in favor of plaintiff. Strickland, 700 A.2d at 984. Probable cause is defined as "a reasonable ground of suspicion supported by circumstances sufficient to warrant an ordinary prudent man in the same situation in believing that a party is guilty of the offense." Id. (internal quotations omitted).

Dependency proceedings are not considered to be criminal proceedings under Pennsylvania law. C.S. v. Department of Public Welfare, 972 A.2d 1254, 1262 (Pa.Commw. 2009). Further, plaintiffs have cited no authority that a malicious prosecution claim can be maintained in the context of a dependency proceeding, and I am aware of none. See Miller v. City of Philadelphia, 1997 WL 476352, at *5 (E.D.Pa. Aug. 19,

-155-

1997) (Yohn, J.).  Accordingly, I dismiss Count XVI with prejudice for failure to state a claim upon which relief can be granted.

Count XVII alleges a pendant Pennsylvania state-law malicious prosecution claim against Deputy District Attorney Galantino.  It alleges that following the dismissal of the dependency petition by the Delaware County Court of Common Pleas on August 21, 2009, there was no reasonable basis to continue the criminal prosecution against Mr. Dennis.[240]

Under Pennsylvania law, entrance into the A.R.D. program is not considered a termination in favor of plaintiff for the purposes of a malicious prosecution claim.  Junod v. Bader, 312 Pa.Super. 92, 97, 458 A.2d 251, 254 (Pa.Super. 1983); see also Haefner v. Burkey, 534 Pa. 62, 626 A.2d 519 (Pa. 1993).

Thus, because Mr. Dennis cannot establish that the proceedings were terminated in his favor, he cannot satisfy the fourth element of a malicious prosecution claim against Deputy District Attorney Galantino.  Accordingly, I conclude that Mr. Dennis has failed to state a claim upon which relief can be granted, and I dismiss with prejudice Count XVII of the Complaint.

---

[240]     Because Count XVII appears to only pertain to the alleged violation of Mr. Dennis's rights in the context of his criminal prosecution and has not alleged that Mrs. Dennis suffered any injury, I dismiss Count XVII to the extent plaintiffs' seek relief for Mrs. Dennis as well because I conclude that Mrs. Dennis lacks standing.  See PA Prison Society, 622 F.3d at 228.

## CONCLUSION

For all the forgoing reasons, I grant in part and deny in part the motion to dismiss filed by defendants Germond, Wertz, Prodoehl, McGettigan, Giancristiforo, and Delaware County.  I grant the four additional motions to dismiss filed by the remaining defendants.

I dismiss certain claims from plaintiffs' Complaint with prejudice, and I dismiss certain other claims without prejudice to file a more specific amended Complaint, as enumerated in the within Order and Opinion.

Finally, I deny defendants' motions to strike the Complaint.[241]

As a result of the forgoing rulings, the following claims remain in plaintiffs' Complaint and may be included in the amended complaint authorized by the within Order and Opinion without change:

> Count II: plaintiffs' Fourteenth Amendment substantive and procedural due process claims against defendant Delaware County;
>
> Count III: plaintiffs' Fourteenth Amendment procedural due process claim against defendants Germond and Delaware County;

---

[241]   Defendants Dr. DeJong, Nemours Foundation, Mr. Speedling, District Attorney Green, and Deputy District Attorney Galantino, in addition to their motions to dismiss, bring motions to strike the Complaint pursuant to Federal Rule of Civil Procedure 8(a)(2).  I deny these defendants' motions to strike the Complaint, together with the motion to strike the Complaint filed on behalf of defendants Germond, Wertz, Prodoehl, McGettigan, Giancristiforo, and Delaware County.

Count IV: plaintiffs' Fourteenth Amendment procedural due process claim against defendant McGettigan;

Count V: plaintiffs' Fourteenth Amendment substantive due process claim against defendant Delaware County.