IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

REGINALD DENNIS,                          )
RENEE DENNIS and                          )
B.D., a minor,                            )
                                          )
            Plaintiffs                    )
                                          )      Civil Action
        vs.                               )      No. 10-cv-06789
                                          )
                                          )
ALLAN R. DEJONG, M.D.;                    )
COUNTY OF DELAWARE;                       )
MARY GERMOND;                             )
META WERTZ;                               )
BETH PRODOEHL;                            )
PATRICIA MCGETTIGAN;                      )
GINA GIANCRISTIFORO; and                  )
DR. DOE,                                  )
                                          )
            Defendants                    )

                          *    *    *

APPEARANCES:

        MARK D. FREEMAN, ESQUIRE
            On behalf of Plaintiffs

        SARA PETROSKY, ESQUIRE
            On behalf of Defendants Allan R. DeJong, M.D.

        SUZANNE MCDONOUGH, ESQUIRE
            On behalf of Defendants County of Delaware, Mary
            Germond, Meta Wertz, Beth Prodoehl, Patricia
            McGettigan and Gina Giancristiforo

                          *    *    *

                      O P I N I O N

JAMES KNOLL GARDNER,
United States District Judge

        This matter is before the court on three motions for

summary judgment.

On December 16, 2012 plaintiffs filed their Notice of Motion, seeking partial summary judgment. On December 17, 2012 Defendants County of Delaware, Mary Germond, Meta Wertz, Beth Prodoehl, Patricia McGettigan and Gina Giancristiforo's Motion for Summary Judgment was filed.[1] Also on December 17, 2012 the Motion of Defendant, Allan R. Dejong, M.D., to Dismiss Plaintiffs' Amended Complaint Pursuant to Federal Rule of Civil Procedure 56 with Supporting Memorandum, in the nature of a motion for summary judgment, was filed.

SUMMARY OF DECISION

With plaintiffs' consent, Counts I, VI and VII against defendant County of Delaware, and Count IX against defendant Dr. Doe, are dismissed from plaintiffs' Amended Complaint, with prejudice.

For the following reasons, I grant the motion for summary judgment of the Delaware County defendants and the motion for summary judgment of Dr. DeJong, concerning the remaining Counts in plaintiffs' Amended Complaint: Counts II-A, II-B, III, IV, V, VII (against defendant Dr. DeJong), VIII and X. In addition, I deny plaintiffs' motion for partial summary judgment.

Specifically, I conclude that in each of the counts asserted against the Delaware County defendants, plaintiffs have failed to establish that Delaware County violated plaintiffs'

---

[1]    I refer to this group of defendants collectively as the "Delaware County defendants".

substantive or procedural due process rights pursuant to an official custom or policy. Moreover, I conclude that plaintiffs' claims against the individual Delaware County defendants are barred by absolute or qualified immunity.

Furthermore, I conclude that defendant DeJong is entitled to summary judgment because plaintiffs have failed to establish that Dr. DeJong acted under the color of state law as required to pursue a claim pursuant to 42 U.S.C. § 1983. Moreover, plaintiffs have failed to establish that Dr. DeJong conducted himself in a manner that was extreme and outrageous or shocked the conscience.

Accordingly, plaintiffs' cross-motion for partial summary judgment is denied.

## JURISDICTION

Jurisdiction in this case is based on federal question jurisdiction pursuant to 28 U.S.C. § 1331. This court has supplemental jurisdiction over plaintiffs' pendent state-law claims. See 28 U.S.C. § 1367.

## VENUE

Venue is proper pursuant to 28 U.S.C. § 1391(b) because the events giving rise to plaintiff's claims allegedly occurred within Delaware County, Pennsylvania, which is located within this judicial district.

<u>PROCEDURAL HISTORY</u>

This case arises out of a child abuse investigation which resulted in plaintiffs Reginald and Renee Dennis temporarily losing custody of their infant son, B.D.  Mr. Dennis was separated from his son for over one year, and Mrs. Dennis was separated from her son for nine months.

On November 19, 2010 plaintiffs filed their initial Complaint, which asserted 19 Counts against sixteen defendants[2] Fifteen of those defendants formed five groups of defendants, and each group filed a motion to dismiss.  The sixteenth defendant, whose name is unknown and who is identified as "Dr. Doe", did not file a motion to dismiss the Complaint.

By Order and Opinion dated and filed September 30, 2011 the motion to dismiss filed by the Delaware County defendants was granted in part and denied in part.  The other four motions to dismiss were granted.  Pursuant to the September 30, 2011 Opinion, certain counts were dismissed with prejudice, and certain counts were dismissed without prejudice for plaintiff to file a more specific amended complaint.[3]

---

[2]    The defendants in the initial Complaint were Allan R. DeJong, M.D.; Nemours Foundation; Mary Germond; Meta Wertz; Beth Prodoehl; Patricia McGettigan; Gina Giancristiforo; Edward Speedling; Cindy W. Christian, M.D.; Pennsylvania State University Hershey Medical School; Daniell B. Boal, M.D.; Kathleen D. Eggli, M.D.; G. Michael Green; Michael R. Galantino; Dr. Doe; and the County of Delaware.

[3]    <u>See</u> September 30, 2011 Order

As a result of the September 30, 2011 Order and Opinion, the following claims remained in plaintiffs' original Complaint and were permitted to be included in the amended complaint without change as authorized by the September 30, 2011 Order and Opinion:

> Count II: plaintiffs' Fourteenth Amendment substantive and procedural due process claims against defendant Delaware County;
>
> Count III: plaintiffs' Fourteenth Amendment procedural due process claim against defendants Germond and Delaware County;
>
> Count IV: plaintiffs' Fourteenth Amendment procedural due process claim against defendant McGettigan; and
>
> Count V: plaintiffs' Fourteenth Amendment substantive due process claim against defendant Delaware County.

The following claims were dismissed from plaintiffs' original Complaint without prejudice for plaintiffs to file an amended complaint in accordance with the September 30, 2011 Order and Opinion:

> Count I: plaintiffs' Fourteenth Amendment substantive and procedural due process claims against defendant Delaware County for deputizing an employee of Delaware County Children and Youth Services to act as a deputy clerk of court for all dependency matters in place of the county's Office of Judicial Support;
>
> Count II: plaintiffs' Fourteenth Amendment substantive and procedural due process claims against CYS employees, defendants Wertz, McGettigan, and Giancristiforo, for an alleged

delay in filing an ex parte memorandum with the
court concerning termination of plaintiff parents'
parental rights;

Count IV: plaintiffs' Fourteenth Amendment
procedural due process claim against defendant
Delaware County for the alleged policy of delaying
the scheduling of dependency hearings;

Count VI: plaintiffs' Fourteenth Amendment
substantive due process claim against defendant
Delaware County for CYS's reliance on defendant
Dr. DeJong's investigations, reports and
testimony;

Count VII: plaintiffs' Fourteenth Amendment
substantive due process claim against defendant
Dr. DeJong for multiple misrepresentations of
medical findings to support false accusations of
child abuse and related actions;

Count VIII: plaintiffs' claims pursuant to
42 U.S.C. §§ 1981, 1983, 1985 against defendants
Dr. DeJong, Wertz, McGettigan and Speedling for
conspiring to deprive plaintiffs of their equal
protection and due process rights based on gender
bias and racial animus in their entirety;

Count IX: plaintiffs' Fourteenth Amendment
procedural due process claim against defendants
Dr. DeJong, Germond, Wertz, McGettigan,
Giancristiforo, and Delaware County for adopting
the medical presumption that a subdural hematoma
is caused by abuse as a legal presumption in
dependency and criminal cases;

Count X:  plaintiffs' Fourteenth Amendment
substantive and procedural due process claims
against defendant Delaware County for failing to
properly train CYS workers, supervisors and
administrators about dependency proceedings;

Count XI: plaintiffs' claims pursuant to 42 U.S.C.
§§ 1981 and 1985 against defendants Dr. DeJong,
Dr. Christian, Dr. Boal and Deputy District
Attorney Galantino for conspiring to misrepresent

medical evidence concerning the age of B.D.'s subdural hematoma to deprive Mr. Dennis of his equal protection and due process rights;

Count XV: plaintiffs' Pennsylvania state-law negligence claim against defendant Dr. Doe in its entirety; and

Count XIX: plaintiffs' Pennsylvania state-law claim against defendant Dr. DeJong for intentional infliction of emotional distress.

On December 16, 2011 plaintiffs filed a 141-page Amended Complaint. Based upon its captions and subheadings, the Amended Complaint asserts the following eleven counts against eight defendants:[4]

Count I:  Fourteenth Amendment Substantive and Procedural Due Process Claim Against Delaware County

Delaware County's Deputization of CYS to Act as Clerk of Juvenile Court and Failure to Properly Train the CYS Employee Acting as Court Clerk Violates Due Process and Resulted in the Delegation of Ministerial Function of Scheduling the First Day of Dependency Trials to Fellow CYS Employee (¶¶ 109-151)

Count II-A:  Fourteenth Amendment Substantive and Procedural Due Process Claim Against Delaware County

Delaware County's Policy of Insisting on Placement with Strangers When Parents Maintain Their Innocence, Failure to Timely Schedule Shelter Care Hearing and

---

[4]     The named defendants in the Amended Complaint are Allan R. DeJong, M.D.; the Delaware County defendants (County of Delaware, Mary Germond, Meta Wertz, Beth Prodoehl, Patricia McGettigan, and Gina Giancristiforo); and Dr. Doe.

Misrepresenting Facts and Law to Obtain Ex Parte Orders Finding that there are No Family or Community Caregivers Available to Care for the Child Violates Due Process (¶¶ 152-214)

Count II-B:      Fourteenth Amendment Procedural and Substantive Due Process Claims Against Meta Wertz, Patricia McGettigan and Gina Giancristiforo

Defendants Decision Not to Seek A Pre-Deprivation Hearing and Delay in Filing Ex Parte Memorandum and Insistence on Placement of B.D. with Strangers in Foster Care when Reggie and Renee Maintained Their Innocence Violates Due Process (¶¶ 215-218)

Count III:      Fourteenth Amendment Procedural Due Process Claim Against Delaware County and Mary Germond

Policy of Excessive Delay in Filing Dependency Petition Violates Due Process (¶¶ 219-234)

Count IV:      Fourteenth Amendment Procedural Due Process Claim Against Delaware County, Patricia McGettigan and Gina Gian-cristiforo

Excessive Delay in Scheduling Dependency Hearings and in Providing Discovery Months After the Filing of Dependency Petition Violates Due Process (¶¶ 235-271)

Count V:      Fourteenth Amendment Substantive Due Process Claim Against Delaware County

CYS's Refusal to Allow More Time with B.D. and Refusal to Place B.D. with Renee Even After CYS's Own Parent Educator Reported Renee had "Top Notch" Parenting Skills and CYS' Own Psychologist Reported that if Anything Renee was "Overprotective" of B.D. was

Retaliation for Renee Maintaining
Innocence and Violates Due Process
(¶¶ 272-284)

Count VI:       Substantive Due Process Claim Against
                Delaware County

                Reliance on Dr. DeJong in the Face of
                Dr. DeJong's Long History of Biased and
                Unreliable Investigations, Reports and
                Testimony Violates Due Process (¶¶ 285-
                348)

Count VII:      Substantive Due Process Claim Against
                Delaware County and Dr. DeJong

                Dr. DeJong's Pattern of Mu[l]tiple
                Reckless Misrepresentations of Medical
                Findings to Support False Allegations of
                Child Abuse is Not Objectively
                Reasonable, Constitutes Bad Faith and
                Shocks the Conscience and His Acts are
                Fairly Attributable to Delaware County
                (¶¶ 349-531)

Count VIII:     Failure to Train Under the Fourteenth
                Amendment Against Delaware County

                Defendants Denied Reggie, Renee and B.D.
                of Due Process Under the Law by Failing
                to Properly Train and Supervise Intake
                Case Workers, Supervisors and
                Administrators about Procedural Due
                Process Regarding the Filing of
                Dependency Petitions and Scheduling of
                Dependency Trials, the Appropriate Use
                of Ex Parte Communication with the
                Court, the Duty of Candor to the Court
                in Ex Parte Communications (¶¶ 532-549)

Count IX        State[-]Law Claim
                Negligence Against Dr. Doe

                Dr. Doe Negligently Evacuated the Wrong
                Side of B.D.'s Head (¶¶ 550-567)

Count X:          State[-]Law Claim Against Dr. DeJong
                              Intentional Infliction of Emotional
                              Distress (¶¶ 568-578).

      On January 4, 2012 the Delaware County defendants
answered plaintiffs' Amended Complaint.[5]  On January 12, 2012
defendant DeJong answered the Amended Complaint.[6]

      After conducting discovery, plaintiffs filed a motion
for partial summary judgment on December 16, 2012.  In their
motion, plaintiffs seek judgment on Counts II-A, II-B, III, IV, V
and VII.[7]

      On December 17, 2012 the Delaware County defendants[8]
and defendant DeJong[9] each filed a motion for summary judgment
seeking judgment on all claims asserted against them.

      On December 27, 2012 the Delaware County defendants
responded in opposition to plaintiffs' motion for partial summary
judgment.[10]  On January 9, 2013 defendant DeJong filed his
response in opposition to plaintiffs' motion for partial summary

_____

      [5]      Document 63.

      [6]      Document 64.

      [7]      Although plaintiffs' "Notice of Motion" indicates that plaintiffs
seek summary judgment on Counts II-A, II-B, III, IV and VII only, plaintiffs'
memorandum in support of their motion for partial summary judgment argues that
plaintiffs are entitled to summary judgment with respect to Count V as well.

      [8]      Document 93.

      [9]      Document 95.

      [10]     Document 98.

                              -10-

judgment.[11]  Also on January 9, 2013 plaintiffs filed responses in opposition to the Delaware County defendants' summary judgment motion[12] and Dr. DeJong's summary judgment motion.[13]

In plaintiffs' response to the Delaware County defendants' motion for summary judgment, plaintiffs consent to the dismissal of Counts I, VI and VII against the Delaware County defendants.[14]  Additionally, at oral argument on April 18, 2013 plaintiffs' consented to dismissal of Count IX, which asserts a state-law negligence claim against Dr. Doe.[15]

On January 30, 2013 the Delaware County defendants filed a reply brief in response to plaintiffs' memorandum of law in opposition to the Delaware County defendants' motion for summary judgment motion.[16]

---

[11]     Document 104.

[12]     Document 103.

[13]     Document 102.

[14]     See Plaintiffs' Memorandum of Law in Opposition to Motion to Dismiss of Defendants Delaware County, Mary Germond, Meta Wertz, Patricia McGettigan, Gina Giancristiforo and Beth Prodoehl, which memorandum was filed January 9, 2013 (Document 103), pages 4 and 29.

Plaintiffs do not consent to dismissal of Count VII as asserted against defendant DeJong.

[15]     Transcript of Oral Argument Before the Honorable James Knoll Gardner, April 18, 2013 ("N.T. Oral Argument" ), pages 158-159.

[16]     Document 108.

On April 18, 2013 I heard argument on the three within motions for summary judgment and took the matter under advisement.[17]  Hence this Opinion.

STANDARD OF REVIEW

Rule 56(a) of the Federal Rules of Civil Procedure permits a party to seek summary judgment with respect to a claim or defense, or part of a claim or defense.  Rule 56(a) provides, in pertinent part, that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(a); National Association for the Advancement of Colored People "NAACP" v. North Hudson Regional Fire & Rescue, 665 F.3d 464, 475 (3d Cir. 2012).

For a fact to be considered material, it "must have the potential to alter the outcome of the case." Id. (citing Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006)). Disputes concerning facts which are irrelevant or unnecessary do not preclude the district court from granting summary judgment. Id.

---

[17]     On April 24, 2013 defendant DeJong filed a motion to supplement the record with a Declaration of Randall Williams and a Medical Services Agreement, and a Health Insurance Claim Form, which were attached to defendant DeJong's motion as Exhibits A and B.  On April 30, 2013 plaintiffs filed a response indicating that, subject to clarifications set forth in their response and accompanying memorandum, they did not oppose defendant DeJong supplementing the record.

By Order dated May 23, 2013 and filed May 24, 2013 I granted defendant DeJong's motion and indicated that I would consider Dr. DeJong's supplemental exhibits and plaintiffs' response.

Where a party asserts that a particular fact is, or cannot be, genuinely disputed, the party must provide support for its assertion. Fed.R.Civ.P. 56(c)(1). Rule 56(c)(1) provides that party may support its factual assertions by

> (A) citing particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

When considering a motion for summary judgment, the district court must view the facts and record evidence presented "in the light most favorable to the non[-]moving party." North Hudson, 665 F.3d at 475 (quoting Scott v. Harris, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007)).

If the moving party shows that there is no genuine issue of fact for trial, "the non-moving party then bears the burden of identifying evidence that creates a genuine dispute regarding material facts." Id. (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

Where a defendant seeks summary judgment, the plaintiff cannot avert summary judgment with speculation, or by resting on the allegations in his pleadings, but rather he must present

competent evidence from which a jury could reasonably find in his favor.  Ridgewood Board of Education v. N.E. for M.E., 172 F.3d 238, 252 (3d Cir 1999); Woods v. Bentsen, 889 F.Supp. 179, 184 (E.D.Pa. 1995)(Reed, J.).

"Ultimately, [w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."  Id. (quoting Matsushita Electric Industries Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)) (internal quotations omitted and alteration in original).

FACTS

My September 30, 2011 Opinion granting in part and denying in part defendants' motions to dismiss, set forth in considerable detail the facts alleged in plaintiff's initial Complaint, which Opinion I incorporate here.  Because the standard of review for purposes of adjudicating the within summary judgment motions is not the same as the standard employed in my September 30, 2011 Opinion, which adjudicated multiple motions to dismiss, I only recount here the facts pertinent to the within summary judgment motions.

Accordingly, upon consideration of the pleadings, record papers, exhibits, declarations, and depositions, and drawing all reasonable inferences in favor of the non-moving

party[18], as required by the forgoing standard of review, the pertinent facts are as follows.

Plaintiffs are Reginald Dennis and Renee Dennis, husband and wife, and their son, B.D., a minor. B.D. was an infant during the time relevant to these causes of action.

Defendants are Allan R. DeJong, M.D., the Medical Director of the Child at Risk Evaluation ("CARE") team at A.I. duPont Hospital for Children in Wilmington, Delaware;[19] the County of Delaware; and employees of the Delaware County Children and Youth Services ("CYS"). These CYS defendant employees are Mary Germond, Director; Meta Wertz, intake administrator; Beth Prodoehl, kinship administrator; Patricia McGettigan, intake supervisor; and Gina Giancristiforo, intake case-worker.[20]

Defendant Dr. Doe remains unidentified.

B.D., the first and only child of Mr. and Mrs. Dennis, was born at Christiana Hospital on September 17, 2008 following a prolonged labor and delivery.[21]

---

[18]    Because both plaintiffs and defendants have moved for summary judgment, I consider the facts in the light most favorable to plaintiffs when considering defendants' motions for summary judgment, and consider the facts in the light most favorable to defendants when considering plaintiffs' summary judgment motion.

[19]    Defendant Dr. DeJong is also the medical director of the Children's Advocacy Center of Delaware ("CACD").

[20]    Plaintiffs' Statement of Material Facts in Support of Plaintiffs' Motion for Partial Summary Judgment ("Plaintiffs' statement of facts in support of summary judgment"), ¶¶ 2, 4-8.

[21]    Id. ¶¶ 13-14

At the time of the child's birth, an attending physician at Christiana Hospital noted that B.D.'s head was in a right occipital posterior position noted and that he had "overriding sutures", which means that the plates of his skull had not yet completely moved to the abutting position from the overlapping position during delivery because of the extreme compression and molding of B.D.'s head during the lengthy labor and delivery.[22]

B.D. had multiple visits to pediatricians following his birth, and no evidence of pain or bruising was present. However, on two separate occasions, Mrs. Dennis noticed a single red mark, one appearing on B.D.'s collar bone, and one appearing on his back. In each instance the red mark disappeared the following morning.[23]

On November 20, 2008  Mrs. Dennis noticed a momentary episode of arm limpness and one-sided facial drooping in B.D. Additionally, B.D. was fussy and vomiting. The next day, on November 21, 2008 Mr. and Mrs. Dennis took B.D. to their family physician, who attributed B.D.'s behavior to a negative reaction to a vaccination he had recently received. However, plaintiffs' doctor did not note any bruising or concern for trauma.[24]

---

[22]    Plaintiffs' statement of facts in support of summary judgment, ¶¶ 13 and 17.

[23]    See Id. ¶¶ 13-14, 17, 23-25 and 30.

[24]    Id. ¶¶ 33-34.

B.D.'s symptoms did not improve, and on November 22, 2008, Mr. and Mrs. Dennis took B.D. to Christiana Hospital. At Christiana Hospital, a computed tomography scan ("CT scan") of B.D. was performed, which revealed that B.D. had a left frontal subdural hematoma.[25]

Although the examination did not reveal a definite skull fracture or any bruising or external signs of trauma, Christiana Hospital issued a Report of Suspected Child Abuse and referred the matter to CYS and transferred B.D. to A.I. duPont Hospital for Children.[26]

On November 22, 2008 B.D. was admitted to duPont Hospital. When B.D. was admitted, he required assisted ventilation, but at the time of his admission, his oxygen level remained stable and he was not placed on a traditional ventilator.[27]

On November 24, 2008 B.D. was given a follow-up CT scan, Magnetic Resonance Imaging ("MRI") and a full skeletal x-ray. B.D. was placed on a conventional ventilator for administration of the MRI. On November 26, 2008 B.D. was removed

_____

[25]     A subdural hematoma is a collection of blood vessels which adhere to the skull.

[26]     Exhibit 1 to the Delaware County Defendants' summary judgment motion.

[27]     Plaintiffs' statement of facts in support of summary judgment, ¶¶ 51-52 and 222.

from the ventilator, but had difficulty breathing.  Accordingly, he was placed back on the ventilator until November 28, 2008.[28]

Because child abuse was suspected, Dr. DeJong, who served as the medical director of the CARE team, was assigned as a consultant to evaluate whether B.D.'s injuries were caused by abuse.  Multiple doctors at duPont Hospital, including Dr. DeJong, analyzed B.D.'s medical records and CT scan, MRI and x-ray reports.[29]

The doctors who analyzed B.D.'s reports identified B.D. as potentially suffering from a skull fracture, subdural hematoma, and rib fractures.  However, not all the doctors who analyzed B.D.'s records agreed on the specific age of B.D.'s injuries or the whether a skull fracture could be conclusively identified.[30]

---

[28]    Plaintiffs' statement of facts in support of summary judgment, ¶ 226.

[29]    Id. ¶¶ 51-52 and 55.

[30]    For example, Dr. Kerry Bron, a duPont radiologist concluded from the November 24, 2008 CT scan that B.D. suffered from a "stable short segment skull fracture on the left temporal region" of his head.  However, Dr. Rhonda Kessler, another duPont radiologist, reported that the left temporal fracture seen on the CT scan, could not be "appreciated" from the x-rays of B.D.'s skull (Plaintiffs' summary judgment motion statement of facts, ¶¶ 51-52 and 62).

Likewise Dr. Kessler and Dr. Sharon Gould, another duPont radiologist, concluded from B.D.'s CT scan or MRI that B.D. suffered from an "acute on chronic" subdural hematoma.

However, Dr. DeJong did not believe B.D.'s hemorrhage was "chronic".  Instead, he opined that B.D.'s injury occurred within 72 hours of his admission to Christiana Hospital on November 22, 2008.

(Footnote 30 continued):

On November 24, 2008, Dr. DeJong and former defendant Edward Speedling, a social worker who worked on the CARE team at duPont, interviewed Mrs. Dennis. Mrs. Dennis told Dr. DeJong and Mr. Speedling that her labor lasted 38 hours and explained that neither she nor Mr. Dennis had done anything to harm B.D.[31]

However, Mrs. Dennis also told Dr. DeJong and Mr. Speedling about the small red marks she observed on B.D. and revealed that she had spoken to Mr. Dennis about how to hold B.D. appropriately.[32]

Further, Mrs. Dennis told Dr. DeJong and Mr. Speedling that on November 20, 2008, B.D. was acting fussy and that Mr. Dennis spent 10-15 minutes alone with B.D to change his diaper. At that point, Mr. Dennis had called her to check on B.D. However, neither Mr. or Mrs. Dennis observed anything wrong B.D. at that time. However, later that evening when Mrs. Dennis was feeding B.D., she noticed that B.D. was not moving his arm and that his hands were shaking.[33]

---

(Continuation of footnote 30):

Dr. Kessler's reported that B.D. suffered from "multiple healing rib fractures". Dr. DeJong likewise noted that the rib fractures were healing, but also estimated that they were two to four weeks old.

[31] Oral Deposition of Renee Dennis, October 26, 2012 ("N.T. Renee Dennis"), page 168-169. (Exhibit 7 to plaintiffs' opposition to Dr. DeJong's summary judgment motion).

[32] N.T. Renee Dennis, pages 185.

[33] Id. pages 172-177.

CYS requested that Dr. DeJong summarize the information he had obtained and that Dr. DeJong provide his opinion on whether B.D.'s injuries were caused by abuse. Dr. DeJong indicated that B.D. suffered from a skull fracture and that his x-rays revealed healing rib fractures.[34]

Dr. DeJong opined in his report that the "injury events" may have occurred on November 20, 2008 and indicated that he suspected physical child abuse. Further, Dr. DeJong stated he did not believe B.D. would be safe alone with either Mr. or Mrs. Dennis.[35]

On November 25, 2008 Mr. and Mrs. Dennis voluntarily went to the CYS office to be interviewed by defendants Giancristiforo and McGettigan. Mr. and Mrs. Dennis were interviewed separately and each denied that B.D. was abused.[36]

Mrs. Dennis indicated during her interview that she had noticed bruising on B.D. in the past and had spoken to Mr. Dennis about how to hold B.D. appropriately. However, she also indicated that Mr. Dennis had not hurt B.D.[37]

---

[34] Exhibit C to defendant DeJong's motion for summary judgment; Response of Defendant, Dr. Allan R. DeJong, to Plaintiffs' Statement of Undisputed Facts in Support of Their Motion for Partial Summary Judgment ("Defendant DeJong's statement of facts in response to plaintiffs' summary judgment motion"), ¶ 43.

[35] Exhibit C to defendant DeJong's motion for summary judgment.

[36] Exhibit 50 and 51 to plaintiffs' summary judgment motion.

[37] Id.

Mr. and Mrs. Dennis requested that, if B.D. were removed from their care, that he be placed to live with either Mrs. Dennis' parents, the Groffs, or their family friends, the Stevensons. CYS discouraged Mr. and Mrs. Dennis from seeking placement with the Groffs because the Groffs lived too far away from duPont Hospital, where continued treatment would be required after B.D. release. In her report of the interview, Ms. Giancristiforo indicated that an out-of-home placement was planned upon B.D.'s discharge from the hospital.[38]

Following the interview, Ms. McGettigan spoke to Officer James Collins, of the Chester County, Pennsylvania, Police Department about B.D. Officer Collins indicated that he planned to begin his investigation on December 2, 2008. Ms. McGettigan also spoke to Mr. Speedling about the interview with Mr. and Mrs. Dennis.[39]

Mr. Speedling was upset because the police had not become involved in the case. Accordingly, Ms. McGettigan suggested that either Mr. Speedling or Dr. DeJong contact the police as well.[40]

---

[38]    Exhibit 50 and 51 to plaintiffs' summary judgment motion; Exhibit 4 to plaintiffs' opposition to the Delaware defendants' summary judgment motion.

[39]    Exhibit 58 to plaintiffs' summary judgment motion.

[40]    Exhibit 52 to plaintiffs' summary judgment motion.

On November 26, 2008 Dr. DeJong telephoned former defendant, Assistant District Attorney Mike Galantino, who then called Officer Collins.[41]

On November 26, 2008 Officer Collins spoke to Dr. DeJong about B.D.'s injuries and Dr. DeJong's interview with Mrs. Dennis. Dr. DeJong stated that Mrs. Dennis had not provided a viable explanation for B.D.'s injuries and stated that B.D.'s injuries likely occurred while B.D. was in the care of Mr. Dennis.[42]

Later on November 26, 2008 Officer Collins authored an Affidavit of Probable Cause, which he used to obtain an arrest warrant for Mr. Dennis. In the affidavit, Officer Collins indicated that B.D. was admitted to duPont Hospital for Children with severe skull fractures, bleeding on the brain, and 13 rib fractures, and that Dr. DeJong told Officer Collins that the head injuries to B.D. occurred when the child was in the care of Mr. Dennis.[43]

Mr. Dennis was arrested in the early morning of November 27, 2008. Bail was set at $100,000.00 cash bail. A condition of bail was that Mr. Dennis have no contact with B.D.[44]

---

[41] Exhibit 40 and 59 to plaintiffs' summary judgment motion.

[42] Exhibit 1 to plaintiffs' summary judgment motion, Deposition of Allan R. DeJong, M.D., November 1, 2012 ("N.T. DeJong"), page 224.

[43] Exhibit 43 to plaintiffs' summary judgment motion.

[44] Exhibit 40 to plaintiffs' summary judgment motion.

Following the arrest and incarceration of Mr. Dennis, Mrs. Dennis remained with B.D. at duPont Hospital. B.D.'s doctor indicated that, upon B.D.'s release from the hospital, the child would not require medical foster care. However, CYS insisted that B.D. be placed in foster care until a full home-study of the Stevenson's was completed.[45]

B.D.'s expected release from duPont Hospital for Children was December 9, 2008. However, as a general practice, CYS does not seek protective custody of a child until the child is ready to be discharged from the hospital.[46]

On December 9, 2008 defendant Gina Giancristiforo authored a memorandum outlining the CYS allegations of abuse against Mr. and Mrs. Dennis and requested a protective order concerning the custody of B.D. Defendants Meta Wertz and Patricia McGettigan signed their approval of the memorandum, and it was sent ex parte to Judge Maureen F. Fitzpatrick in the Court of Common Pleas of Delaware County, Pennsylvania.[47]

The memorandum indicated that community caregivers (the Stevensons) had offered to serve as caregivers but that CYS would

---

[45]    Exhibit 77 to plaintiffs' summary judgment motion.

[46]    Statement of Undisputed Material Facts in Support of Summary Judgment Motion of Defendants County of Delaware, Mary Germond, Meta Wertz, Beth Prodoehl, Patricia McGettigan and Gina Giancristiforo ("Delaware defendants' statement of facts in support of summary judgment motion"), ¶ 101.

[47]    Exhibit 3 to the Delaware County defendants' summary judgment motion.

not recommend that the Stevensons be given care of B.D until a full home-study was completed.[48]

In addition, the memorandum indicated that Mrs. Dennis indicated that "the baby's father could have caused the injuries" and that "she was fearful of allowing the baby to be alone with the father yet she failed to protect the baby based on her beliefs."[49]

On December 9, 2008, Judge Fitzpatrick issued an Order granting CYS protective custody of B.D. and approving B.D.'s placement in foster care.[50]

On December 11, 2008 a Right-to-Detain hearing[51] was held before Master David W. McNulty in the Court of Common Pleas of Delaware County, Pennsylvania. At the hearing, Mr. and Mrs. Dennis were represented by counsel and B.D. was assigned a Guardian Ad Litem, who objected to the return of B.D. to the

---

[48] Exhibit 3 to the Delaware County defendants' summary judgment motion. On December 17, 2008 Ms. Giancristiforo referred the Stevensons for a full home study. Ms. Giancristiforo indicated that the Stevenson's home was safe for placement, but that further assessment was required to approve the Stevenson's as community caregivers. (Plaintiffs' statement of facts, ¶ 161).

[49] Exhibit 3 to the Delaware County defendants' summary judgment motion.

[50] _Id._

[51] Pursuant to 23 Pa.C.S.A. § 6315 an informal hearing must be held within 72 hours of a child being taken into custody pursuant to a protective order.

Dennis household.  At the conclusion of the hearing, an
adjudication hearing was scheduled for January 13, 2009.[52]

On December 29, 2008, CYS filed a dependency petition,
signed by defendant Mary Germond, an administrator of CYS,
alleging that B.D. was a child dependent on the Commonwealth of
Pennsylvania.

However, for various reasons the January 13, 2009
adjudication hearing was delayed.[53]  Because no dependency
hearing had been held, Mrs. Dennis filed an emergency petition on

_____

[52]     Exhibits 4 and 5 to the Delaware County defendants' summary
judgment motion.

[53]     Master McNulty determined that he had a conflict of interest which
prevented him from presiding over the adjudication hearing.  Accordingly, on
December 26, 2008 counsel for plaintiffs requested a continuance to the
"earliest possible" judicial listing.  On January 13, 2013 Master McNulty
granted plaintiffs' request.  (Plaintiffs' Counterstatement of Facts in
Opposition to Statement of Undisputed Material Facts of Defendants County of
Delaware, Mary Germond, Meta Wertz, Beth Prodoehl, Patricia McGettigan and
Gina Giancristiforo ("Plaintiffs' response to the Delaware County defendants
statement of facts"), ¶¶ 7 and 9).

The adjudicatory hearing was rescheduled before the Honorable
Michael F.X. Coll for February 20, 2009.  However, prior to the hearing,
plaintiffs' counsel again requested a continuance, and the Delaware County
defendants excused their expert witnesses.

On February 20, 2009, the parties appeared before Judge Coll.
However, the adjudicatory hearing was not held because the Delaware County
defendants had excused their witnesses.  Additionally, counsel for plaintiffs
indicated that they were not prepared to proceed because they had not received
all of defendants' expert reports.

Accordingly, Judge Coll rescheduled the adjudicatory hearing for a
date to be determined and ordered that each party provide each other with
their expert reports at least ten days before the yet-to-be-scheduled hearing.
(See Exhibit 15 to Delaware County defendants' summary judgment motion).

CYS identified two expert medical witnesses whom it planned to
call at the hearing, Dr. DeJong and Dr. June Elcock-Messam, but it did not
provide their expert reports to plaintiffs until February 17, 2009 and April
8, 2009, respectively.  (Delaware County defendants' statement of facts in
support of summary judgment motion, ¶ 18.)

February 19, 2009 to release B.D. pursuant to 42 Pa.C.S.A. § 6335.  At a hearing on February 20, 2009, however CYS agreed to place B.D. in foster care with the Stevensons, and plaintiffs considered their emergency petition to be moot.  On February 23, 2009 B.D. was placed with the Stevensons.[54]

Once B.D. was placed at the Stevensons, Mrs. Dennis was permitted to attend supervised weekly one-hour visits with B.D. During her visits, Mrs. Dennis acted appropriately with B.D. Additionally, Mrs. Dennis successfully completed parenting classes and met the other requirements specified in her Family Service Plan.[55]

Ultimately, the adjudicatory hearing commenced on April 22, 2009.  However, the hearing was not completed and it reconvened on June 2, 2009 and then again on July 8, 2009 and August 21, 2009.

At the July 8, 2009 hearing, counsel for plaintiffs' requested that the visitation schedule for Mrs. Dennis while B.D. remained at the Stevenson's be liberalized.  Judge Coll indicated that he would consider the request at the conclusion of the hearing.[56]

---

[54]    See Exhibit 15 to Delaware County defendants' summary judgment motion.

[55]    See plaintiffs' statement of facts in support of summary judgment motion, ¶¶ 181-187, 189-198.

[56]    Delaware County Defendants' statement of facts in support of summary judgment motion, ¶ 20.

(Footnote 56 continued):

On August 21, 2009, at the conclusion of the dependency hearings, the Delaware County Court of Common Pleas determined that, although the applicable standard was clear and convincing evidence, the allegations that B.D. were abused could not be sustained even by a preponderance of the evidence. Therefore, the court dismissed the dependency petition and B.D. was immediately returned to Mrs. Dennis on August 21, 2009.

Following the dependency hearing, Assistant District Attorney Galantino decided to pursue the criminal charges against Mr. Dennis. However, the Delaware County defendants were not involved in the criminal prosecution of Mr. Dennis.[57]

During criminal proceedings against Mr. Dennis, Dr. DeJong advised Attorney Galantino and other law enforcement personnel about the nature and circumstances surrounding B.D.'s injuries. Throughout this period, Dr. DeJong opined that B.D. had suffered an inflicted head trauma which likely occurred on November 20, 2008.[58]

_____

(<u>Continuation of footnote 56</u>):

     For the six months that B.D. resided with the Stevensons, Mrs. Dennis was permitted one hour of weekly visitation with B.D. Mr. Dennis was not permitted any visitation with his son pursuant to condition of his bail.

[57]    Delaware County Defendants' statement of facts in support of summary judgment motion, ¶ 22; plaintiffs' response to Delaware County defendants' statement of facts, ¶ 22.

[58]    Delaware County defendants' statement of facts in support of summary judgment motion, ¶ 29.

Ultimately, Mr. Dennis was accepted into the Accelerated Rehabilitative Disposition ("A.R.D.") pre-trial disposition program.[59] Under the A.R.D. program, Mr. Dennis did not have to plead guilty to the charges asserted against him (Aggravated assault, Simple assault, and Endangering welfare of children), and upon completion of the program, the charges were dismissed.[60]

On November 19, 2010 Mr. and Mrs. Dennis filed their initial civil Complaint in the within matter.

<u>CONTENTIONS OF THE PARTIES</u>

<u>Contentions of Dr. DeJong</u>

Plaintiffs have asserted a substantive federal due process claim (Count VII) and a state-law claim for intentional infliction of emotional distress against defendant Allan R. DeJong (Count X).

Defendant Dr. DeJong contends that he is entitled to judgment in his favor on both claims.

Regarding plaintiffs' substantive due process claim, Dr. DeJong contends that plaintiffs' claim fails because he is not a state actor; and, even if he were a state actor, plaintiffs

---

[59]    A.R.D. is a pretrial probationary program of the Commonwealth of Pennsylvania.

[60]    Plaintiffs' response to Delaware County defendants' statement of facts, ¶ 26.

have not provided evidence that Dr. DeJong engaged in reckless behavior.

Specifically, Dr. DeJong contends that he was acting as a private physician and that he was not acting at the direction of CYS or the Delaware County District Attorney. Instead, Dr. DeJong asserts that he was asked to give his opinion as to whether B.D. was abused. Further Dr. DeJong asserts that the District Attorney pursued criminal charges against Mr. Dennis based on multiple medical opinions--not just the opinion of Dr. DeJong.

Dr. DeJong contends that even if he were a state actor, plaintiffs' substantive due process claim fails because plaintiffs have failed to establish that Dr. DeJong acted arbitrarily, in a manner that "shocks the conscience".

Specifically, Dr. DeJong contends that evidence supports all of his statements concerning the condition of B.D. and supports his opinion that B.D. was abused. More specifically, Dr. DeJong contends each of the following assertions made by him, which plaintiffs characterize as misrepresentations, are supported by evidence: (1) B.D. was on a ventilator; (2) B.D. had fractured ribs; (3) B.D. had brain bleeding; and (4) B.D. had a skull fracture. Furthermore, Dr. DeJong contends that plaintiffs have not provided sufficient

evidence that Dr. DeJong misrepresented the conversation he had with Mrs. Dennis about B.D.

Regarding plaintiffs' state-law claim against Dr. DeJong for intentional infliction of emotional distress, Dr. DeJong contends that he is entitled to summary judgment because (1) plaintiffs have failed to establish that Dr. DeJong acted in an extreme or outrageous manner; (2) plaintiffs have failed to produce an expert opinion indicating that the actions of Dr. DeJong caused plaintiffs to suffer emotional distress; and (3) Dr. DeJong is immune from suit as a private physician required to report suspected child abuse and as an expert witness.

## Contentions of Delaware County Defendants

Plaintiffs assert federal substantive and procedural due process claims against defendant County of Delaware in Counts I and II-A of their Amended Complaint. Plaintiffs assert procedural due process claims against Delaware County in Counts III and IV. Plaintiffs assert substantive due process claims against Delaware County in Counts V, VI, VII and VIII.

Plaintiffs assert substantive and procedural due process claims against three of the individual Delaware County defendants in Count II-B[61]. Plaintiffs assert procedural due

---

[61] Meta Wertz, Patricia McGettigan, and Gina Giancristiforo are the named defendants in Count II-B.

process claims against one individual defendant in Count III[62],
and against two individual defendants in Count IV[63].

The Delaware County defendants collectively moved for
summary judgment on all claims asserted against them. Because
plaintiffs consented to the dismissal of Counts I, VI and VII
against the Delaware County defendants, I address only their
contentions concerning the remaining counts.[64]

In Count II-A, plaintiffs allege that Delaware County
violated plaintiffs' substantive and procedural due process
rights based on Delaware County's (1) placement of B.D. with
strangers when Mr. and Mrs. Dennis maintained their innocence;
(2) failure to timely schedule a shelter care hearing; and
(3) misrepresentation of facts and law in an ex parte memorandum
to obtain a custody order.

The Delaware County defendants contend that plaintiffs
have failed to produce evidence that the conduct of defendants
"shocks the conscience" and failed to establish that Delaware
County had a custom or policy of unconstitutional conduct.

Specifically, the Delaware County defendants contend
that plaintiffs have not shown that Lancaster County, where Mrs.
Dennis' parents lived, would have accepted the transfer of B.D.,

---

[62]    Mary Germond is the named individual defendant in Count III.

[63]    Patricia McGettigan, and Gina Giancristiforo are the named
individual defendants in Count IV.

[64]    See plaintiffs' memorandum pages 4 and 29.

and therefore placing B.D. in foster care did not violate plaintiffs' rights.  Furthermore, the Delaware County defendants assert that plaintiffs never advised the Delaware Court of Common Pleas that they desired B.D. to be placed with his grandparents.

Count II-B asserts a substantive and procedural due process claim against three of the individual Delaware County defendants (Wertz, McGettigan and Giancristiforo) based on their failure to seek a pre-deprivation hearing.  The Delaware County defendants contend that plaintiffs do not have a right to a pre-deprivation hearing.

Moreover, the Delaware County defendants contend that it is constitutional to initiate child custody proceedings by obtaining an ex parte order.

Finally, the Delaware County defendants contend that even if a constitutional violation had occurred, all of the individual defendants are entitled to absolute or qualified immunity.

In Count III, as asserted against Delaware County and Mary Germond, plaintiffs allege that their rights to procedural due process were violated based on Delaware County and Ms. Germond's failure to file a dependency petition within 48-hours.

The Delaware County defendants contend that plaintiffs have failed to establish that such delays were part of a custom

or policy or that defendant Germond caused any of the delay. Rather, the Delaware County defendants contend that the evidence demonstrates that the delay in seeking the dependency petition was inadvertent and that there is no evidence of purposeful delay.

Moreover, the Delaware County defendants assert that the delay in filing the dependency petition did not delay the scheduling of the hearing and that even if a constitutional violation had occurred, Mary Germond is entitled to qualified immunity.

Count IV also asserts that Delaware County, Patricia McGettigan, and Gina Giancristiforo violated plaintiffs' procedural due process rights based upon the delay in scheduling dependency hearings. The Delaware County defendants contend that plaintiffs do not have an absolute right to an adjudication hearing within 10 days of the filing of a dependency petition. Moreover, the Delaware County defendants assert that the court-- not the child welfare agency--is responsible for scheduling the hearing.[65]

---

[65]    In addition, the Delaware County defendants contend that because plaintiffs filed a petition for release in the Court of Common Pleas of Delaware County, the Rooker-Feldman doctrine bars plaintiffs from challenging the delay in the dependency proceeding because such a challenge amounts to a challenge of a state court judgment.  See Rooker v. Fidelity Trust Company, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed 362 (1923) and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983).

Moreover, the Delaware County defendants contend that plaintiffs' counsel was not prepared to proceed at an earlier dependency hearing and continued the case to a later time in order to procure experts and discovery.

Next, the Delaware County defendants contend that plaintiffs have failed to demonstrate that the alleged violations amounted to more than mere negligence. Finally the Delaware County defendants contend that even if the delay of the dependency hearing amounted to a constitutional violation, the individual defendants are entitled to qualified immunity.

In Count V, plaintiffs assert a substantive due process claim against Delaware County based upon CYS' refusal to provide Mrs. Dennis with more visitation rights with B.D., allegedly in retaliation for Mrs. Dennis maintaining her innocence.

The Delaware County defendants contend that plaintiffs have failed to show that the refusal of CYS to return B.D. to Mrs. Dennis' home pending the investigation and hearing was retaliatory.

Moreover, the Delaware County defendants contend that the issue of visitation rights was before the Delaware County Court of Common Pleas and that the recommendations of CYS were approved by that court. Therefore, defendants assert that plaintiffs cannot challenge the actions of CYS, which were taken in the interest of B.D.

In Count VIII, plaintiffs assert a claim against Delaware County based on its failure to properly train and supervise caseworkers, supervisors and administrators regarding filing dependency petitions, scheduling dependency trials and ex parte communications with the court.

The Delaware County defendants contend that Count VIII fails as a matter of law because plaintiffs have failed to establish that the city officials were acting pursuant to an official policy or a custom so permanent and well-settled as to have the force of law.

Specifically, the Delaware County defendants contend that plaintiffs lack any factual support for their allegation that the County adopted a medical-legal presumption that subdural hematomas in babies are caused by physical abuse.

Moreover, the Delaware County defendants assert that plaintiffs have failed to produce any evidence that Delaware County has a policy of delaying either the filing of dependency petitions or the holding of hearings.

Accordingly, the Delaware County defendants contend that plaintiffs have failed to establish that defendants failed to supervise or adequately train its employees.

A. *Claims against Dr. DeJong*

Plaintiffs contend that Dr. DeJong is not entitled to summary judgment.[66] Specifically, plaintiffs contend that Dr. DeJong is a state actor because he serves as the medical director of the Child Advocacy Center of Delaware ("CACD") at duPont hospital. Plaintiffs assert that CACD functions as a state agency and coordinated its investigation of Mr. Dennis with law enforcement officers and the Delaware County defendants.

Plaintiffs further contend that Dr. DeJong should be considered to be a state actor because the Delaware County defendants and law enforcement officials exclusively relied on his opinions in the handling of the investigation concerning whether B.D. was abused by Mr. Dennis.

Plaintiffs also assert that they have produced sufficient evidence that Dr. DeJong misrepresented medical evidence.[67] Further, plaintiffs contend that Dr. DeJong is collaterally estopped from arguing that B.D. was abused because the Delaware County Court of Common Pleas had already held that

---

[66] Plaintiffs also contend that they are entitled to summary judgment on Count VII as asserted against defendant Dr. DeJong. Plaintiffs' contentions regarding why they are entitled to summary judgment are substantially the same as their contentions regarding why defendant DeJong is not entitled to summary judgment.

[67] Plaintiffs contend that there is no dispute that Dr. DeJong made multiple gross misrepresentations of pertinent medical facts and that plaintiffs are entitled to summary judgment.

the Delaware County defendants, with Dr. DeJong as their primary witness, failed to provide sufficient evidence of abuse.

Furthermore, plaintiffs contend that Dr. DeJong made the following misrepresentations: (a) that B.D. was on a ventilator when admitted to duPont hospital; (b) that B.D.'s rib fractures were two to four weeks old (to correspond to his assertion that the red marks on B.D. were traumatic bruises); (c) that B.D. had a significant skull fracture; (d) the timing of B.D.'s subdural hematoma blood collection (to falsely rule out birth trauma as a cause); and (e) the statements Dr. DeJong attributed to Mrs. Dennis.

Plaintiffs contend that issues of fact preclude granting summary judgment to Dr. DeJong on their claim for intentional infliction of emotional distress.  Specifically, plaintiffs contend that the pattern of misrepresentations made by Dr. DeJong amount to outrageous conduct and that Dr. DeJong is not immune from suit because the misrepresentations were made in bad faith.

B. *Claims against the Delaware County defendants*

Plaintiffs consent to the dismissal of Counts I, VI and VII against defendant County of Delaware.  However, plaintiffs contend that neither defendant County of Delaware nor any individual Delaware County defendant is entitled to summary

judgment on the remaining counts, II-A, II-B, III, IV, V and VIII.[68]

Plaintiffs contend that neither Heck v. Humphrey, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), nor Giles v. Davis, 427 F.3d 197 (3d Cir. 2005) bar the claims asserted by Mr. Dennis. Specifically, plaintiffs contend that Mr. Dennis' entrance into the state Accelerated Rehabilitative Disposition program in a criminal case does not bar his civil claims in a dependency matter.

In addition, plaintiffs contend that B.D.'s claims are cognizable. Specifically, plaintiffs assert that the Delaware County defendants have not cited any authority which indicates that being represented by a guardian ad litem bars B.D., or Mr. and Mrs. Dennis, from bringing their claims.

Regarding Count II-A, plaintiffs contend that Mr. and Mrs. Dennis clearly expressed their desire that B.D. be placed with the Stevensons rather than in foster care with strangers. Further plaintiffs contend that the law did not require a "full home study" prior to placing B.D. with the Stevenson's, and that the County of Delaware Ex Parte Memorandum misrepresented that a full home study was required.

---

[68] Plaintiffs also contend that they are entitled to summary judgment on Counts II-A, II-B, III, IV and V as asserted against the Delaware County defendants. Plaintiffs' contentions regarding why they are entitled to summary judgment mirror their contentions regarding why the Delaware County defendants are not entitled to summary judgment.

Accordingly, plaintiffs contend that the Delaware County defendants' summary judgment motion with respect to Count II-A should be denied and that plaintiffs' summary judgment motion should be granted.

With respect to Count II-B, plaintiffs contend that in this case, use of an ex parte memorandum and taking custody of B.D. without a pre-deprivation hearing deprived plaintiffs of their federal due process rights.

Specifically, plaintiffs contend that <u>Miller v. City of Philadelphia</u>, 174 F.3d 368 (3d Cir. 1999) is distinguishable from this case and stands for the proposition that ex parte requests are constitutional only in an emergency, where pre-deprivation process would insufficiently protect the safety of a child. Here, plaintiffs assert that no emergency justified use of the ex parte memo or removal of B.D. from his parents' custody without a pre-deprivation hearing.

Regarding Count III, which alleges due process violations for defendants' late filing of the dependency petition, plaintiffs contend that defendants are not entitled to summary judgment.

Specifically, plaintiffs contend that Pennsylvania law requires a dependency petition to be filed within 48 hours if at an informal hearing protective custody is deemed necessary.

Further, plaintiffs contend that the dependency petition gives them notice that abuse is suspected. Accordingly, plaintiffs contend that they suffered harm from the delay and the inadequate petition because those things prejudiced them from preparing their defense.

Count IV alleges federal due process violations based on the delay in scheduling the dependency hearing and delay in providing plaintiffs with discovery. Plaintiffs contend that defendants are not entitled to summary judgment because the Delaware County defendants delayed providing plaintiffs with defendants' expert reports during the dependency proceedings.

Plaintiffs contend that the delay of the Delaware County defendants in producing their expert reports forced plaintiffs to seek continuances of the dependency trial, thereby delaying the dependency proceedings.

Plaintiffs also contend that the Rooker-Feldman doctrine does not bar their claim because plaintiffs are not seeking reversal of any state court order. Specifically, plaintiffs argue that they are not contending that the Delaware Court of Common Pleas failed to release B.D. Rather, plaintiffs contend that the Delaware County defendants had full control over scheduling the first day of the dependency hearing and that those defendants delayed scheduling this proceeding.

Count V asserts that the Delaware County defendants violated plaintiffs' due process rights by refusing to permit Mrs. Dennis to visit B.D. more frequently while the dependency proceedings were pending.  Plaintiffs assert that the Delaware County defendants withheld more frequent visitation rights because Mrs. Dennis proclaimed her innocence.

Plaintiffs contend that defendants are not entitled to summary judgment because Mrs. Dennis was described as having good parenting skills, and therefore the Delaware County defendants did not have a valid basis to restrict visitation rights of Mrs. Dennis.

Count VIII asserts a claim against Delaware County for failure to properly train and supervise caseworkers, supervisors and administrators about dependency proceedings.  Plaintiffs contend that the Delaware County defendants are not entitled to summary judgment on this count because the County maintains an unconstitutional policy of never providing pre-deprivation hearings when Delaware County employees seek protective custody of a child.

Further, plaintiffs assert that defendant Mary Germond, the top administrator at CYS, required her name to be affixed to every dependency petition, but that she did not review those petitions to ensure that they comported with the applicable

rules.  Nor did Ms. Germond review the facts of the dependency
cases with the intake administrator.

Finally, plaintiffs contend that defendant Germond's
lack of knowledge about the particular dependency petition in
this case does not absolve her from liability.

## APPLICABLE LAW

In order to address the merits of each party's motion
for summary judgment, it is necessary to examine the applicable
law governing plaintiffs' claims.

### 42 U.S.C. § 1983

Plaintiffs' assert constitutional claims actionable
against defendants through 42 U.S.C. § 1983.  Section 1983 is an
enabling statute which does not create any substantive rights.
Rather, it provides private citizens with a remedy for the
violation of federal constitutional or statutory rights by a
state actor.  Gruenke v. Seip, 225 F.3d 290, 298 (3d Cir. 2000).
To state a claim under section 1983, plaintiffs must allege that
a defendant acting under color of state law deprived plaintiffs
of a federal constitutional or statutory right.  Gruenke, 225
F.3d at 298.

After the United States Supreme Court decision in
Monell v. Department of Social Services, 436 U.S. 658, 694,
98 S.Ct. 2018, 2037-2038, 56 L.Ed.2d 611, 638 (1978), a local
government cannot be sued pursuant to section 1983 for injuries

inflicted solely by its employees.  Rather, local governments can

only be held liable under section 1983 for "their *own* illegal

acts".  Connick v. Thompson, __ U.S. __, __, 131 S.Ct. 1350,

1359, 179 L.Ed.2d 417, 426 (2011) (internal quotations

omitted)(emphasis in original).

The United States Court of Appeals for the Third

Circuit has recognized liability for local governments in three

circumstances:

> First, the municipality will be liable if its
> employee acted pursuant to a formal government
> policy or a standard operating procedure long
> accepted within the government entity; second,
> liability will attach when the individual has
> policy making authority rendering his or her
> behavior an act of official government policy;
> third, the municipality will be liable if an
> official with authority has ratified the
> unconstitutional actions of a subordinate,
> rendering such behavior official for liability
> purposes.

McGreevy v. Stroup, 413 F.3d 359, 367 (3d Cir. 2005)(internal

citations omitted).

Plaintiffs must prove that the action in question

conducted pursuant to official municipal policy caused their

injury.  Connick, __ U.S. at __, 131 S.Ct. at 1359,

179 L.Ed.2d at 426.

An official municipal policy includes (1) the decisions

of a government's lawmakers, (2) the acts of its policymaking

officials, and (3) practices so persistent and widespread as to

practically have the force of law.  Id.

An official has policymaking authority for <u>Monell</u> purposes when (1) as a matter of state law, the official is responsible for making policy in the particular area of county business in question; and (2) the official's authority to make policy in that area is final and unreviewable. <u>Hill v. Borough of Kutztown</u>, 455 F.3d 225, 245-246 (3d Cir. 2006).

Accordingly, a municipality may be liable for a single act by a policymaking official if that the action is taken or directed by the county's authorized decisionmaker. <u>Oklahoma City v. Tuttle</u>, 471 U.S. 808, 823-824, 105 S.Ct. 2427, 2436, 85 L.Ed.2d 791, 804 (1985).

Likewise, when a subordinate's decision is subject to review by the municipality's authorized policymakers, the action of the subordinate may be attributable to the municipality if the authorized policymakers approved the decision and the basis for it. <u>St. Louis v. Praprotnik</u>, 485 U.S. 112, 127, 108 S.Ct. 915, 926, 99 L.Ed.2d 107, 120 (1988).

<u>Due Process in Child Abuse Cases</u>

Plaintiffs are guaranteed due process of law pursuant to the Fourteenth Amendment to the United States Constitution. The Fourteenth Amendment provides, in relevant part, "nor shall any State deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, cl. 1.

Plaintiffs bring claims for violations of both substantive and procedural due process.

Substantive due process rights are those rights which are "fundamental" under the Constitution. Nicolas v. Pennsylvania State University, 227 F.3d 133, 139-141 (3d Cir. 2000). The United States Supreme Court has recognized a "fundamental liberty interest of natural parents in the care, custody, and management of their child" protected by the Fourteenth Amendment. Miller v. City of Philadelphia, 174 F.3d 368, 374 (3d Cir. 1999)(quoting Santosky v. Kramer, 455 U.S. 745, 753, 102 S.Ct. 1388, 1394-1395, 71 L.Ed.2d 599, 606 (1982)); see also Anspach v. City of Philadelphia, 503 F.3d 256, 261 (3d Cir. 2007).

"The touchstone of due process is the protection of the individual against arbitrary action of government." Miller, 174 F.3d at 374 (internal quotations omitted). To incur liability, the objective character of the government action must be so egregious that it "shocks the conscience". Miller, 174 F.3d at 375.

Specifically, the United States Court of Appeals for the Third Circuit has held that child welfare workers abridge an individual's substantive due process rights where their actions "exceed both negligence and deliberate indifference, and reach a level of gross negligence or arbitrariness that indeed 'shocks

-45-

the conscience.'" Miller, 174 F.3d at 375-376. The Third

Circuit, in explaining Miller, held that in order for a child

welfare worker to be liable for removing a child from his parents

upon suspicions of abuse, the worker must have "consciously

disregarded a great risk that there had been no abuse." Ziccardi

v. City of Philadelphia, 288 F.3d 57, 66 (3d Cir. 2002).

There may be cases in which a child is justifiably

removed from the home, without violating due process, even where

a later investigation reveals no abuse actually occurred.

Croft v. Westmoreland County Children and Youth Services,

103 F.3d 1123, 1126 (3d Cir. 1997). The focus for due process

purposes is "whether the information available to the defendants

at the time would have created an objectively reasonable

suspicion of abuse justifying the degree of interference" with

the rights of parents. Croft, 103 F.3d at 1126. "Absent such

reasonable grounds, governmental intrusions of this type are

arbitrary abuses of power." Id.

To state a Section 1983 claim for deprivation of

procedural due process, plaintiffs must allege that: (1) they

were deprived of an individual interest that is encompassed

within the Fourteenth Amendment's protection of life, liberty or

property; and (2) the procedures available did not provide due

process of law. Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir.

2000).

Regarding the first requirement, as discussed above, parents have a constitutionally cognizable liberty interest in the care, custody, and management of their children. Miller, 174 F.3d at 374. Regarding the procedures available, "the fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." Id. at 373 (internal quotations omitted).

To determine the extent the procedures required, a court must balance several factors: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such an interest through the procedures used; (3) the probable value, if any, of additional or substitute procedural safeguards; and (4) the government's interest including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. B.S. v. Somerset County, 704 F.3d 250, 271 (3d Cir. 2013) citing Matthews v. Eldridge, 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

Immunities for Government Officials

In Section 1983 claims for violations of procedural and substantive due process, state actors may assert an affirmative defense of absolute or qualified immunity.

Absolute immunity "defeats a suit at the outset, so long as the official's actions were within the scope of the

-47-

immunity." <u>Imbler v. Pachtman</u>, 424 U.S. 409, 419 n.13, 96 S.Ct. 984, 990 n.13, 47 L.Ed.2d 128, 137 n.19 (1976). The Supreme Court has held that judges[69], prosecutors[70], and witnesses[71], are entitled to absolute immunity when they perform judicial or quasi-judicial acts that are integral parts of the judicial process. <u>See Ernst v. Child and Youth Services</u>, 108 F.3d 486, 494 (3d Cir. 1997).

The Third Circuit Court of Appeals has held that child welfare workers are also entitled to absolute immunity "for their actions on behalf of the state in preparing for, initiating, and prosecuting dependency proceedings. Their immunity is broad enough to include the formulation and presentation of recommendations to the court in the course of such proceedings." <u>Ernst</u>, 108 F.3d at 495.

However, the "investigative or administrative" actions of child welfare workers are not afforded absolute immunity. Rather, to determine whether a child welfare worker is entitled to absolute immunity, a court must consider the "what function their acts served". <u>B.S.</u>, 704 F.3d at 266.

---

[69] <u>Pierson v. Ray</u>, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967).

[70] Imbler, <u>supra</u>.

[71] <u>Briscoe v. LaHue</u>, 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983).

Qualified immunity, on the other hand, applies to all public officials and must be analyzed in light of the circumstances of each particular case. Qualified immunity protects government officials from insubstantial claims in order to "shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson v. Callahan, 555 U.S. 223, 231, 129 S.Ct. 808, 815, 172 L.Ed.2d 565, 573 (2009).

In resolving a claim for qualified immunity, a court must decide: (1) whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right; and (2) whether the right at issue was clearly established at the time of defendant's alleged misconduct. Pearson, 555 U.S. at 232, 129 S.Ct. at 815-816, 172 L.Ed.2d at 573. A court may address either of these prongs first, based on the particular circumstances of the case at hand. Pearson, 555 U.S. at 236, 129 S.Ct. at 818, 172 L.Ed.2d at 576.

The constitutional right at issue is "clearly established" where the "contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." Wilson v. Layne, 526 U.S. 603, 614-615, 119 S.Ct. 1692, 1699, 143 L.Ed.2d 818, 830 (1999) (quoting Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523, 531 (1987)).

A court must consider the state of the existing law at the time of the alleged violation and the circumstances confronting the official to determine whether a reasonable state actor could have believed his conduct was lawful. MFS Inc. v. Dilazaro, 771 F.Supp.2d 382, 449 (E.D.Pa. 2011)(internal quotation omitted).

The United States Court of Appeals for the Third Circuit has held that the determination of immunity should be made as early as possible in civil actions against government officials. Thomas v. Independence Township, 463 F.3d 285, 295 (3d Cir. 2006). Qualified immunity provides immunity from suit instead of merely providing a defense to liability. Pearson, 555 U.S. at 231, 129 S.Ct. at 815, 172 L.Ed.2d at 573.[72]

Pennsylvania Law Governing Dependency Proceedings

Many of plaintiffs' allegations spring from alleged violations of Pennsylvania law regarding the process of removing

---

[72] Nevertheless, the Third Circuit has explained that

> the importance of resolving qualified immunity questions early is in tension with the reality that factual disputes often need to be resolved before determining whether defendant's conduct violated a clearly established constitutional right.... A decision as to qualified immunity is premature when there are unresolved disputes of historical facts relevant to the immunity analysis.

Phillips v. County of Allegheny, 515 F.3d 224, 242 n.7 (3d Cir. 2008) (citing Curley v. Klem, 499 F.3d 199 (3d Cir. 2007)) (internal punctuation omitted).

The normal principles of summary judgment apply when qualified immunity is at issue. It is inappropriate to grant summary judgment if there are material factual disputes as to whether a constitutional violation has occurred or whether the constitutional right is clearly established. See Curley, 499 F.3d at 208; Estate of Smith v. Marasco, 430 F.3d 140, 148 n.3 (3d Cir. 2005).

a child from his parents.  The applicable state-laws governing dependency proceedings are the Child Protective Services Law, 23 Pa.C.S.A. §§ 6301-6386, and the Juvenile Act, 42 Pa.C.S.A. §§ 6301-6375.

Under 23 Pa.C.S.A. § 6315(a), a child may be taken into "protective custody" pursuant to a court order issued according to 42 Pa.C.S.A. § 6324.  "Protective custody" is a temporary solution for a child at risk of abuse.  42 Pa.C.S.A. § 6324(1).  Additionally, 23 Pa.C.S.A. § 6315 provides that upon obtaining an order for protective custody, an informal hearing must be held within 72 hours to determine whether to continue protective custody.  See also 42 Pa.C.S.A. § 6332.

If at this informal hearing it is determined that protective custody should be continued, then CYS has 48 hours to file a petition with the court alleging that the child is a dependent child, which is a more long-term solution and requires hearings to determine whether the child is a "dependent child".  23 Pa.C.S.A. § 6315(d).

A dependent child, in relevant part,

> is without proper parental care or control,
> subsistence, education as required by law, or
> other care or control necessary for his physical,
> mental, or emotional health, or morals. A
> determination that there is a lack of proper
> parental care or control may be based upon
> evidence of conduct by the parent, guardian or
> other custodian that places the health, safety or
> welfare of the child at risk, including evidence
> of the parent's, guardian's or other custodian's

> use of alcohol or a controlled substance that
> places the health, safety or welfare of the child
> at risk.

42 Pa.C.S.A. § 6302.

A dependency hearing shall be held not later than ten

days after the filing of the dependency petition.

42 Pa.C.S.A. § 6335(a).[73]

## Intentional Infliction of Emotional Distress

Under Pennsylvania law, which follows the standard set

forth in the Restatement (Second) of Torts, § 46, the tort of

intentional infliction of emotional distress occurs where a

person, whose acts constitute extreme or outrageous conduct,

intentionally inflicts severe emotional distress on another

person. Hunger v. Grand Central Sanitation, 447 Pa.Super. 575,

583-584, 670 A.2d 173, 177 (1996).

---

[73] The focus of dependency proceedings is "the best interest of the child" and "protect[ing] that child from any party who may have hurt or may continue to hurt [the] child", and the focus is not on proving who inflicted the abuse. C.S. v. Department of Public Welfare, 972 A.2d 1254, 1258 (Pa.Commw. 2009).

The nature of dependency proceedings is further described as follows:

> In dependency proceedings, which are held pursuant to the
> Juvenile Act, 42 Pa.C.S.A. §§ 6301-6375, the county agency
> first has the burden of establishing through clear and
> convincing evidence that a minor was abused, but then need
> only prove the identity of the perpetrator by prima facie
> evidence. The Superior Court [of Pennsylvania] has defined
> the prima facie evidence standard in dependency cases as a
> mere presumption that the abuse normally would not have
> occurred except by reason of acts or omissions of the
> parents.

C.S., 972 A.2d at 1259 (internal citations and quotations omitted).

Conduct is considered "extreme or outrageous" where the conduct goes "beyond all possible bounds of decency, and [is] regarded as atrocious, and utterly intolerable in a civilized community." Hunger, 447 Pa.Super. at 584, 670 A.2d at 177 (quoting Restatement (Second) of Torts, § 46 comment (d)); see also Kazatsky v. King David Memorial Park, Inc., 515 Pa. 183, 191, 527 A.2d 988, 991 (1987). Plaintiffs who claim that they suffered emotional distress must substantiate these claims with competent medical evidence. Hunger, 447 Pa.Super. at 584-585, 670 A.2d at 177-178.

## DISCUSSION

### Count I

Plaintiffs concede that they did not produce sufficient evidence to support their claim in Count I. Accordingly, Count I is dismissed from plaintiffs' Amended Complaint with prejudice.

### Counts II-A and II-B

In Count II-A, plaintiffs allege that defendant County of Delaware violated plaintiffs' substantive and procedural due process rights based on Delaware County's (1) placement of B.D. with strangers pending the dependency hearing; (2) failure to timely schedule a shelter care hearing; and (3) making

misrepresentations to obtain an ex parte order concerning custody.

Count II-B asserts a substantive and procedural due process claim against three of the individual Delaware County defendants based on their failure to seek a pre-deprivation hearing.

Each of these alleged substantive and procedural due process violations arise from defendant Gina Giancristoforo's ex parte memorandum to Judge Maureen F. Fitzpatrick, which outlined the allegations of abuse against Mr. and Mrs. Dennis and requested a protective order of custody concerning B.D.

Specifically, the ex parte memorandum was used by CYS to obtain custody of B.D. without providing Mr. and Mrs. Dennis an opportunity to be heard at a pre-deprivation hearing. Additionally, because the memorandum stated that there were "no known family resources to care for the baby", and that the Stevensons required a "full resource home study before the agency would recommend that the baby be moved to their care", B.D. was placed in foster care with strangers.[74]

With respect to Count II-A, plaintiffs have failed to produce sufficient evidence that Delaware County violated plaintiffs' substantive and procedural due process rights because

---

[74]     Exhibit 3 to Delaware County defendants' summary judgment motion.

-54-

they have failed to establish that the alleged misrepresentations made in the ex parte memorandum were part of a custom or policy of Delaware County.

Plaintiffs do not appear to contend, and have not provided any evidence establishing, that CYS's misrepresentations in protective custody proceedings were so persistent and widespread as to practically have the force of law. See Connick, ___ U.S. at ___, 131 S.Ct. at 1359, 179 L.Ed.2d at 426. In fact, plaintiffs have not provided any evidence that Delaware County employees made any misrepresentations outside the context of B.D.'s dependency proceedings.

Nor have plaintiffs established that the alleged misrepresentations made in the ex parte memorandum were made by a policy-making official. Defendant Giancristiforo, the author of the memorandum, was a case worker at CYS, and does not qualify as a policy-making official. Rather, the December 9, 2008 ex parte memorandum plainly indicates that it was approved by defendants McGettigan and Wertz.

Additionally, although defendants McGettigan and Wertz approved the ex parte memorandum, plaintiffs have failed to establish that their decisions were final and unreviewable. See Hill v. Borough of Kutztown, 455 F.3d at 245-246.

Defendant McGettigan was an intake supervisor at CYS who worked with defendant Giancristiforo in preparation of the December 9, 20008 ex parte memorandum. Defendant Wertz was an intake administrator at CYS and also signed her approval of the December 9, 2008 ex parte memorandum. Ms. Wertz had authority to review the decisions of both Ms. Giancristiforo and Ms. McGettigan.[75] Because Ms. McGettigan's conduct was reviewable by Ms. Wertz, Ms. McGettigan does not qualify as a policy-making official.

Moreover, although Ms. Wertz' could review the decisions of Ms. Giancristiforo and Ms. McGettigan, her approval of the ex parte memorandum was not a final, unreviewable decision. Rather, CYS' legal department reviewed the ex parte memorandum before it was sent to Judge Fitzpatrick.[76]

Moreover, even if Ms. Wertz qualified as a policy-making official, plaintiffs have not established that Ms. Wertz was aware that any of the representations in the December 9, 2008 ex parte memorandum were potentially false. Rather, it was Ms. Giancristiforo and Ms. McGettigan -- not Ms. Wertz -- who

---

[75]    See Exhibit 4 to plaintiffs' summary judgment motion, Deposition of Patricia McGettigan, October 24, 2012 ("N.T. McGettigan"), pages 61-62.

[76]    Exhibit 4 to Delaware County defendants' summary judgment motion, Deposition of Gina Giancristiforo, June 29, 2012 ("N.T. Giancristiforo"), pages 25-26; Exhibit 2 to plaintiffs' summary judgment motion, Deposition of Mary Germond, October 24, 2012 ("N.T. Germond"), page 56.

interviewed Mr. and Mrs. Dennis and prepared the ex parte memorandum.[77]

Therefore, even if Ms. Wertz qualified as a policy-making official, plaintiffs have failed to establish that she had any role in the allegedly unconstitutional conduct involved in preparation of the ex parte memorandum.[78]

Accordingly, plaintiffs have failed to establish that Delaware County had a policy or custom of making misrepresentations to obtain an ex parte custody order.[79]

---

[77] Plaintiffs did not depose Ms. Wertz, and it is not clear from the record what her role was in approving the memorandum. However, plaintiffs cannot establish that Delaware County had a custom or policy of making misrepresentations when seeking protective custody orders, without providing evidence that the representations in the memorandum were false. See St. Louis, 485 U.S. at 127, 108 S.Ct. at 926, 99 L.Ed.2d at 120, which held that the action of the subordinate may be attributable to the municipality if the authorized policymakers approved the decision and the basis for it.

[78] Plaintiffs contend that my September 30, 2011 Opinion already decided that Ms. Wertz was a policy-making official. This contention is misguided. My September 30, 2011 Opinion indicated that "[a]t this stage of the proceedings, plaintiffs have sufficiently alleged that Ms. Wertz is responsible for setting the policy for the intake department at CYS." (September 30, Opinion, page 80) (emphasis added).

However, at the summary judgment stage, plaintiffs must provide evidence, as opposed to mere allegations, that Ms. Wertz was a policy-making official. Plaintiffs have failed to provide such evidence.

[79] Even if plaintiffs had established that the assertions in the memorandum were made by a policy-making official, plaintiffs have not established that the purported misrepresentations "shock the conscience."

For example, the assertion in the ex parte memorandum that no known family resources were available does not shock the conscience because even though the Groff's had volunteered to care for B.D., they were not feasible caretakers because B.D. required continual visits to duPont Hospital for Children after his release, and the Groffs lived an hour and a half from the hospital.

(Footnote 79 continued):

Additionally, while Delaware County had a policy of pursuing protective custody orders, without providing parents with a pre-deprivation hearing, the Third Circuit has held that initiating child custody proceedings by ex parte order is generally constitutional so long as a prompt post-deprivation hearing is held.  Miller, 174 F.3d at 372 n.4.

Here, plaintiffs received a prompt post-deprivation hearing.  Therefore, Delaware County's failure to schedule a hearing prior to seeking custody of B.D. did not violate plaintiffs' due process rights.

Likewise, even if Delaware County had a policy to always conduct a full home study of prospective foster care parents, such a policy does not shock the conscience.  Completing a comprehensive review of potential caregivers enables CYS to assess whether the prospective caregivers will be able to protect

---

(Continuation of footnote 79):

        In fact, at the time B.D.'s placement was being considered by CYS, Mr. and Mrs. Dennis did not dispute CYS' assessment that the Groff's lived too far away.  (See N.T. Renee Dennis, pages 228 and 231).

        Likewise, the assertion in the memorandum that CYS believed a full home study was required was not a misrepresentation which shocks the conscience.  Although a full home study was not required by law, CYS had the authority and discretion to conduct a full home study under Pennsylvania law.  See 55 P.S. § 3700.70.

        Further, while a dispute of fact exists as to whether Mrs. Dennis told CYS, as stated in the ex parte memorandum, that "the baby's father could have caused the injuries", this representation does not appear material to CYS obtaining custody of B.D.  In fact, the memorandum also states that Mrs. Dennis did not acknowledge that the injuries are non-accidental.  (Exhibit 3 to Delaware County defendants' summary judgment motion).

the child.  This seems particularly necessary when the prospective caregivers have not acknowledged that the accused parents may have abused the child.[80]

Therefore, Delaware County's temporary placement of B.D. with strangers did not violate plaintiffs' substantive due process rights.

For all of the foregoing reasons, the Delaware County defendants' summary judgment motion is granted with respect to Count II-A.

Like the claim against the County of Delaware in Count II-A, plaintiffs have failed to establish that the individual

---

[80]    See N.T. McGettigan, page 65.

    While plaintiffs contend that Delaware County's decision to require a full home study was based upon the Dennis' maintaining their innocence, plaintiffs have not provided evidence of that Delaware County maintained a custom or policy of requiring full home studies for prospective caretakers when those accused of abuse maintained their innocence.  Rather, it appears that Delaware County always requires a full home study for potential care givers when the injuries were as severe as B.D.'s.  (See Exhibit 29 to Delaware County defendants' summary judgment motion).

    Moreover, while the Delaware County defendants concede that they considered whether Mr. and Mrs. Dennis maintained their innocence as a factor in assessing the suitability of the Stevensons for caretakers of B.D., in this case, such a position does not "shock the conscience."  Under Pennsylvania law, dependency proceedings are non-criminal proceedings in which the presumption of innocense does not apply.  Billups v. Penn State Milton S. Hershey Medical Center, 2012 U.S.Dist. LEXIS 56414 at * 39 (M.D. April 23, 2012) citing C.S. v. Department of Public Welfare, 972 A.2d 1254, 1262 (Pa.Commw. 2009).

    Because the Stevensons were close friends of Mr. and Mrs. Dennis, CYS had an interest in investigating whether the Stevensons would abide by the visitation restrictions placed on Mr. and Mrs. Dennis, which they might be less likely to do if they believed that no abuse had occurred.

defendants were required to schedule a pre-deprivation hearing as asserted in Count II-B.  See Miller, 174 F.3d at 372 n.4.

Additionally, even if a pre-deprivation hearing were required, the individual defendants would be entitled to absolute immunity.  See Ernst, 108 F.3d at 495, which held that child welfare workers are also entitled to absolute immunity "for their actions on behalf of the state in preparing for, initiating, and prosecuting dependency proceedings."[81]

Therefore, the Delaware County defendants' motion for summary judgment is granted with respect to Count II-B.

### Counts III and IV

In Count III plaintiffs allege that Delaware County and Mary Germond violated their rights to federal procedural due process based on Ms. Germond's failure to file a dependency petition within 48-hours of the December 11, 2008 post-deprivation hearing.[82]

---

[81]    Even if the individual defendants were not entitled to absolute immunity, they would be entitled to qualified immunity because, even if plaintiffs due process rights were violated by the Delaware County defendants failure to schedule a predeprivation hearing, such a right is not clearly established.  See MFS Inc., 771 F.Supp.2d at 449.

[82]    Pursuant to 23 Pa.C.S.A. § 6315, if CYS obtains continued custody at an informal post-deprivation hearing, it has 48 hours to file a dependency petition.

Once a dependency petition is filed, a dependency hearing must be held within 10 days.  42 Pa.C.S.A. § 6335(a).

Similarly, Count IV asserts that Delaware County, Patricia McGettigan, and Gina Giancristiforo violated plaintiffs' federal procedural due process rights by failing to promptly schedule the dependency hearing and by failing to timely provide plaintiffs with discovery.

In this case, the right-to-detain hearing was held on December 11, 2008. However, contrary to the requirements of 23 Pa.C.S.A. § 6315, CYS did not file a dependency petition until December 29, 2008.

Likewise, pursuant to 42 Pa.C.S.A. § 6335(a) a dependency hearing is required to be held within 10 days following the filing of the dependency petition. In this case, the dependency hearing was originally scheduled for January 13, 2009, more than 10 days after the dependency petition was filed. Moreover, the dependency hearing did not ultimately commence until April 22, 2009, nearly four months after the dependency petition was filed.

However, although CYS failed to comply with Pennsylvania law by failing to file the dependency petition within 48 hours and failing to conduct a dependency hearing within 10 days of the filing of the dependency petition, plaintiffs have failed to establish that their procedural due process rights were violated.

In order to prevail on their procedural due process claims as alleged in Counts III and IV, plaintiffs must demonstrate actual damages resulting from the delay in CYS' failure to file the dependency petition. Berman v. Young, 291 F.3d 976, 985 (7th Cir. 2002). Accordingly, plaintiffs must establish, "with some degree of probability," that a timely petition and hearing would have prevented the infringement on their familial rights. Id.

Here, plaintiffs have failed to establish that if CYS promptly filed a dependency petition, the dependency hearing, and ultimate adjudication, would have occurred any earlier.

Following the right-to-detain hearing on December 11, 2008, plaintiffs were notified that the dependency hearing was scheduled for January 13, 2009. Plaintiffs did not object to holding the dependency hearing at that time. Additionally, although the dependency petition was not filed within 48 hours of the right-to-detain hearing, it was filed more than 10 days in advance of the scheduled January 13, 2009 dependency hearing. Therefore, plaintiffs had adequate notice of the allegations leveled against them prior to the dependency hearing.

Plaintiffs requested a continuance of the January 13, 2009 hearing because Master McNulty had a conflict of interest.

Further, plaintiffs requested a continuance of the February 20, 2009 hearing because counsel for plaintiffs was unavailable.[83]

Plaintiffs have not explained how this delay is attributable to Delaware County or the individual defendants. In fact, pursuant to 42 Pa.C.S.A., "the <u>court</u> shall fix a time for hearing thereon, which if the child is in detention or shelter care shall not be later than ten days after the filing of the petition."[84]

Therefore, the Court of Common Pleas is responsible for scheduling the hearing within the designated time period.[85]

---

[83]    Exhibits 9 and 10 to Delaware County defendants' summary judgment motion.

[84]    Moreover, the court was ready to proceed with dependency hearing on February 20, 2009, but rescheduled the hearing at both parties' request.

[85]    At the February 20, 2009 hearing plaintiffs petitioned the court for B.D.'s immediate release pursuant to 42 Pa.C.S.A. Judge Coll did not rule on plaintiffs' request because CYS agreed to place B.D. with the Stevensons, which was acceptable to plaintiffs. (<u>See</u> Exhibit 15 to Delaware County defendants' summary judgment motion).

In this regard, because the issue was litigated in state court, the Delaware County defendants contend that Count IV is barred by the <u>Rooker-Feldman</u> doctrine, which bars federal courts from sitting as appellate courts for state court judgments.

However plaintiffs do not request a reversal of a state-court order (as the Court of Common Pleas never ruled on plaintiffs' request, and plaintiffs were ultimately successful in seeking dismissal of the dependency petition). Instead, plaintiffs are seeking damages based on the Delaware County defendants' purported delay in filing the dependency petition and scheduling of the dependency hearing. This does not appear barred by the <u>Rooker-Feldman</u> doctrine. <u>See</u> <u>B.S. v. Somerset County</u>, 704 F.3d 250, 260 (3d Cir. 2013), which held that a mother's action against a child services agency was not barred by the <u>Rooker-Feldman</u> doctrine because her injury was traceable to the actions of the child services agency rather than the state court.

Clearly, the delay resulting from plaintiffs' request for a continuance cannot constitute a procedural due process violation of the Delaware County defendants.[86]

Plaintiffs contend that defendants failed to provide discovery to plaintiffs in a timely manner prior to the dependency hearing. Specifically, plaintiffs contend that defendants delayed submitting the expert reports of defendant DeJong and Dr. Messam. Plaintiffs contend that they were forced to seek continuances of the dependency hearing because defendants failed to provide these medical reports.

However, the Delaware County defendants provided plaintiffs with the expert reports of defendant DeJong and Dr. Messam more than 10 days in advance of the April 22, 1999

---

[86]     Moreover, even if plaintiffs had established that the delay in filing the dependency petition delayed the ultimate adjudication of the dependency proceedings, and B.D. would have been returned to plaintiffs' earlier, plaintiffs' due process claims would nevertheless fail.

Regarding Count III, as asserted against defendant Germond, plaintiffs' have failed to show defendant Germond was responsible for the delay in filing the dependency petition. Although defendant Germond's signature appears on the dependency petition, it was signed on her behalf by CYS' legal department by non-party Beverly White. In fact, Ms. Germond had nothing to do with the preparation of the dependency petition and nothing to do with determining when it was filed. Therefore, even if plaintiffs had established actual loss from the delay, their claim against defendant Germond would nevertheless fail. (N.T. Germond, page 58)

Likewise, plaintiffs' claim against Delaware County in Count III would fail because they failed to establish that CYS' failure to file the dependency petition was part of an official custom of policy.

dependency hearing, which was all that was required by Judge Coll.[87]

Even if the Delaware County defendants caused delay in providing plaintiffs with discovery in the dependency proceedings, plaintiffs' claim would nevertheless fail. Regarding plaintiffs' claim against Delaware County, plaintiffs have not established any evidence that Delaware County's delay in providing discovery was part of custom of policy.

Moreover, the individual defendants would be entitled to absolute immunity because providing discovery during the course of dependency proceedings is "intimately associated with the judicial process in much the same way as are a prosecutor's actions in representing the state in criminal prosecutions." B.S. 704 F.3d at 266.

Therefore, plaintiffs have failed to establish that the Delaware County defendants' failure to timely file the dependency petition, failure to promptly schedule the dependency hearing, and failure to timely provide discovery, violated plaintiffs' federal procedural due process rights.

---

[87]    See Exhibit 15 to Delaware County defendants' summary judgment motion.

Specifically, the Delaware County defendants provided plaintiffs with Dr. DeJong's expert report prior to the February 20, 2008 hearing.  The Delaware County defendants provided plaintiffs with Dr. Messam's report on April 8, 2009.

Therefore, the Delaware County defendants summary judgment motion is granted with respect to Count III and IV.

## Count V

In Count V, plaintiffs assert a substantive due process claim against Delaware County based upon the refusal of CYS to provide Mrs. Dennis with greater visitation rights with B.D.

The Third Circuit has held that "a state has no interest in protecting children from their parents unless it has some reasonable and articulable evidence giving rise to a reasonable suspicion that a child has been abused or is in imminent danger of abuse." Croft v. Westmoreland County of Children and Youth Services, 103 F.3d 1123, 1126 (3d Cir. 1997). Accordingly, the state must have an "objectively reasonable suspicion of abuse" in order to justify interference with the rights of parents. Id.

Here, however Mrs. Dennis was accused of abusing B.D. by failing to protect B.D. from Mr. Dennis. Therefore, Delaware County was justified in limiting the visitation rights of Mrs. Dennis. See B.S., 704 F.3d 268, which held that "the standard of culpability necessary for a child welfare employee's actions to shock the conscience must generally exceed both negligence and deliberate indifference".

Plaintiffs have not submitted any evidence showing that Delaware County and CYS employees limited Mrs. Dennis visitation rights for malicious reasons. In fact, at one point during the course of the dependency proceedings Mrs. Dennis violated the terms of her visitation schedule by engaging with B.D. in the presence of Mrs. Stevenson, but unsupervised by CYS staff.[88]

Additionally, although Mrs. Dennis attended all required parenting courses and was recognized for her parenting skills, CYS did not obtain the report on Mrs. Dennis' psychological evaluation until July 2009. Therefore, before that time CYS did not have all potentially relevant information when considering whether to revise Mrs. Dennis' visitation schedule.[89]

Finally, the fact that Mrs. Dennis maintained her innocence is not an arbitrary or irrelevant factor for CYS to consider in assessing the appropriate amount of visitation for Mrs. Dennis. Mrs. Dennis was accused of abuse by omission. Therefore, her insistence that the injuries were not caused by abuse could cause concern that Mrs. Dennis would not keep B.D.

---

[88]   Exhibit 32 to Delaware County defendants' summary judgment motion, Deposition of Beth Prodoel, October 22, 2012 ("N.T. Prodoel"), page 42.

[89]   N.T. Prodoel, page 57.

away from Mr. Dennis in the event CYS permitted Mrs. Dennis to have unsupervised visitation.[90]

CYS was granted custody of B.D. pending the dependency hearing and had the discretion to determine Mrs. Dennis' visitation rights. Plaintiffs have failed to establish that limiting Mrs. Dennis' visitation rights to weekly supervised visits "shocks the conscience". Accordingly, the Delaware County defendants' summary judgment motion is granted with respect to Count V.

## Count VI

Plaintiffs concede that they did not produce sufficient evidence to support their claim in Count VI. Accordingly, Count VI is dismissed from plaintiffs' Amended Complaint with prejudice.

## Count VII

In Count VII plaintiffs have asserted a substantive due process against Dr. DeJong based on purported misrepresentations he made regarding his medical findings.[91] Plaintiffs allege that

---

[90]    See Billups v. Penn State Milton S. Hershey Medical Center, 2012 U.S.Dist. LEXYS 56414 at * 39 (M.D. April 23, 2012) citing C.S. v. Department of Public Welfare, 972 A.2d 1254, 1262 (Pa.Commw. 2009), in which the United States District Court noted that under Pennsylvania law, dependency proceedings are non-criminal proceedings in which the presumption of innocence does not apply.

[91]    Plaintiffs also asserted a claim against Delaware County in Count VII. However, plaintiffs acknowledge that there is insufficient evidence in the record to support that claim. Accordingly, Count VII is dismissed from plaintiffs' Amended Complaint with prejudice.

Dr. DeJong misrepresented B.D.'s injuries to support false allegations of child abuse.

However, plaintiffs substantive due process claim fails because plaintiffs have not established that Dr. DeJong was acting under the color of state law when he allegedly misrepresented B.D.'s medical conditions.

In order for a private actor to be transformed into a state actor, a court must consider "whether the function performed has been traditionally the *exclusive* prerogative of the State." Rendell-Baker v. Kohn, 457 U.S. 830, 842, 102 S.Ct. 2764, 2772, 73 L.Ed.2d 418, 428 (1982)(internal quotations omitted)(emphasis in original).

A function serving the public, and even receipt of public funds, are not enough to make a private entity a state actor. Groman v. Township of Manalapan, 47 F.3d 628, 640 (3d Cir. 1995). Rather, "the interdependence between the state and private actor must be pronounced before the law will transform the private actor into a state actor." Id. at 641.

Plaintiffs contend that Dr. DeJong is a state actor because he serves as the medical director of the Child Advocacy Center of Delaware ("CACD") at duPont hospital. CACD receives substantial funding from the state of Delaware and "functions as an agency and plays a pivotal and critical role in ensuring that

the state's response to allegations of child abuse occurs as intended."[92]

However, Dr. DeJong did not advise CYS or law enforcement personnel concerning the condition of B.D. as part of his role as the medical director of CACD. In fact, B.D. was never referred to CACD. Nor did CACD refer B.D. to Dr. DeJong.[93]

Instead, Dr. DeJong acted as a consulting physician, pursuant to his duties as director of the Child at Risk Evaluation ("CARE") team at duPont hospital. Plaintiffs have not provided sufficient evidence that Dr. DeJong's actions as an employee of duPont hospital constitute actions under the color of state law for purposes of § 1983.

Plaintiffs contend that defendant McGettigan's request that Dr. DeJong contact the police to encourage them to intervene on behalf of B.D. converts him into a state actor for purposes of section 1983.

However, plaintiffs have not produced any evidence that Dr. DeJong's actions or opinions concerning B.D. were dictated by the state. Accordingly, plaintiffs have failed to establish that

---

[92] Exhibit 10 to plaintiffs' response to defendant DeJong's summary judgment motion.

[93] Exhibit A to defendant DeJong's supplemental exhibits in support of summary judgment motion, Declaration of Randall Williams.

Dr. DeJong acted under the color of state law.  See Groman,
47 F.3d at 641.[94]

Even if plaintiffs had established that Dr. DeJong
acted under the color of state law, their substantive due process
claim would nevertheless fail because plaintiffs have failed to
show that defendant DeJong's conduct shocked the conscience.

Plaintiffs claim against Dr. DeJong is based on the
following misrepresentations he allegedly made to Officer James
Collins of the Chester County, Pennsylvania, Police Department
and CYS: (a) that B.D. was on a ventilator when admitted to
duPont hospital; (b) that B.D.'s rib fractures were two to four
weeks old (to correspond to his assertion that the red marks on
B.D. were traumatic bruises); (c) that B.D. had a significant
skull fracture; (d) the timing of B.D.'s subdural hematoma blood
collection (to falsely rule out birth trauma as a cause); and
(e) the statements Dr. DeJong attributed to Mrs. Dennis.

---

[94]     In Groman, a volunteer first-aid squad responded to police calls
to aid a man whom police were taking into custody.  The first-aid squad
arrived and attempted to treat the man at his home, and the squad responded to
the police a second time to treat the man when he was at the police station.
47 F.3d at 641

The United States Court of Appeals for the Third Circuit held that
the first-aid squad was not a state actor for section 1983 purposes even
though it received public funds, it functioned to support the police, and it
responded twice to the request of the police to aid a man in police custody.
Id. at 642.

Because there was no evidence that the first-aid squad's
professional decisions were dictated or guided by the state, or that the state
controlled the first-aid squad's professional conduct in helping the man, the
first-aid squad was not a state actor.  Id.

First, concerning Dr. DeJong's alleged misrepresen-
tation that B.D. was on a ventilator, the record reflects that
when B.D. was admitted to duPont Hospital for Children he
required assisted ventilation, even if he were not on a
traditional ventilator.  Moreoever, when B.D. underwent a CT scan
and MRI, he was placed on a ventilator.  Therefore, Dr. DeJong's
assertion that B.D. was on a ventilator does not shock the
conscience.

Regarding Dr. DeJong's alleged misrepresentations
concerning the age of B.D.'s bruised ribs, the existence of a
skull fracture and the timing of B.D.'s subdural hematoma blood
collection, plaintiffs have likewise failed to establish that Dr.
DeJong's opinions on these matters shock the conscience.

While plaintiffs have provided expert opinions which
disagree with Dr. DeJong's assessments concerning the extent,
duration and cause of B.D.'s injuries, plaintiffs have not
provided any evidence that Dr. DeJong's opinions were negligent,
much less that they shocked the conscience.

A plaintiff alleging constitutional violations based on
inadequate or erroneous medical treatment must submit medical
evidence to support his or her claim.  See Anderson v. Folino,
2013 U.S.Dist. LEXIS 23193 at *25 (W.D.Pa. Jan. 23, 2013).  Here,
although plaintiffs have submitted medical evidence that Dr.
DeJong's opinions regarding B.D. were possibly erroneous, without

an expert opinion that Dr. DeJong's opinions were grossly negligent, plaintiffs cannot succeed on their substantive due process claim. See Billups v. Penn State Milton S. Hershey, 2012 U.S.Dist. LEXIS 56414 at *25 (W.D.Pa. April 23, 2012).

Billups held that plaintiffs failed to state a claim against the doctors who opined that a child had been abused because "some reasonable and articulable evidence" existed giving rise to a suspicion of abuse, and the "conscience-shocking standard" requires a showing which exceeds "both negligence and deliberate indifference." Id.

Multiple doctors opined that B.D.'s injuries resulted from abuse. These opinions, including Dr. DeJong's, were based on reasonable and articulable evidence. Therefore, plaintiffs have failed to establish that Dr. DeJong's representations concerning B.D.'s medical conditions shocked the conscience.

Finally, plaintiffs have failed to provide evidence that Dr. DeJong misrepresented the conversation he had with Mrs. Dennis. In Dr. DeJong's evaluation report of B.D., he indicates that Mrs. Dennis told him that B.D. was well until November 20, 2008. Dr. DeJong further reports that Mrs. Dennis told him that around 7:00 o'clock p.m. on that date Mr. Dennis went upstairs alone with B.D. and that B.D. suddenly stopped crying and that

when Mr. Dennis called her upstairs, B.D.'s arm was limp and mouth was drooping.[95]

Mrs. Dennis does not dispute that she told Dr. DeJong that B.D.'s arm went limp and that B.D.'s mouth was drooping. However, she contends that she told him that she did not observe those symptoms until later in the evening.[96]

However, even if Dr. DeJong inaccurately reported his interview with Mrs. Dennis, the purported misrepresentations do not shock the conscience. Rather, even Mrs. Dennis acknowledged that the purported inaccuracies within Dr. DeJong's evaluation of B.D. would not necessarily show malicious intent, but could have occurred "if he's not a good reporter."[97]

Therefore, even if plaintiffs had established that Dr. DeJong was acting under color of state law, Dr. DeJong would nevertheless be entitled to summary judgment. Accordingly, the motion for summary judgment of defendant Dr. DeJong is granted with respect to Count VII.

---

[95]     Exhibit 4 to defendant DeJong's summary judgment motion.

[96]     Mrs. Dennis also identified purported misrepresentations made by Dr. DeJong which do not appear material to his assessment that B.D. had been abused. For example, Dr. DeJong described Mrs. Dennis' labor as lasting 30 hours, when in fact it lasted 38 hours. (See N.T. Renee Dennis, page 167-190). However, none of these purported inaccuracies shock the conscience.

[97]     N.T. Renee Dennis, page 190.

<u>Count VIII</u>

In Count VIII, plaintiffs assert a substantive due process claim against Delaware County based on its failure to train and supervise caseworkers, supervisors and administrators regarding filing dependency petitions, scheduling dependency trials and ex parte communications with the court.

In their opposition to Delaware County's motion for summary judgment, plaintiffs indicate that the focus of Count VIII is Delaware County's alleged failure train caseworkers, supervisors and administrators to conduct a pre-deprivation hearing when CYS seeks custody of a child in a non-emergency situation. Further, plaintiffs contend that Delaware County failed to train CYS employees to file dependency petitions in a timely manner.

However, as discussed above, initiating child custody proceedings by ex parte order is generally constitutional so long as a prompt post-deprivation hearing is held. <u>Miller</u>, 174 F.3d at 372 n.4. Plaintiffs have not cited to any authority casting doubt on the procedures set forth in the Child Protective Services Law, 23 Pa.C.S.A. §§ 6301-6386, and the Juvenile Act, 42 Pa.C.S.A. §§ 6301-6375.[98]

---

[98] Indeed, in <u>Miller v. City of Philadelphia</u>, 954 F.Supp. 1056, 1062 (E.D.Pa. 1997), the court noted that it would be "impracticable to require the government to adopt special procedures" depending on whether a parent was available to participate in the request for an emergency order.

Therefore, because a prompt post-deprivation hearing was held, Delaware County is not liable for failing to train its employees to conduct a pre-deprivation hearing when seeking a protective custody order.[99]

Regarding plaintiffs' contention that Delaware County failed to properly train its employees to file timely dependency petitions, plaintiffs have failed to establish that Delaware County had a policy of encouraging dependency petitions to be filed late.

In this case, the dependency petition was not filed within the requisite 72 hours. However, plaintiffs have not established that such delay is commonplace or resulted from inadequate training.

Defendant Germond acknowledges that, despite her signature appearing on all dependency petitions, she does not personally review the content of the petitions or have a role in their filing. However, plaintiffs have not produced any evidence that the dependency petition filed on behalf of B.D., or any

---

[99]     Delaware County acknowledges that in most child abuse cases, it seeks custody of the child through an ex parte request to a judge (N.T. Germond, page 29). Moreover, Delaware acknowledges that it does not seek custody of children while they're in the hospital, but rather waits until the child is to be released before seeking custody (N.T. Oral Argument, pages 52-54).

Nothing in this Opinion should be construed as implying that Delaware County cannot, or should not, conduct pre-deprivation hearings when feasible. However, based on the law of this Circuit, they are not constitutionally compelled to do so.

other dependency petition, was filed in an untimely manner because of inadequate training or supervision.

Therefore, the motion for summary judgment of defendant County of Delaware is granted with respect to Count VIII.

## Count IX

Plaintiffs acknowledge that have not identified Dr. Doe or uncovered any evidence supporting their Pennsylvania state-law negligence claim against him. Accordingly, on April 18, 2013 at oral argument, plaintiffs withdrew this claim. Therefore, in the Order accompanying this Opinion I have formalized plaintiffs' oral withdrawal of this claim by dismissing Count IX from plaintiffs' Amended Complaint with prejudice.

## Count X

In Count X, plaintiffs allege a Pennsylvania state-law claim for intentional infliction of emotional distress against defendant Dr. DeJong. Plaintiffs' claim for intentional infliction of emotion distress is based on the same purported misrepresentations which provide the basis for plaintiffs' substantive due process claim against Dr. DeJong, asserted in Count VII.

Although the standard for a substantive due process violation differs from intentional infliction of emotional distress, in this case, the analysis is the same. For the same

reasons Dr. DeJong's alleged misrepresentations do not "shock the conscience", plaintiffs have failed to establish that Dr. DeJong's conduct was extreme and outrageous. <u>See</u> <u>Breakwell v. Allegheny County</u>, 2009 U.S.Dist. LEXIS 91547 at *20 (W.D.Pa. Aug. 24, 2009).

In <u>Breakwell</u>, the court concluded that allegations of substantive due process which fail to "shock the conscience", likewise cannot be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency" to support an intentional infliction of emotional distress claim. <u>Id.</u>

Therefore, defendant Dr. DeJong's motion for summary judgment is granted with respect to Count X.

CONCLUSION

For all of the forgoing reasons, the Delaware County defendants' motion for summary judgment is granted. Likewise, Dr. DeJong's summary judgment motion is granted. Accordingly, all remaining claims are dismissed from plaintiffs' Amended Complaint. Finally, plaintiffs' motion for partial summary judgment is denied.